**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KEITH SHELTON, KAREN SHELTON, DANIEL DRAIN, WAVERS SMITH, RICHARD FREEMAN, SAMUEL FORD, KEITH FENSKE, COLTON KELLY, and CHRISTOPHER GILES, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| | CLASS ACTION COMPLAINT |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| GENERAL MOTORS, LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

Nature of the Action................................................................................................................ 1

Jurisdiction and Venue........................................................................................................... 4

The Parties ............................................................................................................................. 4

Factual Allegations ............................................................................................................... 6

   A.   The Defective Eight-Speed Automatic Transmissions (GM 8L90 and 8L45) .................. 9

   B.   GM's Knowledge of the Transmission Defect ................................................................ 12

      1.   GM's Own Service Bulletins Demonstrate Its Knowledge of the Transmission Defect as Early as September 1, 2014. .................................................................. 12

         a.   Service Bulletin 14628........................................................................ 12

         b.   Service Bulletin 14-07-30-001 ............................................................ 13

         c.   Service Bulletin 14876........................................................................ 15

         d.   Service Bulletin 15-NA-007 ................................................................ 16

         e.   Service Bulletin PIP5337 .................................................................... 16

         f.   Service Bulletin PIE0353..................................................................... 19

         g.   Service Bulletin 16-NA-014 ................................................................ 19

         h.   Service Bulletin 16-NA-019 ................................................................ 20

         i.   Service Bulletin 16-NA-175 ................................................................ 21

         j.   Service Bulletin PIP5405..................................................................... 23

         k.   Service Bulletin 16-NA-213 ................................................................ 24

         l.   Service Bulletin PIP5437 .................................................................... 25

         m.   Service Bulletin 16-NA-411 ................................................................ 25

         n.   Service Bulletin 16-NA-404 ................................................................ 26

         o.   Engineering Information PIE0405 ........................................................ 27

         p.   Service Bulletin 16-NA-361 ................................................................ 28

         q.   Service Bulletin 18-NA-177 ................................................................ 28

         r.   Service Bulletin 18-NA-235 ................................................................ 29

         s.   Service Bulletin 18-NA-356 ................................................................ 29

         t.   Other Service Bulletins and Communications Involving the Eight-Speed Transmissions ................................................................................. 30

2.      Numerous Consumer Complaints on the NHTSA Demonstrate That GM Was Aware of the Transmission Defect. ................................................................................................. 31

    a.      2015 Cadillac Escalade ................................................................................. 32

    b.      2016 Cadillac Escalade ................................................................................. 33

    c.      2015 Chevrolet Corvette ............................................................................... 37

    d.      2016 Chevrolet Camaro ................................................................................ 40

    e.      2017 Chevrolet Camaro ................................................................................ 41

    f.       2015 Chevrolet Silverado ............................................................................. 42

    g.      2016 Chevrolet Silverado ............................................................................. 47

    h.      2017 Chevrolet Silverado ............................................................................. 48

    i.       2017 Chevrolet Colorado .............................................................................. 54

    j.       2018 Chevrolet Colorado .............................................................................. 60

    k.      2015 GMC Sierra .......................................................................................... 65

    l.       2016 GMC Sierra .......................................................................................... 69

    m.      2017 GMC Sierra .......................................................................................... 74

    n.      2015 GMC Yukon Denali ............................................................................. 78

    o.      2016 GMC Yukon Denali ............................................................................. 81

    p.      2017 GMC Yukon Denali ............................................................................. 83

    q.      2017 GMC Canyon ....................................................................................... 83

    r.       2018 GMC Canyon ....................................................................................... 84

3.      Consumer Complaints on Internet Forums Demonstrate That GM Was Aware of the Transmission Defect ......................................................................................................... 85

    a.      Complaints on Edmunds.com ........................................................................ 86

    b.      Complaints on Cars.com ................................................................................ 91

    c.      Complaints on CarComplaints.com ............................................................... 96

    d.      Complaints on gmauthority.com .................................................................. 104

    e.      Complaints on gminsidenews.com ............................................................... 109

    f.       Complaints on gm-trucks.com ..................................................................... 110

    g.      Complaints on cadillacforums.com .............................................................. 119

4.      Well-Publicized Criticism of the Transmission Defect in Trade Publications Demonstrate GM's Knowledge of the Defect. ................................................................. 124

C.      Plaintiffs' Experiences ........................................................................................................ 126

1.    Keith and Karen Shelton (2018 Chevrolet Silverado 1500) ..................................... 126

2.    Daniel Drain (2018 GMC Sierra) ........................................................................... 128

3.    Wavers Smith (2017 Chevrolet Camaro) ................................................................ 130

4.    Richard Freeman (2017 GMC Canyon) .................................................................. 132

5.    Samuel Ford (2018 Chevrolet Silverado 1500) ..................................................... 134

6.    Keith Fenske (2017 Cadillac CT6) ........................................................................ 136

7.    Colton Kelly (2017 Chevrolet Silverado 1500) ..................................................... 137

8.    Christopher Giles (2017 Chevrolet Colorado) ....................................................... 140

Class Action Allegations ........................................................................................................ 141

Tolling of the Statutes of Limitations .................................................................................... 146

Count I .................................................................................................................................... 146

Count II ................................................................................................................................... 150

Count III .................................................................................................................................. 152

Count IV .................................................................................................................................. 155

Count V ................................................................................................................................... 158

Count VI .................................................................................................................................. 160

Count VII ................................................................................................................................ 163

Count VIII ............................................................................................................................... 166

Count IX .................................................................................................................................. 168

Count X ................................................................................................................................... 171

Count XI .................................................................................................................................. 174

Count XII ................................................................................................................................ 177

Count XIII ............................................................................................................................... 179

Count XIV ............................................................................................................................... 182

Count XV ................................................................................................................................ 184

Count XVI ............................................................................................................................... 188

Count XVII .............................................................................................................................. 190

Count XVIII ............................................................................................................................ 192

Count XIX ............................................................................................................................... 196

Count XX ................................................................................................................................. 198

Count XXI ............................................................................................................................... 201

Count XXII ................................................................................................................ 204

Count XXIII ............................................................................................................... 207

Request for Relief ..................................................................................................... 207

Plaintiffs Keith Shelton, Karen Shelton, Daniel Drain, Wavers Smith, Richard Freeman, Samuel Ford, Keith Fenske, Colton Kelly, and Christopher Giles ("Plaintiffs"), for themselves and on behalf of all others similarly situated, bring this action against General Motors, LLC ("GM" or "Defendant"). Plaintiffs allege the following based on personal knowledge as to their own acts and on the investigation conducted by their counsel as to all other allegations:

## NATURE OF THE ACTION

1.      This proposed class action is brought by plaintiffs in seven states who allege that GM concealed a known defect from its customers in the United States who purchased or leased any vehicle designed manufactured, marketed, distributed, sold, warranted and serviced by GM and equipped with GM's Hydra-Matic 8L90 transmission or Hydra-Matic 8L45 transmission[1] (collectively, "Class Vehicles"). The 8L90 and 8L45 transmissions are defective, posing serious safety concerns.

2.      This action arises from Defendant's failure, despite its longstanding knowledge, to disclose to Plaintiff and other similarly situated customers that the Class Vehicles have defective transmissions that fail to function in a safe and reliable manner as expected.

3.      As explained below, the Class Vehicles were sold with a defective 8L90 or 8L45 Transmissions that, among other things, slip, buck, kick, jerk and harshly engage; suffer abnormal internal wear, sudden acceleration, delay in downshifts, delayed acceleration and difficulty stopping the vehicle, and eventually require replacement of the transmission or its components (the "Transmission Defect").

4.      This defect, which manifests itself within the limited warranty period or shortly after the limited warranty period expires, can cause unsafe conditions in the Class Vehicles,

---

[1]      On information and belief, these vehicles include the 2015-2019 Chevrolet Silverado; the 2017-2019 Chevrolet Colorado; the 2015-2019 Chevrolet Corvette; the 2016-2019 Chevrolet Camaro; the 2015-2019 Cadillac Escalade and Escalade ESV; the 2016-2019 Cadillac ATS, ATS-V, CTS, CT6, and CTS-V; the 2015-2019 GMC Sierra, Yukon, and Yukon XL, and Yukon Denali XL; and the 2017-2019 GMC Canyon.

including but not limited vehicles suddenly lurching forward, sudden loss of forward propulsion, and significant delays in acceleration. These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration.

5.      The shuddering, shaking, jerking and hesitation is related to internal issues within the transmission and/or torque converter causing undue friction and impairing proper functioning of hydraulic systems and gears, which in turn results in metal shavings being circulated throughout the transmission. This damage to the transmission and torque converter imposes escalating repairs upon consumers, including the need to flush the metal shavings from the transmission. Because of the Transmission Defect, the Class Vehicles present a safety hazard and are unreasonably dangerous to consumers.

6.      GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covers all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. However, when Class Members bring their vehicles to GM's authorized agents for repair, they are either told that their vehicles are behaving normally, given ineffective repairs, or are having their transmissions or components replaced with the same defective parts.

7.      Defendant knew, or should have known, of this critical defect at the time of sale or shortly thereafter when numerous members of the putative class began complaining of the defect at Defendant's authorized dealerships. Yet, notwithstanding this knowledge, GM has routinely failed to repair the Class Vehicles without charge when the defect manifests. Moreover, GM failed to disclose the Transmission Defect to Plaintiff and Class members through its advertising, including on vehicle window stickers or at the point of sale or lease.

8.      GM, an experienced and sophisticated vehicle manufacturer, learned of the Transmission Defect through, *inter alia*, (1) records from the National Highway Traffic Safety

Administration ("NHTSA"), (2) customer complaints, (3) its own records of customers' complaints, (4) dealership repair records and requests for technical assistance, (5) warranty and post-warranty claims, (6) pre- and post-release internal durability testing, (7) Service Bulletins, (8) issuing a Customer Satisfaction Program, and (9) other various sources, yet failed to notify consumers prior to purchase of the nature and extent of the Transmission Defect plaguing Class Vehicles, or provide any adequate post-purchase remedy.

9.      GM's efforts have been entirely inadequate in resolving the Transmission Defect or providing relief to the Class. Moreover, GM has failed to alert the Class Members of the true and unsafe nature of the Transmission Defect.

10.     Despite knowledge conveyed to Defendant by information from its affiliated dealerships, National Highway Traffic Safety Administration ("NHTSA") consumer complaints, and its own internal records, including durability testing, Defendant has not recalled the Class Vehicles to repair the defective transmissions, offered its customers suitable repairs free of charge, or offered to reimburse consumers forced to pay for the repairs out-of-pocket.

11.     In fact, rather than redesigning the defective components and installing non-defective components, GM purports to "repair" the Class Vehicles by performing ineffectual or insufficient software updates, part replacements, and other procedures that fail to fully resolve the defects. Further, Class Vehicle owners incur or will incur out-of-pocket costs for these repairs because GM refuses to issue a recall to prevent them. GM thus unfairly shifts the costs to the Class Members, and benefits or will benefit from the revenue generated by repeat repairs. Accordingly, consumers will be required to pay hundreds, if not thousands, of dollars to repair or replace the transmissions, related components, or other parts that become damaged because of the Transmission Defect, and GM is unjustly enriched at their expense.

12.     In many instances, GM has never been able to repair the transmission. On information and belief, owners and lessees have complained of dangerous driving conditions and near-accidents because of the Transmission Defect. However, GM continues to dangerously sell the defective vehicles to consumers.

3

13.     Because of this failure, Plaintiffs and Class Members have been damaged.

## JURISDICTION AND VENUE

14.     This action is properly before this Court and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than GM, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

15.     In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts and are such that plaintiffs would ordinarily expect to try them in one judicial proceeding.

16.     This Court has personal jurisdiction over Defendant because it is incorporated in the State of Delaware; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in Delaware; and otherwise intentionally avails itself of the markets within Delaware through promotion, sale, marketing and distribution of its vehicles, which renders the exercise of jurisdiction by this Court proper and necessary as GM is "at home" in Delaware.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). A substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiffs may properly sue GM in this District, GM's state of incorporation.

## THE PARTIES

18.     Plaintiff Keith Shelton is a Delaware citizen who resides in Lewes, Delaware.

19.     Plaintiff Karen Shelton is a Delaware citizen who resides in Lewes, Delaware.

20.     Plaintiffs Keith and Karen Shelton purchased a 2018 Chevrolet Silverado 1500 in or around August 2018.

21.     Plaintiff Daniel Drain is a Colorado citizen who resides in Thornton, Colorado. Plaintiff Drain purchased a 2018 GMC Sierra on or around June 29, 2018.

22.     Plaintiff Wavers Smith is a Georgia citizen who resides in Lithonia, Georgia. Plaintiff Smith purchased a 2017 Chevrolet Camaro on or around November 24, 2017.

23.     Plaintiff Richard Freeman is a Georgia citizen who resides in Carrollton, Georgia. Plaintiff Freeman purchased a 2017 GMC Canyon on or around in or around November 2017.

24.     Plaintiff Samuel Ford is an Indiana citizen who resides in Clayton, Indiana. Plaintiff Ford leased a 2018 Chevrolet Silverado 1500 in or around May 2018.

25.     Plaintiff Keith Fenske is a Minnesota citizen who resides in Plymouth, Minnesota. Plaintiff Fenske purchased a 2017 Cadillac CT6 on or around February 17, 2018.

26.     Plaintiff Colton Kelly is a citizen of Nevada who resides in Henderson, Nevada. Plaintiff Kelly purchased a 2017 Chevrolet Silverado 1500 in or around December 2017 from an authorized Chevrolet dealership in Rapid City, South Dakota.

27.     Plaintiff Christopher Giles is a Washington citizen who resides in Vancouver, Washington. Plaintiff Giles purchased a 2017 Chevrolet Colorado in or around August 2018.

28.     Defendant General Motors LLC is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan 48265. The sole member and owner of General Motors LLC is General Motors Holdings LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. General Motors Holdings LLC's only member is General Motors Company, a Delaware corporation with its principal place of business in the State of Michigan. General Motors Company has 100% ownership interest in General Motors Holdings LLC.

29.     General Motors LLC, itself and through its affiliates, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide and in Delaware. General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

30.     At all relevant times, Defendant was and is engaged in the business of designing,

manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components in Delaware and throughout the United States of America.

## FACTUAL ALLEGATIONS

31.    GM designs, manufactures, markets, distributes, and warrants automobiles in the United States sold under various brand names, including the Buick, Cadillac, Chevrolet, and GMC brands. In 2018, GM sold 2,954,037 vehicles in the United States alone and "had the number one market share in . . . North America[.]"[2]

32.    GM has thousands of authorized dealerships across the United States, all of which are under GM's control. GM authorizes these dealerships to sell GM vehicles, parts, and accessories and to service and repair GM vehicles using GM parts.[3]

33.    Since 2014, GM has designed, manufactured, distributed, sold, and leased the Class Vehicles, which include the 2015-2019 Chevrolet Silverado; the 2017-2019 Chevrolet Colorado; the 2015-2019 Chevrolet Corvette; the 2016-2019 Chevrolet Camaro; the 2015-2019 Cadillac Escalade and Escalade ESV; the 2016-2019 Cadillac ATS, ATS-V, CTS, CT6, and CTS-V; the 2015-2019 GMC Sierra, Yukon, and Yukon XL, and Yukon Denali XL; and the 2017-2019 GMC Canyon. GM has sold, directly or indirectly, through dealers and other retail outlets, hundreds of thousands of Class Vehicles equipped with the 8L90 or 8L45 transmission in Delaware, Colorado, Georgia, Indiana, Minnesota, South Dakota, Washington, and other states.

34.    GM provided all purchasers and lessees of the Class Vehicles with a New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles.

35.    The New Vehicle Limited Warranty for Cadillac-brand Class Vehicles ("Cadillac Warranty"), which included a "Bumper-to-Bumper" warranty and a Powertrain warranty, stated

---

[2]    *See* General Motors Company 2018 Annual Report (Form 10-K), at 2 (Feb. 6, 2019), available at: https://www.sec.gov/Archives/edgar/data/1467858/000146785819000033/gm201810k.htm (last accessed May 7, 2019).

[3]    *Id.* at 3.

in relevant part:

### What Is Covered

### Warranty Applies

This warranty is for GM vehicles registered in the United States and normally operated in the United States, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

### Repairs Covered

The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

### No Charge

Warranty repairs, including towing, parts, and labor, will be made at no charge.

### Obtaining Repairs

To obtain warranty repairs, take the vehicle to a Cadillac dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

### Warranty Period

The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

### Bumper-to-Bumper Coverage

The complete vehicle is covered for 4 years or 50,000 miles, whichever comes first, except for other coverages listed here under "What Is Covered" and those items listed under "What Is Not Covered" later in this section.

### Powertrain Component Warranty Coverage.

The powertrain is covered for 7 years or 70,000 miles, whichever comes first, except for other coverages listed here under "What Is

Covered" and those items listed under "What Is Not Covered" later in this section.

\*\*\*

**Transmission/Transaxle Coverage includes**: All internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle. Also covered are any actuators directly connected to the transmission (slave cylinder, etc.).

*Exclusions*: Excluded from the powertrain coverage are transmission cooling lines, hoses, radiator, sensors, wiring, and electrical connectors. Also excluded are the clutch and pressure plate as well as any Transmission Control Module and/or module programming.

\*\*\*

**Other Terms**: This warranty gives you specific legal rights and you may also have other rights which vary from state to state. GM does not authorize any person to create for it any other obligation or liability in connection with these vehicles. **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty**.[4]

36.     The New Vehicle Limited Warranty for Chevrolet and GM-brand Class Vehicles ("Chevrolet/GM Warranty") included substantially the same terms as the Cadillac Warranty terms excerpted above, except that the Chevrolet/GM Warranty's "Bumper-to-Bumper" coverage period was limited to "the first 3 years or 36,000 miles, whichever comes first," and the Powertrain

---

[4]     *See, e.g.*, 2015 Cadillac Limited Warranty and Owner Assistance Information at 2, 4, 12, available at https://my.gm.com/content/dam/gmownercenter/gmna/dynamic/manuals/2015/cadillac/Multiple%20Model %20PDFs/2015%20Limited%20Warranty%20and%20Owner%20Assistance%20Information.pdf (last accessed May 7, 2019) (emphasis in original).

warranty coverage period was limited to "5 years or 60,000 miles, whichever comes first."[5]

37.     The warranties and representations contained in the Cadillac Warranty and the Chevrolet/GM Warranty (collectively, the "Warranties") were and are material to Plaintiffs because Plaintiffs would not have purchased their Class Vehicles or would not have paid as much as they did if the transmissions in their Class Vehicles were not covered by a full warranty.

### A.     The Defective Eight-Speed Automatic Transmissions (GM 8L90 and 8L45)

38.     In January 2014, GM began marketing the release of a new, eight-speed automatic transmission to be included in some of its vehicles for model year 2015. GM-brand vehicles for model years 2014 and older had automatic transmissions of six or fewer speeds.

39.     . . The engines in the Class Vehicles produce power and then send that power to the 8L90 or 8L45 automatic transmission. The transmission then takes that power and delivers it to the rear drive wheels of the Class Vehicle, while ensuring the engine stays within predetermined RPMs. The transmission also seeks to maximize the efficiency of the Class Vehicles' engines by balancing fuel consumption and torque.

40.     As background, transmissions use toothed gears that interact with each other to produce torque. The term "gear ratio" refers to the relationship between gears. For example, if an input gear has 20 teeth and it interacts with an output gear that has 10 teeth, the 10-tooth gear must spin twice to fully spin the 20-tooth gear. A gear ratio is then calculated by taking the number of teeth on the output gear and dividing it by the input gear. In this example, the gear ratio would be 1:2 (typically expressed as 0.5:1).

41.     Automatic transmissions automate the switching of gears using multi-plate clutches, which adjust according the speed that the vehicle is traveling. Thus, instead of manually operating a clutch, the vehicle's transmission constantly monitors and engages and disengages gears according to the speed at which the vehicle is moving. This is done through the use of fluid

---

[5]     *See, e.g.*, 2016 Chevrolet Limited Warranty and Owner Assistance Information at 2, 4, 14, available at https://my.chevrolet.com/content/dam/gmownercenter/gmna/dynamic/manuals/2016/Chevrolet/Multi-Model%20PDFs/2k16chevylimitedwty3rdPrint.pdf (last accessed May 7, 2019)

pressure, which provides the necessary pressure to activate clutches and bands that in turn determines what gear to engage.

42.     GM marketed and sold its new eight-speed automatic transmissions as having "world-class performance" rivaling top performance vehicles, lightning-fast and smooth shifting, along with improved fuel efficiency, among other representations.[6]

43.     For instance, GM's own press release dated January 13, 2014 introduced the new 8L90 transmission as being "tuned for world-class shift-response times," and "deliver[ing] shift performance that rivals the dual-clutch/semi-automatic transmissions found in many supercars – but with the smoothness and refinement that comes with a conventional automatic fitted with a torque converter." In addition, the technology and design of the new 8L90 transmission "help make the new [Corvette] Z06 surprisingly fuel efficient."[7] GM touted similar characteristics for its 8L45 transmission in press releases in 2015.[8]

44.     In another GM press release, GM continued to represent the high quality of the new eight-speed automatic transmission:

> In fact, in the 2015 Corvette Stingray, [8L90 transmission] enables a class-leading 29-mpg EPA highway estimate – a 3.5-percent increase in fuel economy over the previous six-speed automatic – and a quicker 0-60 time of 3.7 seconds, all while delivering wide-open-throttle upshifts quicker than those of the dual-clutch transmission offered in the Porsche 911.

---

[6]     *See* GM press release, "New 8-Speed Enables Quicker, More Efficient Corvette." August 20, 2014, available at https://media.chevrolet.com/media/us/en/chevrolet/news.detail.html/content/Pages/news/us/en/2014/Aug/0820-8speed/0820-corvette-8-speed-lead.html (last accessed May 7, 2019).

[7]     *See* GM press release, "2015 Chevrolet Corvette Z06 is Most Capable, Ever." January 13, 2014, available at https://media.gm.com/media/us/en/gm/autoshows/detroit.detail.html/content/Pages/news/us/en/2014/Jan/14naias/Corvettes/Z06-corvette/0113-z06.html (last accessed May 7, 2019).

[8]     *See* GM press release, "2016 Camaro's Driving Fun Rooted in New Powertrains." May 16, 2015, available at https://media.gm.com/media/us/en/gm/news.detail.html/content/Pages/news/us/en/2015/may/2016-camaro/0516-camaro-powertrains.html (last accessed May 7, 2019); GM press release, "Cadillac CT6 to Debut Next Generation Powertrain." March 23, 2015 available at https://media.gm.com/media/me/en/cadillac/news.detail.html/content/Pages/news/me/en/2015/cadillac/Cadillac-CT6-to-Debut-Next-Generation-Powertrain.html. (last accessed May 7, 2019).

"GM's new 8L90 eight-speed automatic represents a rare win-win-win scenario for customers," said Kavoos Kaveh, global chief engineer for eight-speed automatic transmissions. "It offers greater performance and efficiency, while weighing less than the transmission it replaces. That's a rare accomplishment in the industry today – and one for which GM has been awarded more than two dozen patents."

****

The lower engine speed reduces fuel consumption, while a new torque converter design enhances refinement, particularly during low-speed gear changes. "The Corvette's new eight-speed automatic delivers the comfort and drivability of a true automatic transmission, as well as lightning-fast shifts and the manual control that enhance the performance-driving experience," said Kaveh. "It was designed to enhance the driving experience, with performance on par with dual-clutch designs, but without sacrificing refinement. . . . Additionally, a torque converter design with a turbine damper complements performance with excellent refinement at low engine speeds."

45.     In actuality, however, the 8L90 and 8L45 transmissions deliver anything but "comfort and drivability[,]" "lightning-fast shifts[,]" and "enhanc[ed] refinement, particularly during low-speed gear changes."   In fact, the Transmission Defect in the 8L90 and 8L45 transmissions causes unsafe conditions, including, but not limited to, Class Vehicles suddenly lurching forward, sudden acceleration, delayed acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard because they severely affect the driver's ability to control the car's speed, acceleration, and deceleration. As an example, these conditions may make it difficult to safely merge into traffic, and drivers have reported sudden lurching into intersections when attempting to gradually accelerate from a stopped position and other dangerous driving conditions. Even more troubling, the Transmission Defect can cause the vehicle to delay downshifting and decelerating when the brakes are depressed.

46.     On information and belief, the Transmission Defect also causes premature wear to the 8L90 and 8L45 Transmissions' components and other vehicle parts, which can require repeated and/or expensive repairs, including replacement of the transmission and its related components.

11

**B.      GM's Knowledge of the Transmission Defect**

47.      As early as September 2014, GM knew or should have known that the 8L90 and 8L45 transmissions were defective in design and/or manufacture and that the Transmission Defect would adversely affect the drivability of the Class Vehicles and cause safety hazards.

48.      Plaintiffs are informed and believe and based thereon allege that prior to the sale of the Class Vehicles, GM knew, or should have known, about the Transmission Defect through its exclusive knowledge of non-public, internal data about the Transmission Defect, including: pre-release testing data; early consumer complaints about the Transmission Defect to GM's dealers who are their agents for vehicle repairs; warranty claim data related to the defect; aggregate data from GM's dealers; consumer complaints to the National Highway Traffic Safety Administration ("NHTSA") and resulting notice from NHTSA; dealership repair orders; testing conducted in response to owner or lessee complaints; GM service bulletins applicable to the Class Vehicles; and other internal sources of aggregate information about the problem. Nevertheless, Defendant has actively concealed and failed to disclose this defect to Plaintiffs and Class Members at the time of purchase or lease and thereafter.

*1.      **GM's Own Service Bulletins Demonstrate Its Knowledge of the Transmission Defect as Early as September 1, 2014.***

49.      From September 2014 to as recently as February 2019, GM issued at least 60 service bulletins and service bulletin updates ("Service Bulletins," "Technical Service Bulletins," or "TSBs") to its dealers in the United States, but not its customers, acknowledging problems of harsh shifting, shuddering, jerking, clunking, and delays in acceleration or deceleration relating to the 8L90 and 8L45 transmissions.

**a.      Service Bulletin 14628**

50.      On or around September 1, 2014, GM issued Service Bulletin 14628 directing technicians "to perform a drive audit on **all** 2015 model year Corvette vehicles in inventory that

are equipped with an 8 speed automatic transmission (M5U)"[9] (emphasis in original). In the bulletin's section titled "Purpose," GM stated:

> A small number of transmissions may develop a crack in the triple clutch housing internal to the transmission, leading to noise, loss of reverse gear, and limiting the driver to 3rd and 4th forward gears. The drive audit must be completed before vehicle delivery (and in addition to normal predelivery inspection activities) to identify vehicles with the condition. If the condition is found, dealers are to replace the transmission under the existing exchange program, see PIP5200A for details.

### b.   Service Bulletin 14-07-30-001

51.     On or around September 1, 2014, GM issued Service Bulletin 14-07-30-001 with the subject "Information on Transmission Adaptive Functions." This bulletin applied to the following vehicle models equipped with 8L90 transmissions (RPO M5U): 2015 Cadillac Escalade, 2015 Cadillac Escalade ESV, 2015 Chevrolet Corvette, and 2015 GMC Yukon. In the bulletin, GM stated that "[s]ome customers may comment on low mileage vehicles with automatic transmission that shift feel to be too firm (harsh) or may slip or flare. Customers should be advised that the transmission makes use of an adaptive function that will help to refine the shift feel while driving and improve shift quality." The bulletin also included description of transmission's adaptive learning functions and a section titled "How to Adapt Your Transmission" containing GM's instructions to train the adaptive learn process "for a concern with a 1-2 upshift" and "for a concern with a 3-1 coastdown (closed throttle) shift."

52.     From October 2014 to October 2018, GM subsequently issued seven updates to Service Bulletin 14-07-30-001, numbered 14-07-30-001A through 14-07-30-001G.

53.     On or around October 8, 2014, GM issued Service Bulletin 14-07-30-001A with

---

[9]     RPO stands for Regular Production Option and is General Motors' standard coding for vehicle configuration options.

GM's service bulletins refer to the 8L90 transmission at issue by name (8L90), by RPO code (M5U, M5X, or M5E), or by both name and RPO code(s).

GM's service bulletins refer to the 8L45 transmission at issue by name (8L45), by RPO code (M5T or M5N), or by both name and RPO code(s).

the same subject and covered vehicles listed on the previous version. In this bulletin, GM again noted that "[s]ome customers may comment on low mileage vehicles with automatic transmission that shift feel to be too firm (harsh) or may slip or flare." This revised bulletin was issued to provide updated information in the "How to Adapt Your Transmission" section, including a chart of shifts and their corresponding clutches, along with new, more detailed instructions to train the adaptive learn process for each of these clutches.

54.     On or around December 1, 2014, GM issued Service Bulletin 14-07-30-001B with the subject "Information on Transmission Adaptive Functions and Correcting Low Mileage HarshShift." In addition to the vehicles listed on the previous versions of this bulletin, the following models equipped with 8L90 transmissions were added: 2015 Chevrolet Silverado, 2015 GMC Sierras, and 2015 GMC Yukon XLs. The revised bulletin also included instructions for resetting and "relearning" transmission adapts using diagnostic software ("Transmission Adaptive Values Learn procedure through GDS 2") instead of performing the adaptive instructions while driving the vehicle but noted that the software function would not resolve the issue in 2015 Corvettes built before September 29, 2014, which "must be driven to learn the adapts."

55.     On or about January 27, 2015, GM issued Service Bulletin 14-07-30-001C with the same subject, the same covered vehicles, and substantially the same information included in the previous version. However, this revised version added a note to the "How to Adapt Your Transmission" section stating that "[t]he transmission fluid temperature must be between 75°C (167°F) and 85°C (185°F) during the drive procedure or adapts will not be learned."

56.     On or about May 7, 2015, GM issued Service Bulletin 14-07-30-001D with the same subject and covered vehicles listed on the previous version. In this revised bulletin, GM provided updated instructions for resetting and "relearning" transmission adapts using different diagnostic software, the Transmission Service Fast Learn procedure through GDS 2, as opposed to the Transmission Adaptive Values Learn procedure in previous bulletins.

57.     On or about July 27, 2015, GM issued Service Bulletin 14-07-30-001E with the same subject and covered vehicles listed on the previous version. It also included substantially the

14

same instructions for resetting and "relearning" transmission adapts. However, this revised bulletin included new information explicitly acknowledging that the Warranty applied to the transmission repair, stating: "Warranty Information. For vehicles repaired under the Powertrain coverage, use the following labor operation. Reference the Applicable Warranties section of Investigate Vehicle History (IVH) for coverage information," and listing the applicable labor code as 8480318.

58.    On or about March 4, 2016, GM issued Service Bulletin 14-07-30-001F with the same subject and covered vehicles listed on the previous version. This revised bulletin repeated that "[s]ome customers may comment on low mileage vehicles with automatic transmission that shift feel to be too firm (harsh) or may slip or flare" but added that "[c]learing the shift adapts without performing a Service Fast Learn should not be considered a repair procedure as the transmission will simply relearn the previous settings." The bulletin then proceeded to outline more detailed instructions "to determine what steps should be followed" to diagnose and perform the recommended "relearn" functions to adapt the clutches. However, like the previous version, this bulletin explicitly acknowledged that the Warranty applied to the transmission repair, stating: "Warranty Information. For vehicles repaired under the Powertrain coverage, use the following labor operation. Reference the Applicable Warranties section of Investigate Vehicle History (IVH) for coverage information," and listing the applicable labor code as 8480318.

59.    On or about March 3, 2017, GM issued Service Bulletin 14-07-30-001G with the same subject as the previous version. However, this revised bulletin applied only to 2015 Chevrolet Corvettes equipped with 8L90 transmissions (RPO M5U) and instructed GM technicians, "For all truck and utility applications with the 8L90 automatic transmission, refer to 16-NA-411 for the latest information for correcting low mileage harsh shifts." This revised bulletin's substantive information, including the service instructions and warranty information, otherwise remained the same as the previous version.

c.    **Service Bulletin 14876**

60.    In or around December 2014, GM Issued Service Bulletin 14876 with the subject

"Service Update for Inventory Vehicles Only 8-speed Transmission Harsh Shift." Under the section titled "Purpose," GM stated that "[o]n certain 2015 model year Cadillac Escalade, Cadillac Escalade ESV, Chevrolet Corvette, Chevrolet Silverado Double Cab and Crew Cab, GMC Sierra Double Cab and Crew Cab, GMC Yukon and GMC Yukon XL vehicles equipped with 8-speed automatic transmission (M5U), the customer may complain about harsh shifting. This can occur if the vehicle experienced multiple transmission reprogramming events during manufacturing, causing the calibration to over-adjust the shift parameters. This bulletin provides a service adaptive learn procedure that should be run to reset the calibration to the baseline parameters."

### d.     Service Bulletin 15-NA-007

61.     On or around September 15, 2015, GM issued Service Bulletin 15-NA-007 in response to customer complaints reporting conditions such as delayed engagement, "Firm garage shifts, Park to Drive or Park to Reverse after the vehicle has be [sic] sitting for several hours with the engine off," a clunking noise when the engine starts, and/or an illuminated malfunction lamp relating to diagnostic transmission code P16F3. This bulletin applied to the following vehicle models equipped with 8L90 transmissions (RPO M5U): 2015 Cadillac Escalade, 2015 Chevrolet Silverado, 2015 GMC Sierra, 2015 GMC Yukon and included directions regarding a software update and programming the transmission control module ("TCM").

62.     GM re-issued three updates to this service bulletin. On or around September 30, 2015, "delayed engagement" was removed from the subject. On or around October 21, 2015, the bulletin was expanded to cover the 2015 Chevrolet Corvette. On or around January 22, 2016, the bulletin was expanded to cover the 2016 model years for the vehicles listed in the original bulletin.

### e.     Service Bulletin PIP5337

63.     On or around October 13, 2015, GM issued Service Bulletin PIP5337 with the subject "Shake Or Shudder On Acceleration Excessive Engine RPM Fluctuation." This bulletin applied to the following vehicle models equipped with 8L90 transmissions (RPO M5U): 2015-

2016 Cadillac Escalade, 2015-2016 Cadillac Escalade ESV, 2015-2016 Chevrolet Silverado, 2015-2016 GMC Sierra, 2015-2016 GMC Yukon, and 2015-2016 GMC Yukon XL. In the bulletin, GM advised its service technicians that customers may report "[e]xcessive engine RPM fluctuation" and "[a] shudder feeling that may be described as driving over rumble strips or rough pavement." GM's bulletin stated that the complained of conditions do not occur 1) "during vehicle launch from a stop," 2) "when the transmission is shifting gears," 3) "when the vehicle is decelerating," 4)or "when TCC slip speed is zero." GM's bulletin included no diagnostic or repair procedures, but merely stated, "These conditions may be caused by an internal torque converter issue. A revised torque converter that addresses these conditions will be available soon."

64.     From January 20, 2016 to October 2018, GM subsequently issued 11 updates to Service Bulletin PIP5337, numbered PIP5337A through PIP5337K.

65.     On or around January 20, 2016, GM issued PIP5337A to include more vehicles and to recommend procedures to diagnose and evaluate the shudder issue. Among the step-by-step evaluation procedures, GM also advised its service technicians to flush the transmission twice, replace the transmission fluid using Dexron HP (Part No.19300536), clean the transmission pan, and replace the pan and the filter.

66.     On or around February 22, 2016, GM issued PIP5337B to update procedures to evaluate and service the shudder issue. GM included more specific and different instructions to its service technicians regarding flushing of the transmission, cooler lines, and cooler; replacement of the transmission fluid using Dexron HP, the transmission pan, and transmission filter. However, GM continued advise that "[i]f the condition is not resolved after completion of the second transmission flush procedure the condition may be caused by an internal torque converter issue. These conditions may be caused by an internal torque converter issue. A revised torque converter that addresses these conditions will be available soon." Similar to PIE0353 and later versions of 14-07-30-001, this bulletin update included a "Warranty Information" section with a specific Labor Operation code.

67.     In March through October 2016, GM issued the four updates to PIP5337 with minor

changes: GM issued PIP5337C or around March 8, 2016 to update the transmission fluid part numbers. GM issued PIP5337D on or around June 3, 2016 to update the build dates for the applicable vehicles covered by the update; GM issued PIP5337E on or around August 15, 2016 to update labor time under the "Warranty Information" section. GM issued PIP5337F on or around October 19, 2016 to update fluid part numbers and ordering process.

68.     GM issued PIP5337G on or around November 16, 2016 with updates to its diagnostic recommendations. The bulletin also directed technicians to "refer to bulletin 16-NA-175 for all other vehicles [i.e., not listed in PIP5337] equipped with the 8L90 automatic transmission RPO (M5U) with shudder concerns." Notably, unlike prior versions, GM removed its statement that the complained of conditions do not occur 1) "during vehicle launch from a stop," 2) "when the transmission is shifting gears," 3) "when the vehicle is decelerating," 4) or "when TCC slip speed is zero." Instead, it listed the following complaints without the above qualifications:

- A shake and/or shudder during light throttle acceleration between 48 and 104 km/h (30 and 65 mph) steady state driving when transmission is not actively shifting gears.
- A shudder feeling that may be described as driving over rumble strips or rough pavement.
- A shudder feeling that is evident in both Drive and M7 mode.

69.     GM issued two additional updates, containing minor changes, that are available online: GM issued PIP5337H on or around December 21, 2016 to remove part numbers, and issued PIP5337J on or around November 29, 2017 to update fluid information.

70.     On or about October 4, 2018, GM issued PIP5337J, which only listed the same applicable vehicles, but contained no reported conditions or recommendations. Instead, the bulletin directed technicians to "refer to bulletin 16-NA-175 for vehicles equipped with the 8L90 automatic transmission RPO (M5U) with shudder concerns." GM further directed, "Please follow this diagnostic or repair process in Bulletin 16-NA-175, [sic] thoroughly and complete each step If the condition exhibited is resolved without completing every step, the remaining steps do not need to

be performed."

### f.     Service Bulletin PIE0353

71.     On or around February 11, 2016, GM issued Service Bulletin PIE0353 to address consumer complaints reporting "a shake or shudder on light acceleration or steady state cruise." This bulletin applied to the following vehicle models equipped "with 8-Speed Automatic Transmission 8L90 (RPO M5U) and 5.3 Engine (RPO L83)": "2016 Chevrolet Silverado Models" and "2016 GMC Sierra Models." The bulletin contained instructions to perform different procedures enabling technicians to observe the torque converter clutch slip during the shudder and explicitly directed the technicians to contact GM engineers listed on the bulletin. In the bulletin, GM stated that "GM Engineering is attempting to determine the root cause of the above condition. Engineering has a need to gather information on vehicles PRIOR to repair that may exhibit this condition. As a result, this information will be used to 'root cause' the customer's concern and develop/validate a field fix." Again, the bulletin included a "Warranty Information" section with Labor Operation code 8480428.

### g.     Service Bulletin 16-NA-014

72.     On or around January 21, 2016, GM issued Service Bulletin 16-NA-014 with the subject "Delayed Engagement After Sitting With Engine Off." This bulletin applied to the following vehicle models equipped with an 8L45 or 8L90 transmission: 2015-2016 Cadillac Escalade, 2016 Cadillac Escalade ESV, 2016 Cadillac ATS, 2016 Cadillac CTS, 2015-2016 Chevrolet Corvette, 2015-2016 Chevrolet Silverado, 2015-2016 GMC Sierra, 2015-2016 GMC Yukon and 2015-2016 GMC Yukon XL. In the bulletin, GM stated that "[s]ome customers may comment on a condition of delayed engagement when the transmission is shifted from Park to Reverse or Park to Drive after the vehicle has been sitting with the engine off. This condition may typically occur after several hours or more commonly overnight." GM's recommended correction was to "[i]nstall a new stator shaft support assembly.

73.     GM issued an update on or around April 22, 2016 to update part numbers.

74.     On or around June 16, 2016, GM issued an update to clarify the reported condition, to identify the cause of the reported condition, and to add diagnostic procedures for the C5 clutch and torque converter. Specifically, GM stated that "[t]his condition may be caused by the torque converter draining the transmission fluid back into the transmission pan." Additionally, GM advised that customers may describe the reported condition as follows:

- Vehicle delaying into gear.

- Not wanting to move.

- Feeling like the transmission is slipping.

- Delayed engagement followed by a harsh engagement.

75.     On or around November 17, 2016, GM issued an update to clarify the applicable vehicle models and provide more detailed repair or diagnostic procedures. The updated bulletin applied to the following vehicle models within the VIN range identified in the bulletin: vehicles equipped with an 8L45 or 8L90 transmission: 2015-2016 Cadillac ATS, 2015-2016 Cadillac CTS; vehicles equipped with an 8L45 transmission: 2015-2016 Chevrolet Camaros with a 3.6L engine and VIN on or before September 28, 2015, 2015-2016 Chevrolet Camaros with a 2.0L engine and VIN on or before November 9, 2019; vehicles equipped with an 8L90 transmission: 2015-2016 Cadillac Escalade, 2015-2016 Cadillac Escalade ESV, 2015-2016 Chevrolet Camaro, 2015-2016 Chevrolet Corvette, 2015-2016 Chevrolet Silverado, 2015-2016 GMC Sierra, 2015-2016 GMC Yukon, and 2015-2016 GMC Yukon XL. GM's recommended correction was to replace parts of the transmission and/or the transmission pan, depending on the symptoms described by the customer. Like PIE0353 and later versions of 14-07-30-001, this bulletin update included a "Warranty Information" section with a specific Labor Operation code.

### h.     Service Bulletin 16-NA-019

76.     On or around January 25, 2016, GM issued Service Bulletin 16-NA-019 with the subject "Information on Transmission Adaptive Functions and Correcting Low Mileage Harsh

Shifts, Slips, or Flares." This bulletin applied to all 2016 passenger cars and trucks under the Buick, Cadillac, Chevrolet, or GMC brands equipped with 8L90 or 8L45 automatic transmissions (RPOs M5U, M5T, M5N, M5X). Under the "Condition" section of this bulletin, GM stated, "[s]ome may comment on low mileage vehicles with an automatic transmissions [sic] that they shifting may feel too firm (harsh), slips, or flares. Customers should be advised that the transmission makes use of an adaptive function that will help to refine the shift feel while driving and improve shift quality." The bulletin also included description of transmission's adaptive learning functions and instructions for resetting and "relearning" transmission adapts. Like PIE0353 and later versions of 14-07-30-001, this bulletin update included a "Warranty Information" section with a specific Labor Operation code.

77.     On or around August 19, 2016, GM issued an update to Service Bulletin 16-NA-019 as 16-NA-019A with "[a]dded 2017 Model Year and updated information." Specifically, the bulletin directed GM technicians to "check the ECM/TCM Software/Calibrations against what's currently in the vehicle and if the description of the update is relevant to the customer concern please perform the update prior to proceeding with the learns" outlined in the revised bulletin. The revised bulletin included the same "Warranty Information" section as the original bulletin.

### i.     Service Bulletin 16-NA-175

78.     On or around May 31, 2016, GM issued Service Bulletin 16-NA-175 with the subject "Shake and/or Shudder During Light Throttle Acceleration Between 48 and 104 KM/H (30 and 65 MPH) at a Steady State." This bulletin applied to the following vehicle models built after November 1, 2015 equipped with a 5.3L or 6.2L engine and equipped with 8L90 transmissions (RPO M5U): 2016 Cadillac Escalade models; 2016 Chevrolet Silverado, 2016 GMC Sierra, and 2016 GMC Yukon models. In the bulletin, GM advised its service technicians that customers may report:

- A shake and/or shudder during light throttle acceleration between 48 and 104 km/h (30 and 65 mph) steady state driving when transmission is not actively shifting gears.

- A shudder feeling that may be described as driving over rumble strips or rough pavement.
- A shudder feeling that is evident in both Drive and M7 mode.

79.     GM included procedures to diagnose and service the shudder issue, including detailed instructions for flushing the transmission several times and cleaning "the pan/magnet if any metallic particles present and replac[ing] filter if debris is found[.]" Similar to PIE0353 and later versions of 14-07-30-001, this bulletin update included a "Warranty Information" section with a specific Labor Operation code.

80.     From June 2016 to February 2019, GM subsequently issued 13 updates to Service Bulletin 16-NA-175.

81.     GM issued an update on or around June 1, 2016, adding a breakpoint date, and again on or around November 29, 2016 to add the 2017 model years and updated information to service personnel, including graphics, in the diagnosis instructions.

82.     On or around February 27, 2017, GM issued another update to Service Bulletin 16-NA-175. This version applied to the following vehicles containing 8L90 (M5U, M5X) or 8L45 (M5T, M5N) transmissions: all GM passenger cars and trucks for model years 2015-2017 and Cadillac, Chevrolet, and GMC brands. GM also provided detailed instructions for diagnosing the shudder as a TCC (torque converter clutch) shudder using picoscope and NVH software.

83.     GM issued an update on or around April 18, 2017 to update the information on the chart specifying, for each model year, the conditions under which the shudder was observed. Another update was issued on or around August 24, 2017 to expand the miles per hour ranges where the shudder occurred and to include more detailed information on diagnostics. Another update was issued on or around October 4, 2017 to update VIN breakpoints. On or around December 1, 2017, another update was issued to include the 2018 model years and updated Service Procedure sections. On or about December 14, 2017, the bulletin was again revised to remove the "Note" statement regarding the use of DEXRON VI to flow and flush transmission cooling system. On or about June 5, 2018, another revised bulletin was released to remove the Colorado/Canyon

Models and update a note regarding Canadian dealer orders. On or around September 4, 2018, a revised bulletin was issued to include a "Parts Information" section.

84.     On or around October 10, 2018, GM issued yet another revised bulletin to update the vehicle models section and the models in shudder conditions test table, to remove VIN Breakpoint information, to add the 2019 Model Year, to remove the Transmission Filter Replacement information and to change the fluid quantity in the Parts Information section. This bulletin applied to the following vehicle models equipped with 8 speed automatic transmissions: 2016-2019 Cadillac ATS (M5N, M5U); 2016-2018 Cadillac CT6 (M5N, M5U); 2016-2019 Cadillac CTS 9M5N, M5U); 2015-2017 Cadillac Escalades (M5U); 2016-2019 Chevrolet Camaros (M5T); 2016-2018 Chevrolet Camaros (M5U); 2019 Chevrolet Colorado (M5T); 2015-2019 Chevrolet Corvettes (M5U); 2015-2018 Chevrolet Silverado (M5U, M5X); 2015-2017 GMC Yukon (M5U); 2019 GMC Canyons (M5T); 2015-2018 GMC Sierras (M5U, M5X). Importantly, GMC stated:

> Important: Do NOT replace the torque converter or transmission assembly for this condition. Engineer reviews have proven that replacing the torque converter does not provide a long-term solution to TCC shudder. A revised service procedure will be released in Q1 of 2019. If the vehicle experiences a repeat shudder condition, this document should be followed again.

85.     On or around February 08, 2019, GMC issued the fourteenth version of Service Bulletin 16-NA-175. This bulletin removed all the diagnostic and service procedure information and instead directed technicians to "[f]ollow the service procedures outlined in TSB 18-NA-355."

### j.     Service Bulletin PIP5405

86.     On or around June 2, 2016, GM issued Service Bulletin PIP5405 with the subject "Surge Misfire Feeling Sensation During Highway Steady State Driving." This bulletin applied to the following vehicle models equipped with 8L90 transmissions (RPO M5U): 2015-2016 Cadillac Escalade, 2016 Cadillac CTS-V, 2014-2016 Chevrolet Corvette, 2014-2016 Chevrolet Silverado,

2016 Chevrolet Camaro, 2015-2016 Chevrolet Tahoe, 2015-2016 Chevrolet Suburban, 2014-2016 GMC Sierra, 2015-2016 GMC Yukon, and 2015-2016 GMC Yukon XL. In the bulletin, GM advised its service technicians that customers may report: "[a] concern of surge misfire feeling sensation during highway steady state driving in manual mode or automatic, typically 6th, 7th, 8th gear accelerating 1000 to 2500 rpm under load. TCC engaged, no misfire data or P0300 codes present." However, GM stated that if these symptoms are presented, the vehicle "is operating as [d]esigned." GM further advised:

> The normal operation of engines and transmissions generate various vibrations and engine and transmission mounts try to isolate those vibrations from the rest of the vehicle. While the mounts do a great job of isolating most vibrations there may still be certain engine loads and rpm's that generate vibrations that customers may feel in the vehicle. Changes in engine load or rpm will change the vibrations produced making it more or less apparent to occupants in the vehicle. When issues of this nature are encountered, like equipped vehicles should be compared, and if consistent results are identified, this should be considered a "normal" characteristic of the vehicle.

87.     On or around June 6, 2016, GM issued a revised Service Bulletin, PIP5405A to update the applicable vehicle models. PIP5405A applied to 2014-2016 Chevrolet Corvette, 2016 Chevrolet Camaro, and 2016 Cadillac CTS-V. On or around December 12, 2016, GM issued a revised Service Bulletin, PIP5405B, to include model year 2017 for these vehicles, making the bulletin applicable to 2014-2017 Chevrolet Corvette, 2016-2017 Chevrolet Camaro, and 2016-2017 Cadillac CTS-V.

### k.      Service Bulletin 16-NA-213

88.     On or around June 28, 2016, GM issued yet another Service Bulletin to address consumer comments "that the transmission has developed a harsh shift." This bulletin, 16-NA-213, applied to the following vehicle models equipped with an 8L90 or 8L45 transmission (RPOs M5U, M5T, M5N) built between July 1, 2015 to September 14, 2015: 2015-2016 Cadillac Escalade, 2015-2016 Cadillac ATS, ATS V, CTS, CTS V, 2015-2016 Chevrolet Corvette, 2015-

24

2016 Chevrolet Silverado, and 2015-2016 GMC Sierra. The bulletin specifically noted that "there may be more than one shift that is harsh" and that some transmissions, those with "a suspect Clutch Control Solenoid," should have the valve body replaced.

**l.      Service Bulletin PIP5437**

89.      On or around November 8, 2016, GM issued another service bulletin to address the ongoing, unremedied Transmission Defect. This bulletin, PIP5437, was titled "8L45 8L90 Diagnostic Tips for Harsh Shifts" to address consumer comments that "the transmission in their vehicle is not shifting correctly." The bulletin applied to the following vehicle models equipped with an 8L90 or 8L45 transmission: 2015-2016 Cadillac Escalade, 2016 Cadillac Escalade ESV, 2016 Cadillac ATS, ATS-V, CTS, and CTS-V, 2015-2017 Chevrolet Corvette, 2015-2017 Chevrolet Silverado, 2016-2017 Chevrolet Camaro, 2015-2017 GMC Sierra, and 2015-2017 GMC Yukon. The bulletin directed technicians to use software to identify the shift problems and to perform a drive learn procedure on low-mileage vehicles. On higher mileage vehicles, the bulletin instructed technicians to remove the transmission fluid pan and inspect for debris. Technicians were further instructed, "if debris is found the transmission should be disassembled for root cause and repairs. If excessive debris is not found the valve body should be replaced." This bulletin was updated on or around November 14, 2016 to cover additional vehicle models equipped with an 8L90 or 8L45 transmission, namely 2017 Cadillac Escalade, 2017 Cadillac Escalade ESV, and 2017 Cadillac ATS, ATS-V, CTS, and CTS-V.

**m.      Service Bulletin 16-NA-411**

90.      On or around January 20, 2017, GM issued Service Bulletin 16-NA-411 to provide GM technicians with yet another a procedure to reprogram the ECM and TCM to correct ongoing complaints relating to the Transmission Defect. This bulletin applied to the following vehicle models equipped with an 8L90 transmission: 2015-2016 Cadillac Escalade models; 2015-2016 Chevrolet Silverado, 2015-2016 GMC Sierra, and 2015-2016 GMC Yukon models. Specifically,

the bulletin addressed the following consumer comments on the following conditions:

- Harsh 1-2 upshift (except for the first 1-2 upshift of the day)
- Harsh 3-1 downshift when de-accelerating to a stop
- Harsh downshift under heavy throttle apply
- Active Fuel Management (AFM) V4 to V8 transition harshness
- Coast down downshifts

91.     Notably, the bulletin specifically acknowledged that:

> [t]he new ECM and TCM software will not improve the following conditions and should not be installed for any of the following conditions:

- Shift quality of the first 1-2 shift of the day
- Power-On lift foot upshifts (Heavy throttle application followed by a closed throttle application which results in a transmission up shift)
- Delayed/slow engagement (Refer to Bulletins 16-NA-014 and 16-NA-364)
- TCC Shudder (Refer to PIP5337 and Bulletin 16-NA-175)
- Engine or Chassis induced vibrations
- Fuel Economy

### n.     Service Bulletin 16-NA-404

92.     On or around April 7, 2017, GM issued Service Bulletin 16-NA-404 to provide GM technicians with another procedure to reprogram the TCM to correct the diagnostic transmission code set relating to the same complaints reiterated above arising from the Transmission Defect. This bulletin applied to the following vehicle models equipped with an 8L45 and 8L90 transmissions (M5T, M5N, M5U, M5X): 2017 Cadillacs ATS and CTS built before December 6, 2016; 2017 Cadillacs CT6 (Excluding RPO I16) built before November 17, 2016; 2017 Cadillacs Escalade built before December 16, 2016; 2017 Chevrolet Camaro built before December 6, 2016; 2017 Chevrolet Corvette built before December 8, 2016; 2017 Chevrolet Silverado built before December 16, 2016; 2017 Chevrolet Suburban (excluding RPO I16) built before December 16, 2016; 2017 Chevrolet Tahoe (Excluding RPO I16) built before December 16, 2016. It also applied the following vehicles built before December 16, 2016 and equipped with automatic 8L90

transmissions (M5U, M5X): 2017 GMC Sierra and 2017 GMC Yukon (excluding RPO I16). The bulletin addressed the following consumer complaints reporting:

- Harsh shift
- Delayed shift
- Unwanted downshift
- Transmission stuck in one gear
- Erratic shifting
- Hesitation between shifts
- MIL illuminated

93.     Bulletin 16-NA-404 contained instructions to dealers to reprogram the Transmission Control Module with another software update.

### o.     Engineering Information PIE0405

94.     On or around April 7, 2017, GM issued PIE0405 to address consumer complaints reporting "a shake or shudder while driving." This bulletin applied to the following vehicle models equipped with transmissions 8L90 (M5U, M5X) and 8L45 (M5T, M5N), model years 2017 with VINs beginning on March 1, 2017: Cadillac ATS, CT6, CTS, Cadillac Escalade; Chevrolet Camaro, Chevrolet Colorado, Chevrolet Corvette, Chevrolet Silverado, GMC Canyon, GMC Sierra, and GMC Yukon. The bulletin contained instructions to perform different procedures enabling technicians to observe the torque converter clutch slip during the shudder and explicitly directed the technicians to contact GM engineers listed on the bulletin. In the bulletin, GM stated that "GM Engineering is attempting to determine the root cause of the above condition. Engineering has a need to gather information on vehicles PRIOR to repair that may exhibit this condition. As a result, this information will be used to 'root cause' the customer's concern and develop/validate a field fix." The bulletin included a "Warranty Information" section with Labor Operation code 8480428.

95.     GM issued an update, PIE0405A, on or around September 21, 2017 to include model years 2018. GM issued an update, PIE0405B, on or around October 4, 2017 to highlight

that it applied to vehicles built after March 1, 2017 and to direct technicians to use bulletin 16-NA-175 for vehicles built before that date. GM issued an update, PIE0405C, on or around January 29, 2018, which removed the diagnostic instructions and instead referred technicians to refer to 16-NA-175 to service any covered vehicles exhibiting the reported problems.

**p.    Service Bulletin 16-NA-361**

96.    On or around July 21, 2017, GM issued Service Bulletin 16-NA-361 with the subject, "Information on Transmission Harsh 1-2 Shift Upon First Start Up/Shift of the Day Under Light Throttle." This bulletin applied to the following vehicle models equipped with an 8L45 and 8L90 transmissions (M5T, M5N, M5U, M5X): 2016-2017 Cadillac ATS and CTS, 2016-2017 Cadillac CT6, 2016-2017 Cadillacs Escalade models, 2016-2017 Chevrolet Camaro, 2016-2017 Chevrolet Colorado (VIN S, T), 2015-2017 Chevrolet Corvette, 2017 Chevrolet Silverado, 2017 Chevrolet Express, 2017 GMC Canyon, 2017 GMC Savana, 2015-2017 GMC Sierra and 2015-2017 GMC Yukon. The bulletin addressed the following consumer complaints reporting "that the transmission exhibits a harsh 1-2 shift on the first shift of the day, typically under light throttle."

97.    GM identified the cause of these reported conditions as "due to the initial clutch fill time of the 2-3-4-6-8 (C4) clutch." GM's bulletin included no diagnostic or repair procedures. Instead, it stated that "the first 1-2 shift of the day may be harsh[.]" Notably, it advised: "Important: Replacing transmission components or complete assemblies will not improve the condition." GM claimed, "This condition will not impact the designed performance or reliability of the vehicle."

**q.    Service Bulletin 18-NA-177**

98.    However, consumer complaints persisted and GM's ineffectual fixes allowed the Transmission Defect to go uncorrected. On or around June 5, 2018, GM issued yet another Service Bulletin, 18-NA-177, addressing the shaking and/or shuddering during light throttle acceleration at moderate to high speeds at a steady speed. This bulletin applied to the following vehicle models built before June 1, 2018 equipped with 8L45 transmissions (M5T): 2017-2018 Chevrolet

Colorado and 2017-2018 GMC Canyon. GM directed its technicians to determine whether the vibration was "TCC [torque converter clutch] Shudder" using picoscope and NVH software. If the cause of the vibration was TCC shudder, technicians were directed to replace the torque converter assembly and the transmission pan and filter. Like PIE0353 and later versions of 14-07-30-001, this bulletin update included a "Warranty Information" section with a specific Labor Operation code.

### r.     Service Bulletin 18-NA-235

99.    On or around September 11, 2018, GM issued Service Bulletin 18-NA-235 regarding information on surge, chuggle, misfire, fishbite, and shudder during driving maneuvers. This bulletin applied to the following vehicle models: 2015-2017 Cadillac Escalade with 6.2L engines and 8L90 (M5U) transmissions; 2015-2018 Chevrolet Silverado with 5.3 (L83) and 6.2 (L86) engines and 8L90 (M5U, M5X) transmissions; 2019 Silverado 1500 (new models) with 5.3 (L84) engines and 8L90 (MQE) transmissions; 2019 Chevrolet Suburban with 5.3 (L83) and 6.2 (L86) engines and 8L90 (M5U) transmissions; 2018-2019 Chevrolet Tahoe with 5.3 (L83) and 6.2 (L86) engines and 8L90 (M5U) transmissions; 2015-2018 GMC Sierra with 5.3 (L83, L84) and 6.2 (L86) engines and 8L90 (M5U, M5X, MQE) transmissions; 2019 GMC Sierra 1500s (new models) with 5.3 (L84) engines and 8L90 (MQE) transmissions; and 2015-2017 GMC Yukon with 6.2 (L86) engines and 8L90 (M5U) transmissions. Although the bulletin specifically was issued to address customer complaints of a surge, chuggle, misfire, fishbite, and shudder while driving at a steady speed between 35 and 55 MPH with light steady throttle conditions, GM stated that "[i]f TCC slip is steady and there are no misfires, the condition should be considered characteristic of the vehicle and no repairs should be attempted."

### s.     Service Bulletin 18-NA-356

100.    On or around November 20, 2018, GM issued Service Bulletin 18-NA-356 regarding customer complaints of a "vibration and/or noise heard during hard acceleration at

speeds of 77 km/h (48 mph) to 83 km/h (52 mph)." This bulletin applied to the following vehicle models: 2015-2018 Chevrolet Colorado and 2015-2018 GMC Canyon with 3.6L (RPO LGZ) engines and 8L45 (RPO M5T) transmissions. GM's recommended correction was to "install a tapered shim between the axle and leaf spring to adjust the angle" using the procedure in the bulletin.

### t.      Other Service Bulletins and Communications Involving the Eight-Speed Transmissions

101.    In addition to the service bulletins described above, GM issued at least 13 service bulletins regarding part restrictions.

102.    For instance, from July 21, 2014 to April 7, 2016, GM issued PIP5200 and 11 updates through PIP5200K "The 8L90 8 Speed Automatic Transmission is on restriction through GM PQC as part of our ongoing quality improvement efforts to assist Engineering with product concern identification effective on 07/01/2014."

103.    On or around October 16, 2017, PIP5526 was issued to institute a part restriction on the 8L45 and 8L90 8 Speed Transmission Park Pawl Actuator Rod. On or around March 15, 2016, PIP5526A was issued to end the part restriction.

104.    In addition to the above bulletins, GM issued a number of bulletins and Customer Satisfaction Program documents relating to other issues arising from the Transmission Defect. For instance, the following bulletins were issued regarding Malfunction Indicator Lamps illuminating upon shifts or shudders, when shifting, or refusing to turn off without explanation. *See, e.g*. Service Bulletin 15-07-30-002 and 15-07-30-002A released in early 2019; PIP5274 issued on or around March 4, 2015; PIP5425 and PIP5425A issued in or around September 2016; Service Bulletin 16-NA-194 issued in or around June 2016.

105.    Additionally, Service Bulletin 15178 was issued in or around April 2015 to direct dealers to perform service updates for inventory vehicles equipped with the 8-speed transmission (M5U) to address a transmission gear whine noise.

106.    In or around May 2015, GM issued Program Bulletin 15216 announcing a Customer Satisfaction Program "to replace two u-joint retainers and four u-joint retainer bolts with new bolts that include an adhesive patch" This bulletin covered the following vehicles equipped with 6.2L Engine (RPO L86) and 8-speed Automatic Transmission (RPO M5U): 2015 Cadillac Escalade, Escalade ESV; 2015 Chevrolet Silverado LD Crew and Double Cab; 2015 GMC Sierra LD Crew and Double Cab, Yukon, Yukon XL.

107.    In or around in June 2016, GM issued communication number N16204447 announcing a Customer Satisfaction Program. The program was expected to apply to approximately 80 vehicles that "may have been built with an incorrectly machined torque converter pressure plate." GM offered to replace the 8-Speed Automatic Transmissions (M5N and M5T) in eligible vehicles and acknowledged that "[o]ver time, this condition could result in a shudder or vibration, fluctuations on the tachometer and possible torque converter failure.

### 2.    *Numerous Consumer Complaints on the NHTSA Demonstrate That GM Was Aware of the Transmission Defect.*

108.    Federal law requires automakers like GM to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. See TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

109.    Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. Id. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. Id. Thus, GM knew or should have known of the many complaints about the Transmission Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, GM to the Transmission Defect.

110.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the transmission. Complaints that owners and lessees filed with the NHTSA demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate GM's awareness of the problems with the transmission and how potentially dangerous the defective condition is for consumers. The following is just a small sampling of the over hundreds of safety-related complaints describing the Transmission Defect (spelling and grammar mistakes remain as found in the original) (Safecar.gov, Search for Complaints (May 7, 2019), http://www-odi.nhtsa.dot.gov/complaints/):

**a.      2015 Cadillac Escalade**

111.    On the NHTSA website, there are at least 40 consumer complaints for "2015 Cadillac Escalade." As one example, on May 13, 2015, the following incident was reported:

> ACCELERATION FOR NO REASON. I WAS BACKING OUT
> OF A PARKING SPOT AND I PUT THE CAR IN REVERSE. I
> WAS NEARING THE EDGE OF THE CURB ON MY RIGHT
> FRONT WHEEL SO I STEPPED ON THE BRAKE, STOPPED
> THE CAR, AND SHIFTED INTO DRIVE SO I COULD MOVE
> THE VEHICLE FORWARD TO AVOID HITTING THE CURB
> WHILE BACKING OUT . ONCE I SHIFTED INTO DRIVE,
> THE CAR WENT TO FULL ACCELERATION FOR NO
> REASON AND HIT A POLE AT FULL ACCELERATION
> APPROXIMATELY 5 FEET AWAY.

112.    Another incident involving a 2015 Cadillac Escalade was reported on November 23, 2015:

> MY 2015 CADILLAC ESCALADE HAS BEEN IN THE SHOP
> FOR 130+ DAYS IN THE FIRST CALENDAR YEAR FOR
> DEFECTIVE BRAKES, TRANSMISSION, SUSPENSION,
> ELECTRICAL, AND HVAC. I HAVE CONTACTED GM AND
> THEY DON'T WANT TO REPURCHASE THE VEHICLE. THE
> VEHICLE IS CONSTANTLY IN THE SHOP FOR PROBLEMS
> AND IT IS NOT A VEHICLE THAT SHOULD BE OPERATED
> ON PUBLIC ROADWAYS. THE TRANSMISSION HAS BEEN
> REPLACED ONCE BEFORE DUE TO DEFECTS IN DESIGN
> AND BUILD QUALITY. THE TRANSMISSION NOW CAUSES

THE CAR TO TAKE OFF IN 4TH GEAR RATHER THAN IN 1ST GEAR WHICH MEANS THE CAR FEELS AS IF THERE IS NO POWER TO PROPEL THE VEHICLE. THE TRANSMISSION SLIPS AND FEELS AS IF IT IS BROKEN. I HAVE TAKEN IT TO THE DEALER AT LEAST 5 TIMES AND GM NOW DOES NOT WANT TO REPLACE THE TRANSMISSION EVEN THOUGH THE DEALER HAS VERIFIED THE CONCERN AND DOCUMENTED IT. I FEEL THAT GM IS NOT DOING ENOUGH TO ENSURE SAFE VEHICLES ARE ON THE ROAD. THIS TRANSMISSION ISSUE IS GOING TO CAUSE AN ACCIDENT ONE DAY. I HAVE ALREADY PUT GM ON NOTICE ALL THE WAY UP TO THE EXECUTIVE LEVEL AND THEY DON'T WANT TO DO ANYTHING ABOUT IT. I FEEL THAT NHTSA SHOULD INVESTIGATE THE ISSUES THAT PLAGUE 2015 FULL SIZE GM SUV OWNERS. THERE ARE A LOT OF US OUT THERE ACCORDING TO MY RESEARCH.

113.   Another incident involving a 2015 Cadillac Escalade was reported on January 5, 2016:

ENGINE NOISE AND VIBRATION ON COLD START. VERY LOUD GRINDING NOISE COMING FROM ENGINE. HAD IT LOOKED AT 2 TIMES. DEALER SERVICE MANGER JIMMIE STATES ITS NORMAL. THEY ALL MAKE THAT NOISE. I AM 54 YEARS OLD OWNED MORE THAN 15 CARS IN MY LIFE . THIS IS NOT NORMAL. THEY DO NOT WANT TO FIX IT.

### b.   2016 Cadillac Escalade

114.   On the NHTSA website, there are at least 29 consumer complaints for "2016 Cadillac Escalade." As one example, on January 30, 2016, the following incident was reported:

CAR VIBRATES FROM 35MPH UP TO 80 PLUS. HAD IT TO DEALER 5 TIMES AND THEY KNOW THAT THERE IS A VIBRATION. THEY SAID GM SAID THE TORQUE CONVERTER WAS OUT OF BALANCE AND GM WAS DESIGNING A FIX . ABOUT 5 CALLS AND THREE WEEK LATER THEY RECEIVED A NEW SPECIAL TORQUE CONVERTER AND AFTER IT WAS INSTALLED THE VIBRATION WAS STILL THERE. YOU CAN FEEL THE VIBRATION IN THE STEERING WHEEL, THROTTLE, CENTER CONSOLE, FLOOR, AND THE SEAT. THE SERVICE

MANAGER HAS BEEN VERY POLITE AND HAS GONE OUT
OF HIS WAY TO HELP. A GM FIELD SERVICE REP HAS
LOOKED AT THE CAR AND SAID IT IS WITHIN GM SPEC,S.
I AM READING ALL OVER THE INTERNET OF THE SAME
PROBLEM AND GM HAS REPLACED DRIVELINES,
WHEELS, TIRES, TORQUE CONVERTERS, SHOCKS, REAR
AXLES, ENGINE MOUNTS, ETC. AND STILL HAVE A
VIBRATION PROBLEM. THEY HAVE EVEN BOUGHT
SOME OF THE 2015 AND 2016 BACK. THIS IS HAPPENING
ON ALL GM FULL SIZE SUV'S. CHEVROLET, GMC, AND
CADILLAC.

115.    Another incident involving a 2016 Cadillac Escalade was reported on February 2,

2016:

THE CONTACT OWNS A 2016 CADILLAC ESCALADE. THE
CONTACT STATED THAT WHILE DRIVING AT 35 MPH,
THE VEHICLE BEGAN TO VIBRATE AS THE SPEED
INCREASED. THE VEHICLE WAS TAKEN TO BE REPAIRED
BUT THE DEALER COULD NOT REMEDY THE FAILURE.
THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 4,000.

116.    Another incident involving a 2016 Cadillac Escalade was reported on June 27,

2016:

VEHICLE EXHIBITS A CONSTANT VIBRATION AT SPEEDS
BETWEEN 35 MPH AND 75 MPH. VIBRATION IS NOT
ROAD RELATED, IT IS A CONSTANT, STEADY VIBRATION
REGARDLESS OF ROAD CONDITIONS, BEST DESCRIBED
AS IF THE VEHICLE WAS DRIVING OVER CORDUROY.
THERE IS ALSO A STEADY "BUFFETING" NOISE COMING
FROM THE CABIN OF THE VEHICLE AT SPEEDS
BETWEEN 55 MPH AND 70MPH.

VEHICLE WAS BROUGHT TO INDEPENDENT TIRE SHOP
(BY ME) TO HAVE WHEELS AND TIRES ROAD FORCE
BALANCED. REPORT WAS PROVIDED, ALL IN SPEC AND
VIBRATION IS STILL PRESENT.

CURRENTLY, THERE IS A "OPEN TICKET" ON THE
VEHICLE AT THE CADILLAC DEALERSHIP AWAITING A
"GM ENGINEER" TO VERIFY THE VIBRATION. AS A
RESULT, I DO NOT HAVE A COPY OF THE LATEST

INVOICE VERIFYING THE SERVICE VISIT. THE VEHICLE
CURRENTLY HAS 2000 MILES ON IT, THE VIBRATIONS
WERE PRESENT SINE NEW AND SEEM TO BE GETTING
WORSE.

117.    Another incident involving a 2016 Cadillac Escalade was reported on February 25,

2017:

THE GEARS SHIFT ABRUPTLY. WHEN TAKING OFF THE
GEARS WILL SHIFT HARD THAT IT FEELS AS IF
SOMETHING HEAVY IS DROPPING IN THE ENGINE. TOOK
VEHICLE TO DEALERSHIP THREE TIMES WITH SAME
PROBLEM. TOMORROW WILL BE FOURTH TIME WITH
SAME ABRUPT SHIFTING PROBLEM FOR A TOTAL OF 4
TIMES. AFTER DEALERSHIP TRIES TO FIX IT IT
OPERATES WELL FOR ABOUT TWO TO THREE MONTHS
AND THEN THE PROBLEM STARTS AGAIN. ALSO, THE
VEHICLE HAS LOST ALL POWER TWICE NOW, BATTERY
DEAD, DEAD, DEAD. WHEN ATTEMPTING TO TURN ON
THE LIGHTS BLINK QUICKLY, MULTIPLE TIMES BUT IT
DOES NOT HAVE ENOUGH POWER TO TURN ON. THIS
ESCALADE WAS 94,000 TOTAL AND IT IS NOT A QUALITY
VEHICLE! ROUGH RIDE WITH TRANSMISSION KICKING
IN SO ROUGH!!!

118.    Another incident involving a 2016 Cadillac Escalade was reported on September

13, 2018:

KNOWN TRANSMISSION ISSUE WHICH CAUSES THE
VEHICLE TO TO BUCK AND SURGE WHEN YOU PULL UP
TO TA STOP LIGHT, STOP SIGN, ON HIGHWAY,OR IN
TRAFFIC. EXTREMELY DANGEROUS. DEALER STATES
THAT THIS IS A KNOWN CONDITION WITH NO FIX.
DEALER DESCRIBES ISSUES WITH SOME VEHICLES
WORSE THAN OTHERS. GENERAL MANAGER OF
COLONIAL CADILLAC WOBURN MA 781-935-7000 (BRET
DOUGLAS) STATES THAT HE HAS DRIVEN VEHICLES
WITH SAME ISSUES AND THERE IS NO FIX. IT WAS
CORRECTED IN THE 2018 VEHICLES BY GOING TO A 10
SPEED TRANSMISSION. OUR VEHICLE HAS BEEN IN FOR
SERVICE MULTIPLE TIMES WITHOUT ANY SUCCESS IN A
REPAIR. WE ARE AFRAID TO DRIVE THE VEHICLE AS IT
SURGES FORWARD AT ANY GIVEN MOMENT.
CONTACTED CADILLAC AND THEY ARE UNWILLING TO

35

DO ANYTHING TO HELP WITH THE ISSUE. THEY ARE
CONCERNED THAT THIS WOULD START THEM DOWN A
SLIPPERY SLOPE FOR REPAIRING MANY 2015,16,17'S
THAT HAVE THE SAME ISSUE. YOU ONLY HAVE TO
GOOGLE THE ISSUE TO SEE THAT MANY GM OWNERS
ARE DEALING WITH THIS SAME ISSUE. THIS IS A SAFETY
ISSUE THAT NEEDS TO HAVE A RESOLUTION. SOMEONE
IS GOING TO GET SERIOUSLY INJURED OR KILLED AS A
RESULT OF THIS TRANSMISSION ISSUE. PLEASE HELP

119.    Another incident involving a 2016 Cadillac Escalade was reported on September

27, 2018:

FROM A COLD START, WHEN TAKING VEHICLE OUT OF
PARK AND INTO REVERSE, THE VEHICLE WILL SURGE
OR BUCK PRIOR TO APPLYING THE ACCELERATOR. THIS
HAPPENS ABOUT 1/4 OF THE DRIVE TIME. WHEN
ACCELERATING AND THEN COMING TO A COAST AND
BACK TO ACCELERATING, THE CAR WILL BUCK. THIS
HAPPENS ABOUT 1/2 OF THE DRIVE TIME. FROM A COLD
START, REVERSE, DRIVE, ACCELERATE TO 1MPH WHILE
MAKING A SLIGHT RIGHT TURN OUT OF MY DRIVEWAY,
THE VEHICLE BUCKS. THIS HAPPENS ABOUT 3/4 OF THE
DRIVE TIME.

120.    Another incident involving a 2016 Cadillac Escalade was reported on October 5,

2018:

SHUDDER / VIBRATION BETWEEN 45 - 65 MPH. CAUSE
WAS TORQUE CONVERTER. 85 - 90% OF VIBRATION WAS
MITIGATED. CONTINUE TO HAVE STEADY VIBRATIONS
65 -70MPH AND ABOVE. DEALER ALSO INSTALLED NEW
TIRES / WHEELS AND I HAVE HAD A ROAD FORCE
BALANCE.

121.    Another incident involving a 2016 Cadillac Escalade was reported on February 9,

2019:

TRANSMISSION STARTED SLIPPING AT 50K MILES.

SINCE I AM IN THE TRANSPORTATION SERVICE
INDUSTRY, I KNOW MANY PEOPLE THAT HAVE
TRANSMISSION ISSUES ON ESCALADES.

c.      **2015 Chevrolet Corvette**

122.    On the NHTSA website, there are at least 27 consumer complaints for "2015 Chevrolet Corvette." As one example, on October 12, 2014 the following incident was reported:

> AT ANY SPEED THE CAR JERKS LIKE ONE OR MORE
> SPARK PLUG WIRES ARE NOT FIRING(PULLED OFF) IN
> ALL MODES, IT IS WORSE IN (E ECONOMY MODE) PUSH
> THE GAS DOWN IT GETS WORSE IN ALL MODES.
>
> I REPLACED THE PLUGS AND WIRES I STILL HAVE THIS
> PROBLEM, I WAS HOPING IT WAS A BAD PLUG OR WIRE,
> THAT HAPPENS.
>
> I TOOK IT TO THE DEALER WHEN THE CHECK ENGINE
> LIGHT CAME ON I PULLED THE FUSE FOR THE EXHAUST
> VALVES TO KEEP THEM OPEN THEY CHECKED THEN
> TESTED THE CAR AND TOLD ME IT WAS FINE NO OTHER
> CODES WERE FOUND.
>
> I HAVE 1800 MILES ON THE CAR NOW I TRIED EVERY 93
> OCTANE FUEL AVAILABLE IN THIS AREA AND OTHER
> AREAS, HOPING IT WAS JUST BAD FUEL THAT MANY
> STATIONS CAN'T HAVE BAD FUEL FOR IT TO BE FUEL
> RELATED. *TR

123.    Another incident involving a 2015 Chevrolet Corvette was reported on October 27, 2015:

> 8 SPEED AUTOMATIC TRANSMISSION DOWN SHIFTS AT
> A STOP WITH SUCH FORCE IT FEELS AS YOU HAVE BEEN
> HIT FROM BEHIND BY ANOTHER CAR WHILE COMING
> TO A STOP. TRANSMISSION ALSO WILL NOT ALWAYS
> ENGAGE PROPERLY AND WILL OVER REV AND SLAM
> INTO GEAR POSSIBLY CAUSING AN ACCIDENT.
> TRANSMISSION AT TIMES WILL DISENGAGE WHILE
> GOING FORWARD THEN SLAM INTO GEAR WITH GREAT
> FORCE. I WAS TOLD BY A GM INSIDER THAT GM IS
> AWARE SOME TRANSMISSIONS ARE DEFECTIVE AND IS
> WORKING ON A KIT TO FIX THE FLUID STARVATION
> PROBLEM INTERNALLY BUT HAS DONE NOTHING TO
> INFORM OWNERS OF THE POTENTIAL DANGERS OF
> ERRATIC SHIFTING THAT IT'S CAUSING WHILE DRIVING.

> THIS ALSO CAUSES THE TRANSMISSION TO OVER HEAT
> AND TO ILLUMINATE A WARNING LAMP.

124.    Another incident involving a 2015 Chevrolet Corvette was reported on February 27, 2016:

> 8-SPEED AUTOMATIC TRANSMISSION ALWAYS SHIFTS
> ERRATICALLY WHEN STARTING OUT COLD (LAZY
> SHIFT, SLOW SHIFT, ETC.) AND OCCASIALLY DOES
> NOT DOWNSHIFT WHEN CAR COMES TO A STOP, ONLY
> TO SLAM HARD INTO 1ST WHEN GAS PEDAL IS PRESSED
> TO RESUME TRAVEL. DEALER SAYS GM CLAIMS THIS IS
> "NORMAL," BUT NO CAR I'VE EVER OWNED BEHAVES
> LIKE THIS. APPEARS TO BE FLUID STARVATION
> INTERNALLY. ANY FIX/REPLACEMENT WOULD BE
> COSTLY FOR GM, SO GIVEN THEIR HISTORY W/FAULTY
> IGNITION SWITCHES, NOT SURPRISED THEY'RE TRYING
> TO AVOID IT. TRANSMISSION IS DEFINITELY NOT
> NORMAL AND BEHAVIOR IS UNPREDICTABLE +
> UNACCEPTABLE -- ESPECIALLY AT THIS PRICE. WHEN
> CAR IS MOVING & TRANSMISSION IS IN DRIVE AND
> TRYING TO LAZILY SHIFT GEARS, YOU TEMPORARILY
> LOSE ABILITY TO APPLY POWER, WHICH IS BOTH
> DANGEROUS AND UNNERVING. CLEARLY, THIS
> TRANSMISSION WAS PUT INTO PRODUCTION
> W/INADEQUATE TESTING & DEVELOPMENT. A RECALL
> IS NECESSARY TO FIX PROPERLY.

125.    On May 17, 2016, the following incident involving a 2015 Chevrolet Corvette was reported:

> AUTOMATIC 8 SPEED TRANSMISSION HAD TO BE
> REPLACED AT 2000 MILES ON THE ODOMETER DUE TO
> HARD SHIFTS AND SHIFTING AUTOMATICALLY TO LOW
> GEAR AT HIGHWAY SPEEDS NEARLY BRINGING THE
> CAR TO A STOP IN INTERSTATE TRAFFIC, NOW 700
> MILES AND 4 MONTHS LATER THE TRANSMISSION IS
> STUCK IN SECOND GEAR AND YOU CANT DRIVE FAST
> ENOUGH TO GET OUT OF THE WAY OF TRAFFIC. AND I
> KNOW OF SEVERAL OTHER CARS LIKE IT THAT HAVE
> SIMILAR PROBLEMS. THIS IS A REAL SAFETY PROBLEM
> AND GM SEEMS TO IGNORE IT, PROBABLY UNTIL
> SOMEONE GETS HURT OR KILLED.

126.    On August 8, 2016, the following incident involving a 2015 Chevrolet Corvette was reported:

> AUTOMATIC A8 TRANSMISSION HAS THE FOLLOWING ISSUES: 1)MORNING SHIFT FROM REVERSE TO DRIVE SEVERELY DELAYED, BANGS IN EVENTUALLY. 2) ERRATIC SHIFTING IN NORMAL TRAFFIC 3) THE 2-1 DOWNSHIFT WHEN COMING TO A STOP RESULTS IN SEVERE BANG, LURCHES FORWARD AND IS VERY UNSAFE IN A PARKING LOT SITUATION. ALSO IN STOP AND GO TRAFFIC, SAME LURCHING FORWARD. FEELS AS IF SOMEONE HIT YOU FROM BEHIND 4) TORQUE CONVERTER LOCKUP IN 5TH AND 6TH GEAR. DEALER TORE APART THE CAR TO REPLACE THE STATOR, PERFORMED SOFTWARE UPDATE - NEITHER SOLUTION WORKED.

127.    On August 8, 2016, another incident involving a 2015 Chevrolet Corvette was reported:

> THE A8 AUTOMATIC TRANSMISSION IN THE 2015 CORVETTE IS PRONE TO OCCASIONAL HARD DOWNSHIFTS FROM 2ND TO 1ST GEAR WHEN DRIVING AT SLOW SPEEDS (LESS THAN 10 MPH). SOMETIMES THE DOWNSHIFTS ARE SO VIOLENT THAT THE CAR JERKS FORWARD SEVERAL FEET. THE FIRST TIME IT HAPPENED I THOUGHT I HAD BEEN REAR ENDED BY ANOTHER CAR. THE UNPREDICTABLE BEHAVIOR OF THE TRANSMISSION IS ESPECIALLY DANGEROUS IN PROXIMITY TO PEDESTRIANS OR OTHER VEHICLES.

128.    On September 25, 2016, the following incident involving a 2015 Chevrolet Corvette was reported:

> JUST AS YOU ACCELERATE, AROUND 1200 TO 1500 RPM, WITH A LIGHT TOUCH, YOU HEAR WANT IS BEING DESCRIBED AS A "WARBLE" SOUND. IT HAS A METALLIC RING AND LASTS A FEW SECONDS.
>
> LOADING THE ENGINE ON A HILL MAKES THE SOUND MORE INTENSE. IT IS HAPPENING TO A STOCK 2015 STINGRAY COUPE. THOUGHT THIS WAS ONLY HAPPENING TO ME BECAUSE OTHERS DO NO HAVE THIS

ISSUE BUT FOUND A GROUP OF CORVETTE OWNERS ON
THE CORVETTE FORUM WITH THE SAME ISSUE.

### d.     2016 Chevrolet Camaro

129.     On the NHTSA website, there are at least 53 consumer complaints for "2016

Chevrolet Camaro." As one example, on July 5, 2016, the following incident was reported:

> PURCHASED 2016 CHEVROLET CAMARO ON 6/18/2016
> FEW DAYS AFTER THE ENGINE WAS RUNNING VERY
> ROUGH, GRINDING NOISE, TRANSMISSION SHIFTING
> HARD, THE CHECK ENGINE LIGHT ILLUMINATED AND
> SPEED REDUCED TO 5 MPH SHOWED ON DISPLAY. THIS
> HAS BEEN GOING ON SINCE THEN, I BROUGHT TO
> DEALER ON 7/1/2016 AND THE SERVICE MECHANIC
> TOOK BACK TO CHECK CODES AND INFORMED ME
> THAT NUMEROUS ERROR CODES WERE DETECTED AND
> TOLD ME TO GO AHEAD AND TAKE VEHICLE HOME
> BECAUSE IT WAS A HOLIDAY WEEKEND AND TO
> RETURN ON TUESDAY 7/5/2016 TO BE INSPECTED FOR
> REPAIR.

130.     Another incident involving a 2016 Chevrolet Camaro was reported on March 19,

2018:

> I BOUGHT MY CAR IN SEPT. 2016 AFTER THE FIRST
> COUPLE OF MONTHS AT RANDOM TIMES THE
> TRANSMISSION MAKES A BOOM SOUND WHEN
> SLOWING DOWN FROM SPEEDS OVER 55 MPH OR
> DURING ACCELERATION FROM STOP AND GO RUSH
> HOUR TRAFFIC IT'S AS IF THE TRANSMISSION HAS TO
> CATCH UP WITH THE ACCELERATOR. I GET MONTHLY
> DIAGNOSTICS AND NOTHING SHOWS UP AS AN ISSUE.

131.     Another incident involving a 2016 Chevrolet Camaro was reported on August 25,

2018:

> WHEN YOU GOING DOWN THE ROAD TRANSMISSION 7/8
> GEAR SHUTTERS LIKE IT'S SLIPPING

132.     Another incident involving a 2016 Chevrolet Camaro was reported on November

20, 2018:

THE 8 SPEED AUTOMATIC TRANSMISSION HAS A
SHUTTER AT LOW ENGINE RPM BETWEEN 1200 TO 1500
RPM. THE SHUTTER WILL OCCUR IN 2ND, 3RD, 4TH, 5TH,
AND 6TH GEAR WHEN ENGINE RPM IS 1200 TO 1500. THE
VEHICLE HAS 10,000 MILES ON IT. THIS HAPPENS ON
OPEN ROADS IN ALL CONDITIONS AND AT VARIOUS
SPEEDS + GEAR.

133.    Another incident involving a 2016 Chevrolet Camaro was reported on February 27,

2019:

WHEN DRIVING, THE VEHICLE WILL VIBRATE/SHUDDER
PERIODICALLY. WHEN PULLING INTO TRAFFIC,
SOMETIMES IT DOES NOT SHIFT PROPERLY AND
PRESENTS A DANGER. THE DEALER FLUSHED THE
TRANSMISSION FLUID RECENTLY, BUT IT IS STARTING
TO HAPPEN AGAIN.

134.    Another incident involving a 2016 Chevrolet Camaro was reported on January 17,

2019:

ISSUE 1 - 8 SPEED AUTOMATIC TRANSMISION IS
SHIFTING HARD BETWEEN GEARS AND ALSO HAS A
SHUTTER AT LOW ENGINE RPM BETWEEN 1200 TO 1500
RPM. THE SHUTTER WILL OCCUR IN MOST GEARS.
ESPECIALLY NOTICEABLE WHEN USING CRUISE
CONTROL. IT HAPPENS IN ALL ROADS IN ALL
CONDITIONS AND AT VARIOUS SPEEDS + GEAR...

### e.    **2017 Chevrolet Camaro**

135.    On the NHTSA website, there are at least 43 consumer complaints for "2017

Chevrolet Camaro." As one example, on November 1, 2018, the following incident was reported:

MY CAR HAS BEEN HAVING A LOT OF VIBRATIONS,
SPUTTERING, RUMBLING WHILE DRIVING. ESPECIALLY
WHEN SPEEDING UP. IT HAPPENS WHILE IN CRUISE
CONTROL ALSO. I TOOK IT TO BE SERVICED AND THEY
SAID IT WAS THE TORQUE CONVERTER. THEY FLUSHED
THE SYSTEM AND SAID IT SHOULD CLEAR UP AFTER 200
MILES WITH THE NEW FLUID THEY REPLACED. I TOOK
IT BACK BECAUSE IT HAS BEEN OVER 500 MILES AND IS
STILL HAPPENING. I WAS TOLD ALL THEY CAN DO IS

REPLACE THE FLUID AGAIN FOR NOW UNTIL THEY FIX
THE PROBLEM. WHY ARE THEY NOT ABLE TO REPLACE
THE TORQUE CONVERTER NOW BEFORE IT CAUSES
MORE INTENSIVE DAMAGE? I AM AFRAID AS IT GETS
WORSE I WILL BE BROKEN DOWN ON THE SIDE OF THE
ROAD WITH A CAR THAT IS IN WORSE REPAIR THAN IT
SHOULD BE.

136.    Another incident involving a 2017 Chevrolet Camaro was reported on February 2,

2019 as follows:

HARD SHIFTS BETWEEN 1ST & 2ND GEAR VIBRATION
BETWEEN 1500 & 1800 RPM. THIS CAR HAS ACTIVE FUEL
MANAGEMENT VIBRATION SEEMS TO HAPPEN WORSE
WHEN IN 4 CYLINDER MODE. GM IS AWARE OF THE
ISSUE AND KEEPS PROMISING A FIX WHICH HAS YET TO
BE RELEASED. BLAME IT ON FLUID IN TRANSMISSION.

### f.    2015 Chevrolet Silverado

137.    On the NHTSA website, there are at least 485 consumer complaints for "2015

Chevrolet Silverado." As one example, on November 20, 2015, the following incident was

reported:

TRANSMISSION CANNOT FIND GEARS WHEN COASTING
OR SLOWING DOWN AND THEN HITTING
ACCELERATOR. VERY DANGEROUS WHEN IT HESITATES
FOR SECONDS BEFORE FINDING THE RIGHT GEAR AND
GOING, OR IT STAYS IN TOO HIGH OF A GEAR INSTEAD
OF DOWNSHIFTING TO ACCELERATE AND RATTLES.
HAPPENS EVERY TIME I DRIVE THE TRUCK, AND MANY
OTHER PEOPLE HAVE THE SAME ISSUE. GM DOESN'T
CARE!

138.    Another incident involving a 2015 Chevrolet Silverado was reported on April 6,

2016:

HAD BEEN COMPLAINING SINCE 2 DAYS AFTER
PURCHASE THAT TRANSMISSION WAS
SHAKING/SHIMMYING/SPUTTERING. WAS PULLING
ONTO A COUNTY HIGHWAY OFF OF A RESIDENTIAL
TYPE ROAD (AFTER PICKING UP GRANDDAUGHTER

FROM SCHOOL - SHE WAS IN TRUCK) AND TRUCK
BOGGED DOWN & WOULDN'T GO. INTERSECTION IS AT
TOP OF HILL AND AROUND A CORNER. WAS CLEAR
WHEN I STARTED PULLING OUT, BUT WAS ALMOST HIT
BY ONCOMING TRUCK BEFORE I GOT MY TRUCK TO
GET ON ACROSS THE INTERSECTION. HAS BEEN IN SHOP
TWICE TO FIX IT. FIRST TIME TO DOUBLE
TRANSMISSION FLUSH. THAT DIDN'T WORK. NEXT TIME
A FEW WEEKS LATER, A TECHNICIAN HOOKED UP A
COMPUTER TO MY TRUCK SO HE COULD MANUALLY
SHIFT GEARS WHILE RIDING WITH ME. HE FELT THE
ISSUES AND SAID HE SAW SEVERAL PROBLEMS.
DEALERSHIP ENDED UP REPLACING TORQUE
CONVERTER. ALSO REPLACED VLOM MANIFOLD -
WHATEVER THAT IS? THAT'S WHAT IT SAYS ON WORK
ORDER. THE PROBLEM STILL EXISTS. I BELIEVE THERE
ARE BULLETINS OUT ON THIS TRUCK'S TRANSMISSION
ALREADY. I HAVE TALKED TO OTHERS WHO HAVE HAD
THE SAME PROBLEM.

139.   Another incident involving a 2015 Chevrolet Silverado was reported on May 12,

2016:

TL* THE CONTACT OWNS A 2015 CHEVROLET
SILVERADO 1500. WHILE DRIVING 30 MPH, THE VEHICLE
DOWNSHIFTED UNCONTROLLABLY WITHOUT
WARNING. ALSO, WHILE IN THE PARK POSITION, THE
VEHICLE SUDDENLY LUNGED FORWARD AND HAD TO
BE RESTARTED. THE CONTACT STATED THAT THE
TRANSMISSION INDEPENDENTLY ENGAGED INTO FIRST
GEAR WITHOUT WARNING AND CAUSED THE VEHICLE
TO SHIFT FORWARD ON MORE THAN ONE OCCASION.
THE VEHICLE RECEIVED AN UNKNOWN REPAIR, BUT
THE FAILURE RECURRED. THE MANUFACTURER WAS
MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE
WAS 14,000. ....UPDATED 0711/16 *BF

140.   Another incident involving a 2015 Chevrolet Silverado was reported on June 8,

2016:

THE TRUCK HAS A CONSTANT VIBRATION AT HIGHWAY
SPEEDS. TWO DIFFERENT DEALERS HAVE VERIFIED THE
PROBLEM, GM FIELD ENGINEERS VERIFIED THERE IS AN
ISSUE, AND THE ENGINEER RECOMMENDED THE

DEALER CHANGE REAR END PARTS, STILL NO FIX. TWO
DIFFERENT DEALERS FELT ROADFORCE BALANCING
THE TIRES WOULD HELP; IT HAS NOT. THE TRUCK ALSO
MAKES A CHIRPING NOISE WHEN TRANSITIONING FROM
4 CYLINDERS BACK TO 8 CYLINDERS.

141.    Another incident involving a 2015 Chevrolet Silverado was reported on July 14,

2016:

I AM CONCERNED ABOUT THE EXCESSIVE
SHAKING/VIBRATION IN THIS 2015 CHEVY SILVERADO
AND, THUS FAR, GM CUSTOMER SERVICE AND THE
DEALERSHIP HAVE NO RESOLUTION IN SIGHT. THE
PROBLEM HAS BEEN OCCURING AT HIGHWAY SPEEDS
(MOST NOTABLE ABOVE 73 MPH) SINCE THE TRUCK
WAS PURCHASED AUG 2015. AS THEY CAN'T IDENTIFY
THE CAUSE OF THE PROBLEM, I CAN'T BE SURE THE
ORIGIN IS OR IS NOT A SAFETY-REATED CONCERN. THE
DEALERSHIP HAS BALANCED, RE-BALANCED,
ROTATED, AND ROAD PRESSURE TESTED TIRES TO NO
AVAIL. EVEN TRIED A NEW SET OF TIRES OFF OF A 2016
MODEL TO NO AVAIL. AS THIS MATTER CONTINUES
AND DOESN'T APPEAR TO BE TIRE-RELATED, I'M
WORRIED THAT THE ISSUE MAY BE IN THE SUSPENSION
AND WILL, AT SOME POINT, CAUSE OR CREATE A
CATASTROPHIC FAILURE.

142.    Another incident involving a 2015 Chevrolet Silverado was reported on August 8,

2016:

TL* THE CONTACT OWNS A 2015 CHEVROLET
SILVERADO 1500. UPON DEPRESSING THE
ACCELERATOR PEDAL, THE VEHICLE WAS EXTREMELY
SLOW TO ACCELERATE WITH A DRASTIC REDUCTION IN
SPEED WITHOUT WARNING. THE VEHICLE WAS TAKEN
TO TWO DEALERS WHO WERE UNABLE TO REPLICATE
AND DIAGNOSE THE FAILURE. THE MANUFACTURER
WAS NOTIFIED OF THE FAILURE AND PROVIDED NO
RECOMMENDATION OR REPAIR SOLUTION. THE
FAILURE MILEAGE WAS NOT AVAILABLE.

143.    Another incident involving a 2015 Chevrolet Silverado was reported on August 20,

2016:

> THE TRANSMISSION HESITATES WHEN SHIFTING IN
> AUTOMATIC BUT WHEN IN MANUAL MODE IT SHIFTS
> FINE WITH NO ISSUES. THIS HAS BEEN A ON GOING
> ISSUE AND PROBLEM THE SERVICE CENTER FOR A
> LOCAL DEALERSHIP CAN NOT FIND THE ISSUE. BUT
> THERE IS SOMETHING GOING ON WITH THE
> TRANSMISSION.

144.    Another incident involving a 2015 Chevrolet Silverado was reported on September

14, 2016:

> TL* THE CONTACT OWNS A 2015 CHEVROLET
> SILVERADO 1500. WHILE DRIVING 10 MPH, THE
> ACCELERATOR PEDAL WAS DEPRESSED AND THE
> VEHICLE ACCELERATED IN EXCESS. THE VEHICLE WAS
> TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT
> THE WIRING HARNESS, PART OF THE TRANSMISSION,
> AND MULTIPLE OTHER PARTS NEEDED TO BE
> REPLACED. THE VEHICLE WAS REPAIRED; HOWEVER,
> THE FAILURE RECURRED. IN ADDITION, WHILE DRIVING
> AT A VERY LOW SPEED, "HAUL GEARS" DISPLAYED ON
> THE MESSAGE BOARD AS THE VEHICLE SWITCHED INTO
> A LOW GEAR INDEPENDENTLY. THE MANUFACTURER
> WAS NOTIFIED OF THE FAILURES. THE FAILURE
> MILEAGE WAS 3,000. THE VIN WAS UNAVAILABLE.

145.    Another incident involving a 2015 Chevrolet Silverado was reported on September

26, 2016:

> I PARK IN A 5 LEVEL PARKING GARAGE. SEVERAL
> MONTHS AGO, I WAS LEAVING WHEN I CAME UP TO THE
> RAMP TO THE NEXT LOWER LEVEL. I LET OFF ON THE
> ACCELERATOR BEFORE I WENT FROM FLAT TO
> LOWERING RAMP. THE TRUCK SHIFTED UP TO SECOND
> GEAR, ACCELERATED AND THROUGH ME TOWARD THE
> VEHICLE IN FRONT. THE TRUCK WENT OUT OF MY
> CONTROL. IF I WERE NOT A SAFE DRIVER I WOULD
> HAVE STRUCK THE VEHICLE. THIS ISSUE HAS
> OCCURRED ANOTHER TIME AS WELL. THERE HAVE
> BEEN OTHER PROBLEMS WHICH ARE NUMEROUS. I
> WILL ADDRESS THEM INDIVIDUAL IN FURTHER
> COMPLAINTS.

146.    Another incident involving a 2015 Chevrolet Silverado was reported on September 27, 2016:

> ON SEPT 21 2016 I ARRIVED AT MY HOME. I DROVE UP
> MY GRAVEL DRIVEWAY IN D(DRIVE) AND SLOWED TO A
> STOP AND MY TRUCK BEGAN TO ROLL BACKWARD
> UNDER MY CONTROL. I WAS CHECKING ON THE
> GROUND FOR LAWN DAMAGE. THE TRUCK SHUTTERED
> TWICE, SHUT OFF AND STARTED TO ROLL BACKWARD
> TOWARD A TREE. I QUICKLY REGAINED CONTROL WITH
> A PANIC STOP. I WAS ABLE TO PLACE THE TRUCK IN
> PARK AND RESTART THE TRUCK. I HAD LOST CONTROL
> OF THE TRUCK.

147.    Another incident involving a 2015 Chevrolet Silverado was reported on November 9, 2016:

> TRANSMISSION IS LURCHING IF DRIVING 50 MPH THEN
> SLOW DOWN TO 35 MPH WHEN YOU GO TO SPEED BACK
> UP IT LURCHES. COMPLAINED TO CHEVROLET SEVERAL
> TIMES THEY SAY CANNOT FIND ANYTHING WRONG.

148.    Another incident involving a 2015 Chevrolet Silverado was reported on December 12, 2016:

> TL* THE CONTACT OWNS A 2015 CHEVROLET
> SILVERADO 1500. WHILE DRIVING APPROXIMATELY 45
> MPH, THE CHECK ENGINE INDICATOR ILLUMINATED.
> THE VEHICLE STARTED TO DECELERATE WHEN
> DEPRESSING THE ACCELERATOR PEDAL. THE VEHICLE
> WAS TAKEN TO THE DEALER, BUT WAS NOT
> DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS
> MADE AWARE OF THE FAILURE. THE APPROXIMATE
> FAILURE MILEAGE WAS 33,000.

149.    Another incident involving a 2015 Chevrolet Silverado was reported on December 13, 2016:

> TL* THE CONTACT OWNS A 2015 CHEVROLET
> SILVERADO 1500. THE CONTACT STATED THAT WHILE
> DRIVING AT VARIOUS SPEEDS, THERE WAS A LOUD

CLUNKING NOISE COMING FROM THE REAR OF THE
VEHICLE. THE CONTACT STATED THAT THE FAILURE
OCCURRED AFTER SHIFTING GEARS. THE VEHICLE WAS
NOT REPAIRED. THE MANUFACTURER WAS MADE
AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS
17,000.

### g.   2016 Chevrolet Silverado

150.   On the NHTSA website, there are at least 250 consumer complaints for "2016

Chevrolet Silverado." As one example, on May 11, 2016, the following incident was reported:

I BOUGHT A 2016 CHEVY SILVERADO 1500 LTZ Z71 AND
IT VIBRATES AT IDLE AND THE TRANSMISSION IS
SLIPPING. I HAD ALREADY TOOK IT TO THE
DEALERSHIP TO GET IT FIX, BUT NO LUCK. GM TOLD ME
THAT IS HOW THE TRUCK IS DESIGNED TO OPERATE,
WHICH IS HARD TO BELIEVE. THERE IS ABSOLUTELY
ZERO HELP FROM GM TO HELP ME RESOLVE THE
PROBLEM. I WAS GIVEN AN OPTION TO TRADE IT IN FOR
A NEW ONE AT MY OWN EXPENSES OR DEAL WITH THE
PROBLEM. FORD WOULD NOT TAKE MY TRUCK AS A
TRADE IN NOR WILL GMC. THIS VEHICLE CAN
POTENTIALLY BY DANGEROUS AND A LIABILITY AS
THE TRANSMISSION SEEM TO HAVE A MIND OF ITS OWN
AND THE CONSTANT VIBRATION CANNOT POSSIBLY HE
GOOD FOR ANYONE.

151.   Another incident involving a 2016 Chevrolet Silverado was reported on October 3,

2016:

THE ISSUE(S) THAT I AM EXPERIENCING ALL APPEAR TO
BE WITH THE TRUCKS 8 SPEED TRANSMISSION. THE
FIRST TWO OCCUR DURING BREAKING AND THE THIRD
HAPPENS WHEN ACCELERATING FROM A "COLD"
START. A DESCRIPTION OF EACH OF THE THREE MAJOR
ISSUES ARE OUTLINED BELOW:

1)      DURING INITIAL BREAKING THE TRUCK WILL
BEGIN TO SLOW DOWN AS INTENDED AND WITHOUT
WARNING IT ABRUPTLY ACCELERATES/SLIDES
FORWARD (SEE BREAKING PROFILES). THIS TYPICALLY
HAPPENS BETWEEN 10-20 MPH.

2)      DURING BREAKING JUST BEFORE COMING TO A STOP I EXPERIENCE A HARD JERK OR SHUDDER (SEE BREAKING PROFILES).

3)      DURING A "COLD" START, IN THE MORNING OR AFTER WORK, THE TRANSMISSION WILL SOMETIMES SLIP AND SHIFT HARD WHILE PULLING OUT OF MY DRIVEWAY/PARKING LOT.

THE ISSUES ARE ALL INTERMITTENT.

152.    Another incident involving a 2016 Chevrolet Silverado was reported on October 16, 2016:

I HAD TWO EPISODES OF SUDDEN UNINTENDED ACCELERATION WHILE DRIVING HIGHWAY SPEEDS ON A HIGHWAY. TRUCK IS WEEKS OLD- 1500MILES ONLY. BRAKES STILL WORKED SO I WAS ABLE TO STOP. RPMS CONTINUED TO ESCALATE IN NEUTRAL AND PARK. HAD TO TURN OFF ENGINE QUICKLY TO ABORT THE PROBLEM. I'M TAKING THE TRUCK IN FOR EVALUATION TOMORROW. MY WIFE AND TWO OLDEST SONS WERE IN THE VEHICLE. *TR

153.    Another incident involving a 2016 Chevrolet Silverado was reported on November 15, 2016:

TL* THE CONTACT OWNS A 2016 CHEVROLET SILVERADO 1500. WHILE ATTEMPTING TO ACCELERATE FROM A STOP, THE VEHICLE FAILED TO ACCELERATE. THE CONTACT COASTED INTO A PARKING LOT AND NOTICED THAT THE FRONT PASSENGER SIDE AXLE INDEPENDENTLY SHIFTED TO THE REAR OF THE CHASSIS, WHICH POTENTIALLY CAUSED A SPARK TO THE TIRES. THE VEHICLE WAS TAKEN TO THE DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 4,000.

### h.      2017 Chevrolet Silverado

154.    On the NHTSA website, there are at least 140 consumer complaints for "2017 Chevrolet Silverado." As one example, on July 20, 2018, the following incident was reported:

48

8 SPEED TRANSMISSION CLUNKS WHEN SHIFTING INTO
2 GEAR AND AT TIMES FEELS LIKE YOU GOT REAR
ENDED. WHEN IT DOWN SHIFTS INTO THE LOWER
GEARS ITS ALSO CLUNKS AND IS NOT SMOOTH. THIS IS
HAPPENING WHEN GOING AT SLOW SPEEDS AND IS
WORSE AFTER A COLD START. THE VEHICLE SHIFTS
FINE AT HWY SPEEDS. I HAVE ALREADY BROUGHT IT
TO THE DEALERSHIP TWICE AND PROBLEM IS STILL
THERE. TALKING TO OTHER PEOPLE WITH GM 8 SPEED
TRANSMISSION AND THEY ARE HAVING THE SAME
ISSUE. 8 SPEED TRANSMISSION NEEDS
RECALL.POSSIBLY TORQUE CONVERTER.

155.    Another incident involving a 2017 Chevrolet Silverado was reported on July 18,

2018:

ENGINE HESITATION, OR MISFIRING. JERKING, OR
TRANSMISSION SHUTTERING WHEN ENGINE IS AT LOW
RPM AND ON INCLINE. (I.E. WHEN TRAVELING ABOUT
45MPH AND START UP A HILL, THE RPM'S ARE ABOUT
1300 AND THE TRANSMISSION DOESN'T GEAR DOWN, SO
IT STARTS SHUTTERING UNTIL YOU GIVE IT MORE
ACCELERATION THAN USUAL.) AFTER DEALING WITH
THIS ISSUE FOR NEARLY 8 MONTHS AND 15K MILES, I
BELIEVE THIS SAFETY ISSUE SHOULD BE RECALLED.
DEALER ORIGINALLY ACKNOWLEDGE THE PROBLEM
BUT WAS UNSURE OF THE CAUSE. AFTER 5 REPAIR
ATTEMPTS THE DEALER SAY THEY CAN'T DUPLICATE
AND THE VEHICLE PERFORMS AS DESIGNED.

156.    Another incident involving a 2017 Chevrolet Silverado was reported on May 9,

2018:

TRANSMISSION ABRUPTLY SHIFTING. FEEL LIKE THE
TRUCK IS BEING HIT BY ANOTHER VEHICLE. I DON'T
KNOW WHEN IT'S GONNA DO IT BUT WHEN IT DOES, ITS
SCARY. THE OTHER DAY WHILE TRYING TO BACK UP
INTO MY DRIVE WAY, THE WOULD NOT MOVE WHEN I
PUSHED ON THE PEDAL. THEN ON IT'S OWN, THE TRUCK
BURNED RUBBER BACKWARDS WHEN I TOOK MY FOOT
OFF OF THE GAS PEDAL. I ALMOST DROVE INTO MY
GARAGE! THIS TRUCK IS NOT SAFE AND NEEDS TO BE
REMOVED FROM SERVICE! THIS IS AN ONGOING

PROBLEM THAT YOU NEVER KNOW WHEN IT'S GOING
TO HAPPEN DURING YOU DRIVE.

157.    Another incident involving a 2017 Chevrolet Silverado was reported on March 27,

2018:

VEHICLE HESITATION AND SURGES IN ACCELERATION.
THIS CONDITION IS A SAFETY ISSUE AS IT HESISTATES
PULLING INTO TRAFFIC, SURGES IN ACCELERATION
HAVE CAUSED LOSS OF TIRE TRACTION ON ICE
COVERED ROADWAYS NEARLY RESULTING IN A
COLLISION. DEALERS HAVE ACKNOWLEDGED AN ISSUE
BUT ADVISE THEY ARE STILL WAITING ON A FIX FROM
GM.

158.    Another incident involving a 2017 Chevrolet Silverado was reported on March 22,

2018:

PURCHASED MY 17 CHEVROLET SILVERADO 1500 ON
11/28/17 AND RETURNED IT TO THE DEALERSHIP ON
12/1/17. THIS WAS DUE TO A SEVERE SHUDDERING &
SHIFTING IN THE TRANSMISSION & SEVERE SHAKE IN
THE FRONT END AT 70-90MPH. THEY BALANCED &
ROTATED THE TIRES, SAYING THE ISSUE WAS FIXED, I
PICKED THE VEHICLE BACK UP ON 12/4/17 BUT THE
ISSUE WAS NOT FIXED & AN ELECTRICAL ISSUE HAD
ALSO OCCURRED. I TOOK THE VEHICLE BACK ON 12/7
/18 WITH THE SAME COMPLAINTS REGARDING THE
TRANSMISSION & SHAKING IN THE FRONT END, AS
WELL AS THE ELECTRICAL ISSUE. THE DEALERSHIP
CALLED ME ON 12/8/17, TOLD ME THEY HAD BEEN
UNABLE TO DUPLICATE THE ISSUES, FINDING NOTHING
WRONG. I LEFT IT OVER THE WEEKEND, WENT IN
MONDAY MORNING & SPOKE TO THE SERVICE
MANAGER DIRECTLY. HE TOLD ME HE HAD PURCHASED
THE SAME VEHICLE WITH THE SAME TRANSMISSION
ISSUES. SAID THERE WAS A POSSIBLE FIX BY
EXCHANGING THE TRANSMISSION FLUID & THEY
WOULD USE A NEW MACHINE PICO TO CHECK IT OUT.
THEY HAD TO REPLACE THE TORQUE CONVERTER DUE
TO MALFUNCTIONING & PERFORM A PROGRAMMING
MODULE UPDATE ON RADIO, I PICKED IT UP ON 12/22/17,
ISSUE WITH THE TRANSMISSION WAS STILL NOT
RESOLVED. I TOOK IT TO A DIFFERENT DEALERSHIP

FOR TRANSMISSION SHUDDER, SHIFT & SHAKE ISSUE
MOST NOTICEABLE AT 70-90MPH, & RADIO ISSUE. THEY
WERE ADVISED TO PERFORM A MODULE UPDATE ON
THE TRANSMISSION & GIVEN 2 OPTIONS ON THE RADIO,
THEY CHOSE TO REPLACE THE SCREEN. I TOOK IT BACK
TO THAT SAME DEALERSHIP, MODULE UPDATE MADE
TRANSMISSION/FRONT END ISSUE WORSE, ESPECIALLY
COMING OUT OF A CURVE. THEY'VE REPLACED MY 2
BACK TIRES SAID THEY WERE BAD & SHOULD FIX THE
SHAKING ISSUE IN THE FRONT END. UNABLE TO
DUPLICATE TRANSMISSION ISSUES THUS THEY CANNOT
REPAIR IT. OWNERS WITH THE SAME ISSUES ARE BEING
TOLD GM KNOWS BUT CAN'T FIX TRANSMISSION ISSUE.

159.    Another incident involving a 2017 Chevrolet Silverado was reported on February

27, 2018:

TRUCK EXHIBITS A ROUGH IDLE AFTER TRUCK IS
DRIVEN AND WARM. IDLE CAUSES TEH TRUCK TO
SHAKE AND FEELS LIKE IT WILL DIE AT STOPS. RPM
DROPS BELOW 300 RPM THEN GOES BACK TO 490 RPM.
IN ADDITION THE TRUCK WILL START TO SHAKE AND
VIBRATE AT HIGHWAY SPEEDS OF 75-80 MPH. GMC
SERVICE PERFORMED TSB CHANGING OUR ENGINE
MOUNTS BUT THAT HAS NOT FIXED THE ISSUE. THIS IS
A KNOWN ISSUE ON SILVERADOS AND NO FIX IN SITE.
CONCERNED WITH SEAT VIBRATION THIS IS A SAFETY
ISSUE DUE TO POTENTIAL DRIVE TRAIN PART FAILURE.

160.    Another incident involving a 2017 Chevrolet Silverado was reported on February

26, 2018:

8 SPEED TRANSMISSION SHIFT VERY ROUGH FROM 1-2
AND 2-1 GEARS, FREQUENTLY HESITATES, MAKES
CLUNKING SOUND. HAVE TAKEN IT TO GM DEALER
AND AM INFORMED THAT YES, THAT'S THE WAY THE 8
SPEEDS ARE. THIS IS A $50K+ TRUCK. THIS
TRANSMISSION ISSUE CAUSES AND CAN CAUSE
HESITATION WHEN NEEDING TO ACCELERATE, THUS
CREATING A SAFETY HAZARD.

161.    Another incident involving a 2017 Chevrolet Silverado was reported on February

13, 2018:

TRANSMISSION SHIFTS HARD AND VEHICLE SURGES AT
LOW SPEED WITH ACCOMPANING "CLUNK". PROBLEM
OCCURS IN BOTH UPSHIFT AND DOWN SHIFT. DEALER
INFORMS ME THAT IS A "LEARNING" CURVE FOR
VEHICLE TO UNDERSTAND MY DRIVING HABITS.
HOWEVER I SEE ON SEVERAL AUTOMOTIVE FORUMS
THAT THIS HAS BEEN AN ISSUE FOR SOME TIME AND
HAS YET TO BE RESOLVED.

162.    Another incident involving a 2017 Chevrolet Silverado was reported on February

1, 2018:

THE CONTACT OWNS A 2017 CHEVROLET SILVERADO
1500. WHILE DRIVING 25 MPH, THE VEHICLE SHIFTED
HARD FROM FIRST TO SECOND GEAR. THE FAILURE
OCCURRED EVERYDAY SINCE THE VEHICLE WAS
PURCHASED IN APRIL OF 2017. THE VEHICLE WAS
TAKEN TO O'REILLY CHEVROLET (6160 E BROADWAY
BLVD, TUCSON, AZ 85711) WHERE IT WAS DIAGNOSED
THAT THE TRANSMISSION CONTROL MODULE FAILED.
THE DEALER REPROGRAMMED THE TRANSMISSION,
WHICH FAILED TO REMEDY THE FAILURE. THE VEHICLE
WAS BROUGHT BACK TO THE DEALER AND THE VALVE
BODY FOR THE TRANSMISSION WAS REPLACED AND
THE TRANSMISSION FLUID WAS CHANGED. THE
FAILURE RECURRED. THE MANUFACTURER WAS
NOTIFIED OF THE FAILURES. THE FAILURE MILEAGE
WAS 16,000.

163.    Another incident involving a 2017 Chevrolet Silverado was reported on January 6,

2018:

NOTICED AFTER PURCHASE THAT THERE IS VIBRATION
LIKE A BAD TIRE 35-42 MPH.

VIBRATION FELT IN SEAT, CONSOLE AND STEERING
WHEEL 58-65 MPH. TRANSMISSION DOWN SHIFTS HARD
SOMETIMES FEELS LIKE BEING BUMPED FROM BEHIND,
IT ALSO HESITATES AND JERKS AFTER LETTING OFF
THE ACCELERATOR AND ACCELERATING AGAIN
BETWEEN 25-45 MPH.

WHEN ACCELERATING IT SURGES, JERKS AND
STUMBLES. SOMETIMES WHEN ACCELERATING THE

TRANSMISSION DOWNSHIFTS AND HANGS IN THAT
GEAR UNTIL YOU LET OFF THE ACCELERATOR.

UNDER HEAVY ACCELERATION THERE IS VIBRATION IN
THE POWER TRAIN AND THE TRANSMISSION SEEM
NOISY. AT 25 MPH IT SHUTTERS LIKE THE
TRANSMISSION IS IN TO HIGH OF A GEAR UNDER LIGHT
ACCELERATION.

RETURNED TO WALDORF CHEVROLET WHERE I
PURCHASED IT AND WAS TOLD THEY BALANCED 2
TIRES AND RESET THE ROAD FORCE.SCANNED
TRANSMISSION NO CODES TRANSMISSION OK AFTER
SHOP FOREMAN ROAD TESTED FOR 21 MILES NO OTHER
REPAIRS NEEDED.

PICKED IT UP DRIVING HOME NOTICED ALL THE
PROBLEMS WERE STILL THERE AND AFTER INSPECTION
OF MY WHEELS NOTICED THAT THE WHEELS WERE
BALANCED STILL HAD THE OLD WEIGHTS STILL ON THE
WHEELS WITH NEW WEIGHTS ALSO.

MADE ANOTHER APPOINTMENT THIS TIME TO HAVE
SHOP FOREMAN (RICK) RIDE WITH ME TO SHOW HIM
WHAT IT WAS DOING WHICH WE DID AND LEFT MY
TRUCK AGAIN.

AFTER 8 DAYS I AM TOLD IT WAS READY I WAS TOLD
THEY DID A PICO SCOPE TEST AND THE DRIVESHAFT
WAS BEING REPLACED THEN ONLY TESTED IT WAS OK.
CHECKED RUN OUT ON FLANGES ALL WITHIN SPECS.
FOUND THE RIGHT REAR TIRE BAD. THEY PUT STEEL
WHEEL FROM ANOTHER TRUCK ON AND ROAD TESTED
WITH NO CHANGE. THEY DROVE ANOTHER TRUCK AND
IT RIDES THE SAME. EVEN HAS THE SHUTTERS ON HARD
ACCELERATION. SAID THEY CALLED GM TAC BACK
AND THEY DONT SEE A PROBLEM WITH THIS.

WRITTEN DOCUMENTS BE SENT VIA MAIL.

MADE ANOTHER APPOINTMENT

164.    Another incident involving a 2017 Chevrolet Silverado was reported on October

27, 2017:

> TRANSMISSION ON MY NEW 2016 Z71 LT 4X4 JUMPS
> INTO LOW GEAR WHEN SLOWING DOWN. I TOOK IT TO
> THE DEALERSHIP MULTIPLE TIMES, BUT KEEP GETTING
> TOLD IT SHIFTS FINE. TOOK IT AGAIN AND HAD A
> MANAGER DRIVE THE TRUCK WITH ME INSIDE AND
> AGREED THE TRANSMISSION WAS NOT GETTIN INTO
> GEAR IN A NORMAL WAY. TOON IT BACK TO GET IT
> FIXED AND WAS TOLD TRANSMISSION IS FINE. I NEED
> THIS FIXED OR I WILL BE RETURNING HE TRUCK AS A
> LEMON TITLE.

165.    Another incident involving a 2017 Chevrolet Silverado was reported on April 5,

2017:

> THE CONTACT OWNS A 2017 CHEVROLET SILVERADO
> 1500. WHILE DRIVING 45 MPH, THE TRANSMISSION
> FAILED TO SHIFT PROPERLY AND MADE A CLUNKING
> SOUND. THE FAILURE RECURRED MULTIPLE TIMES. THE
> VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS
> DIAGNOSED THAT THE TRANSMISSION FAILED AND
> NEEDED TO BE REPROGRAMMED. THE VEHICLE WAS
> REPAIRED, BUT THE FAILURE RECURRED. THE
> MANUFACTURER WAS MADE AWARE OF THE ISSUE.
> THE APPROXIMATE FAILURE MILEAGE WAS 30.

### i.    **2017 Chevrolet Colorado**

166.    On the NHTSA website, there are at least 46 consumer complaints for "2017

Chevrolet Colorado." As one example, on September 1, 2017, the following incident was reported:

> AIR CONDITIONING IS INTERMITTENT/BLOWS
> WARM/EMITS FOG FROM VENTS. THE DEALER SAYS NO
> FIX AVAILABLE YET CITES PER DOC ID:5125499.SAYS
> ENGINEERING IS STUDYING PROBLEM. MINE STOPS
> WORKING-BLOWS WARM WITH IN 1/2 HOUR. ALSO IN
> STOP/GO TRAFFIC THE TRANSMISSION DOWNSHIFTS
> ABRUPTLY AND CAUSES TRUCK TO ACCELERATE
> FORWARD-HAVE TO APPLY BRAKES HARD TO AVOID
> COLLISION. DEALER SAYS CAN NOT REPEAT BUT
> SHIFTING IS CONSISTENTLY ABRUPT AND I HAVE
> ASKED ABOUT SOFTWARE UPDATES TO ALLIEVIATE
> THIS SAFTY CONCERN TO NO AVAIL

167.    Another incident involving a 2017 Chevrolet Colorado was reported on September

13, 2017:

> THE CONTACT OWNS A 2017 CHEVROLET COLORADO.
> WHILE DRIVING AT AN UNKNOWN SPEED, THE VEHICLE
> ACCELERATED AND JERKED. ADDITIONALLY, THE
> BRAKES WERE APPLIED, BUT FAILED TO RESPOND AND
> THE BRAKE PEDAL TRAVELED TO THE FLOORBOARD. IN
> ADDITION, THE CONTACT HEARD AN ABNORMAL
> SCRATCHING NOISE. THERE WERE NO WARNING
> INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN
> SEVERAL TIMES TO GILROY CHEVROLET (6720
> AUTOMALL CT, GILROY, CA 95020, 408-842-9301), BUT
> THEY WERE UNABLE TO DUPLICATE THE BRAKE
> FAILURE. THE DEALER DIAGNOSED THE
> ACCELERATION FAILURE AS THE FOUR WHEEL DRIVE
> BEING ENGAGED. THE VEHICLE WAS NOT REPAIRED.
> THE MANUFACTURER WAS NOTIFIED AND PROVIDED
> CASE NUMBER: 8-4000-730943. NO FURTHER ASSISTANCE
> WAS PROVIDED. THE FAILURE MILEAGE WAS
> APPROXIMATELY 17,759.

168.    Another incident involving a 2017 Chevrolet Colorado was reported on November

1, 2017:

> WHEN AUTOMATIC TRANSMISSION DOWNSHIFTS INTO
> 1ST GEAR COMING TO A STOP, IT LUNGES FORWARD. IF
> WHEN NOSING INTO A PARKING SPACE WITH ANY KIND
> OF POLE OR VEHICLE DIRECTLY IN FRONT OF MY
> TRUCK, NOT LEAVING ENOUGH SPACE MY TRUCK
> WOULD HIT WHATEVER. WHEN DRIVING SLOWLY WITH
> MY 8 SPEED AUTOMATIC TRANSMISSION SOMETIMES IT
> RATTLES AS IF I AM ON A RUMBLE STRIP AND
> SOMETIMES IT JUST CLUNKS OR THUDS. THIS AND
> OTHER SHIFT ISSUES MAKE ME EVEN MORE HYPER
> VIGILANT WHEN DRIVING. 6 MONTHS AFTER I
> PURCHASED MY BRAND NEW 2017 COLORADO, DURING
> A SPELL OF NEGATIVE DEGREE WEATHER I LOST THE
> FOLLOWING: MY CRUISE CONTROL, TRACTION
> CONTROL, FOUR-WHEEL DRIVE; MY ENGINE LIGHT
> CAME, OIL LIGHT ALL LIGHTS CAME ON AND MY RADIO
> STOPPED WORKING. I WAS TOLD BY MY CHEVY
> DEALER THAT THIS WAS NORMAL IN COLD WEATHER.
> NEXT, I WAS INFORMED IT MUST BE BECAUSE I
> WASHED MY VEHICLE THE DAY BEFORE. THIS WENT ON
> FOR A FEW MONTHS, WITH ME SHOWING THEM VIDEOS

> AND THEM TELLING ME THEY COULD NOT DUPLICATE
> THE ISSUE. OCTOBER OF 2018 THEY REPLACED MY
> RADIO BECAUSE EVIDENTLY THE RADIO HAD A
> BULLETIN THAT SHOWED ALL OF THE THINGS I HAD
> COMPLAINED ABOUT. I WANT TO SAY THIS HAPPENED
> IN EXCESS OF 10 OR MORE TIMES. DRIVING TO MY
> MOTHERS ONE EVENING IN THE DARK MY DASH LIGHTS
> WERE NOT DIMMING CORRECTLY AND THEN WENT
> OUT. AS I GOT TO A FOUR WAY INTERSECTION WITH
> CARS COMING THEY CAME ON SO BRIGHTLY I ALMOST
> GOT IN AN ACCIDENT WHICH PROMPTED ME TO MAKE
> AN APPOINTMENT AND I WASN'T WILLING TO HEAR
> SILLY EXCUSES.

169.    Another incident involving a 2017 Chevrolet Colorado was reported on April 9,

2018:

> 8 SPEED AUTOMATIC TRANSMISSION - ROUGH
> SHIFTING, USUALLY WHEN DRIVING BETWEEN 40 AND
> 60 MILES PER HOUR. TRUCK INTERMITTENTLY FEELS
> LIKE IT IS RIDING OVER RUMBLE STRIPS.
> TRANSMISSION SEEMS TO BE HUNTING. POSSIBLE ISSUE
> WITH TORQUE CONVERTER.

170.    Another incident involving a 2017 Chevrolet Colorado was reported on April 30,

2018:

> 8-SPEED AUTOMATIC TRANSMISSION IN INDECISIVE
> WHEN IT COMES TO SHIFTING BETWEEN LOWER GEARS
> WHILE DRIVING. TRANSMISSION MAKING CLUNKING
> "THUD" SOUND WHEN SHIFTING OUT OF PARK AND
> INTO REVERSE. GEAR HUNTING EXPERIENCED AT
> LOWER SPEEDS AND GEARS WHILE VEHICLE ATTEMPTS
> SHIFTING.

171.    Another incident involving a 2017 Chevrolet Colorado was reported on May 15,

2018:

> I HAVE HAD REPEATED ISSUES WITH THE
> TRANSMISSION AND THE TRANSMISSION WILL NOT
> SHIFT OUT OF 5TH GEAR WHEN IN TOW MODE AND
> WHEN TOWING LOAD UNDER SPECIFICATIONS. I HAVE

STARTED THE LEMON LAW PROCESS BUT THE
MANUFACTURER HAS DENIED MY CLAIM AS OF TODAY.

172.    Another incident involving a 2017 Chevrolet Colorado was reported on May 15,
2018:

AT 21000 MILES FELT LIKE DRIVING OVER RUMBLE
STRIPS AND TACH WOULD MOVE IN CRUISE. DEALER
FLUSHED TRANS. 4 MONTHS LATER AT 29000 MILES
SAME PROBLEM BUT NOW SHIFTING HARD NOTICED
DURING ACCELERATION AND DECELERATION.
CHANGED OUT CONVERTER AND FLUSH. NOW 3
MONTHS LATER AND ONLY 2500 MILES LATER IT HAS
STARTED ALL OVER AGAIN. SO BACK TO THE DEALER I
WILL GO. AM STARTING TO REGRET BUYING A CHEVY
INSTEAD OF STAYING WITH MY TRUSTY FORD

173.    Another incident involving a 2017 Chevrolet Colorado was reported on June 21,
2018:

8 SPEED TRANSMISSION HAS HARD SHIFT WHEN AT
LOW SPEEDS AND WHEN GOING INTO REVERSE

174.    Another incident involving a 2017 Chevrolet Colorado was reported on June 19,
2018:

WHEN DRIVING AT LOW SPEEDS MY 8 SPEED AUTO
TRANSMISSION - CLUNKS OR THUDS - SPECIALLY FROM
1ST - 2ND - ITS SOUNDS LIKE A BANG - TOOK IT TO
DEALER - SAID CHEVY KNOWS ABOUT IT - BUT THERE
IS NO FIX YET.....GREAT!

175.    Another incident involving a 2017 Chevrolet Colorado was reported on June 30,
2018:

WHEN AUTOMATIC TRANSMISSION DOWNSHIFTS INTO
1ST GEAR COMING TO A STOP, IT DOES SO HARSHLY
AND LUNGES FORWARD. WHEN NOSING INTO A
PARKING SPACE WITH A CONCRETE WALL AT THE
FRONT OF THE PARKING SPACE, IF I HAD NOT ALLOWED
ENOUGH SPACE FOR THE LUNGE, THE VEHICLE WOULD
HAVE IMPACTED THE WALL. THIS CONDITION, ALONG

> WITH OTHER TRANSMISSION SHIFT IRREGULARITIES,
> HAPPENS PERIODICALLY AND I MUST REMAIN AWARE,
> ESPECIALLY COMING TO A STOP NEAR A CROSS WALK.

176.    Another incident involving a 2017 Chevrolet Colorado was reported on July 7,

2018:

> EXPERIENCING ELECTRICAL PROBLEMS CAUSING
> STARTING ISSUES, WHILE DRIVING FAILURES IN DASH
> INDICATOR LIGHS, SPEEDOMETER, TACHOMETER, SHIFT
> CONTROL INDICATOR LIGHTS, AND TRANSMISSION
> CONTROL. LOSS OF POWER TO THE POINT TRUCK
> ALMOST COMES TO A STOP AND THEN SURGES, TWICE
> IT HAS ACCELERATED TRAVELING UP TO 50FT
> ESTIMATED.

177.    Another incident involving a 2017 Chevrolet Colorado was reported on July 11,

2018:

> TRUCK BOGS DOWN, LOOSES POWER WHEN TAKING
> OFF FROM A STOP. FRONT TIRES FEEL LIKE THEY ARE
> SKIPPING EVEN THOUGH TRUCK IS IN 2 WHEEL DRIVE
> ESPECIALLY UP HILL. ONCE TRUCK GETS GOING IT
> RUMBLES AND VIBRATES SO MUCH IT BOTHERS YOUR
> EARS, CONSTANTLY LOOSING POWER AND SPEED AS
> YOUR DRIVING. WAS TOLD IT WAS THE TORQUE
> CONVERTER AND IT WAS REPLACED. TRUCK
> CONTINUED TO HAVE SAME ISSUE. TRUCK THEN "BLEW
> UP" (DEALERSHIP WORDS) WHILE I WAS DRIVING 75
> MPH DOWN THE HIGHWAY. DEALERSHIP STATED "IT
> WAS LIKE YOUR TRUCK WENT INTO LOW GEAR WHILE
> YOU WERE DRIVING AND IT SHOULD NEVER BE ABLE
> TO DO THAT". HAD FLUID FLUSH AND REPLACED AGAIN
> AND RUMBLING AND POWER LOSE STILL OCCURRING.

178.    Another incident involving a 2017 Chevrolet Colorado was reported on August 19,

2018:

> THE VEHICLE HAS A SHUDDER IN THE TRANSMISSION
> UNDER LIGHT THROTTLE ACCELERATION BETWEEN
> ABOUT 50 AND 80 MPH ON THE HIGHWAY. IT FEELS AS
> IF I'M DRIVING OVER RUMBLE STRIPS ON THE ROAD
> FOR ABOUT A SECOND. THEN IT WILL STOP FOR A

SECOND OR TWO, AND THEN SHAKE AGAIN FOR A
SECOND. WITHOUT THROTTLE, NO SHAKING OCCURS.
THIS HAS BEEN OCCURRING FOR ABOUT TWO WEEKS,
OR PERHAPS THE LAST 500 MILES. IT MIGHT BE
DESCRIBED BY BULLETIN 18-NA-177.

179.    Another incident involving a 2017 Chevrolet Colorado was reported on September

18, 2018:

SEPT 2018 HAVE NOTICED THAT TRUCK SEEMS TO
VIBRATE, SHUDDER AT 50-60MPH. VIBRATION,
SHUDDERING GOT WORSE, EVEN AT 25MPT. OCTOBER, I
CONTACT SERVICE ADVISOR WHO BELIEVES MIGHT BE
TORQUE CONVERTER NEED APPT TO VERIFY
NOVEMBER FINALLY GOT APPT WITH SERVICE DEPT.
THEY VERIFY IT IS TORQUE CONVERTOR AND ORDER
PARTS. DECEMBER PARTS IN & TRUCK IN FOR 3 DAYS
AS PARTS INSTALLED. TOLD THIS SHOULD SOLVE
ISSUE, BUT CHEVROLET WORKING OF ANOTHER FIX
FOR 1ST QUARTER OF 2019. TO DATE, I HAVE NOT
NOTICED ANY ISSUES OF VIBRATION.DATE.

180.    Another incident involving a 2017 Chevrolet Colorado was reported on October

25, 2018:

TRANSMISSION SHUDDER. FELLS LIKE DRIVING OVER
RUMBLE STRIPS. GM KNOWS OF THIS ISSUE BUT KEEPS
PUTTING THESE 8 SPEED TRANSMISSIONS ON THE
ROAD.

181.    Another incident involving a 2017 Chevrolet Colorado was reported on November

1, 2018:

TL THE CONTACT OWNS A 2017 CHEVROLET
COLORADO. WHILE DRIVING AT HIGH SPEEDS, THE
VEHICLE STARTED TO VIOLENTLY VIBRATE. THE
FAILURE ALSO OCCURRED WHEN ACCELERATING
FROM A STOP. THE VEHICLE WAS TAKEN TO DYER
CHEVROLET FORT PIERCE (4200 US HIGHWAY 1, FORT
PIERCE, FL 34982, (772) 242-3116) MULTIPLE TIMES FOR
THE FAILURE WHERE THE TRANSMISSION WAS
SERVICED AND FLUSHED; HOWEVER, THE FAILURE
RECURRED. THE VEHICLE WAS NOT REPAIRED. THE

MANUFACTURER WAS MADE AWARE OF THE FAILURE
AND THE CONTACT RECEIVED A CASE NUMBER. THE
FAILURE MILEAGE WAS 17,000.

182.     Another incident involving a 2017 Chevrolet Colorado was reported on January 5,

2019:

THE CONTACT OWNS A 2017 CHEVROLET COLORADO.
WHILE DRIVING HIGHWAY SPEEDS, THE CONTACT
NOTICED THAT THE TACHOMETER FLUCTUATED AND
THE TRANSMISSION SHUDDERED. THE VEHICLE WAS
TAKEN TO AN UNKNOWN DEALER WHERE IT WAS
DIAGNOSED THAT THE TRANSMISSION TORQUE
CONVERTER FAILED. THE DEALER REPLACED THE
TORQUE CONVERTER AND THE TRANSMISSION WAS
FLUSHED. THE DEALER ALSO REPROGRAMMED THE
TRANSMISSION COMPUTER. THE MANUFACTURER WAS
CONTACTED AND PROVIDED CASE NUMBER:
94982753540. THE MANUFACTURER ISSUED TECHNICAL
SERVICE BULLETIN NUMBER: 4942742 PIE0405C
(ENGINEERING INFORMATION TORQUE CONVERTER
SHUDDER). THE APPROXIMATE FAILURE MILEAGE WAS
13,500.

183.     Another incident involving a 2017 Chevrolet Colorado was reported on January 17,

2019:

AT SPEEDS 45 MPH TRANSMISSION MAKES A LOAD
THUMBING SOUND AND START SWITCHING BACK AND
FORTH FOR GEAR. AT SPEEDS 60 UP TO 70 MPH A
SHUDDERING STARTS MOSTLY UP GRADES AND DOWN
GRADES. FROM REVIEW THERE IS A BULLETIN GM 16-
NA-175. FROM WHAT I READ THIS DOESN'T FIX THE
PROBLEM. THERE ARE NUMEROUS OF COMPLAINTS.

### j.     2018 Chevrolet Colorado

184.     On the NHTSA website, there are at least 29 consumer complaints for "2018

Chevrolet Colorado." As one example, on April 27, 2018, the following incident was reported:

IN MAY 2018 I PURCHASED A NEW CHEVY SILVERADO
LT Z71 PU. I LIVE IN COLORADO AND WHEN I DRIVE THE
TRUCK DOWN THE I-70 MOUNTAIN PASS THE

TRANSMISSION IS DOWNSHIFTED BEYOND WHAT IO
WOULD CALL A SAFE DOWN SHIFT. IM TRAVELING
DOWN THE PASS, JUST COASTING, DOWN HILL ASSIST
MODE IS OFF @ ROUGHLY 55 MPH THE TRANSMISSION
DOWN SHIFT HARD. THE RPM GOES FROM ~1850 TO
~3800 RPM. THE ENGINE AND TRANSMISSION AND
ENGINE BOTH MAKE A LOT OF NOISE WHEN THIS
HAPPENS. I TRAVELED THE PASS ABOUT 8 TIME NOW
AND THE TRUCK DOES THIS FUNNY SHIFT EVERYTIME
AND I HAVE PICTURE SHOWING 4 EVENTS. I'VE TAKING
THE DRIVE INTO THE DEALER AND SINCE THE
COMPUTER DOESN'T LOG A ERROR CODE THE DEALER
DOESN'T KNOW WHAT TO DO. THIS PAST WEEK THEY
GAVE ANOTHER 2018 P/U WITH THE SAME TRANNY AND
ENGINE AND THAT TRUCK DID NOT DO THE SAME
DOWNSHIFT. I BELIEVE THERE IS SOMETHING WRONG
WITH MY TRUCK AND ALSO IF THIS EVENT HAPPENED
IN THE WINTER ON A SNOWY ROAD THE TRUCK WOULD
SPIN OUT OF CONTROL AND CAUSE A ACCIDENT AND IS
A HUGE SAFETY CONCERN. I ALSO FILED A COMPLAINT
WITH GM BUT THEY ARE REALLY NOT HELP TO
RESOLVE THIS PROBLEM. THE DEALER LOOKED AT THE
TRUCK AGAIN TODAY, NO CODES RECORDED, THE
RESET THE TRANSMISSION MEMORY TODAY TO TRY
AND SATISFY MY NEED TO DO SOMETHING. I NOW
WAITING TO HEAR BACK FROM THE DEALER ON THE
NEXT STEPS. I WILL ALSO CALL GM AGAIN TO GIVE
THEM THIS INFORMATION. I AM ATTACHING PICTURE
THAT CLEARLY SHOW THIS PROBLEM. I ALSO GIVEN
THE DEALER THE SAME PICTURES.

185.    Another incident involving a 2018 Chevrolet Colorado was reported on July 27,

2018:

CONSTANT VIBRATION/SHAKE COMING FROM THE
VEHICLE AT ANY SPEED ABOVE 65 MPH. THE TRUCK
HAS BEEN LIKE THIS SINCE THE DAY IT LEFT THE
DEALERSHIP. WHEN ON HIGHWAY AND VIBRATION IS
FELT, PUTTING THE TRUCK IN NEUTRAL DOES NOT
CHANGE THE VIBRATION, SLOWING DOWN MAKES IT
SLIGHTLY WORSE, SPEEDING IT MAKES IT SLIGHTLY
BETTER. FEELS LIKE THERE IS SOMETHING SERIOUSLY
WRONG WITH THE GEOMETRY OF THE TRUCK MAKING
IT UNSAFE TO DRIVE AT HIGHWAY SPEEDS. ROAD

> FORCE BALANCE WAS ALREADY DONE AND THE
> PROBLEM PERSISTS ON A BRAND NEW TRUCK.

186.    Another incident involving a 2018 Chevrolet Colorado was reported on September 17, 2018:

> CHEVY COLORADO A BAD VIBRATION IN DRIVETRAIN.
> TOOK TRUCK TO DEALER WHO SAID IT WAS TORQUE
> CONVERTER PROBLEM. IT HAS BEEN AT DEALER FOR 9
> DAYS BECAUSE THEY ARE DOING 9 VEHICLES A DAY
> FOR THIS PROBLEM. SUPPOSEDLY THEY ARE GOING TO
> CHANGE TORQUE CONVERTOR, OTHERS THEY JUST
> CHANGE THE OIL IN TORQUE CONVERTOR. THIS IS
> DONE APPROXMATELY 9 TIMES A WEEK AT THIS ONE
> DEALER, ROSS DOWNING IN HAMMOND, LA. THIS IS THE
> 8SP TRANS. THAT IS USED IN SEVERAL GM REAR DRIVE
> CARS AND TRUCKS. MY TRUCK ONLY HAS 6300 MILES
> ON IT. WHEN TRYING TO PASS VEHICLES ON
> INTERSTATE IT VIBRATES SO BAD OVER 70 MPH I AM
> AFRAID TO WRECK. OTHERS I HAVE TALKED TO AT
> DEALERSHIP CLAIM THERE VEHICLE VIBRATES AT
> LOWER SPEEDS, SURGES AND MAKING NOISE. THIS
> DEALERSHIP DOING 9 A WEEK, THAT PROBABLY IS
> SEVERAL THOUSAND A WEEK STATEWIDE. THIS IS A
> TERRIBLE PROBLEM THAT NEEDS FIXIN. MANY
> THANKS.

187.    Another incident involving a 2018 Chevrolet Colorado was reported on October 1, 2018:

> VEHICLE DEVELOPED A VIBRATION AT 80MPH WHICH
> FADES IN AND OUT. TIRES WERE ROAD FORCED
> BALANCED, AND ALIGNMENT WAS DONE.
> TRANSMISSION FLUID WAS CHANGED. THE SHACKING
> AT 80MPH CONTINUED. ON A 30 MILE COMMUTE AT
> 80MPH THE VIBRATION IS EXTREME 25% OF THE TIME
> (LIKE DRIVING OVER A RUMBLE STRIP), MODERATE
> ANOTHER 25% OF THE TIME, AND THE OTHER 50% THE
> VIBRATION IS NOT NOTICEABLE.

188.    Another incident involving a 2018 Chevrolet Colorado was reported on October 3, 2018:

> MY VEHICLE SHAKES AND SHUTTERS WHEN
> ACCELERATING. I HAVE BROUGHT IT TO CHEVROLET
> OF WESLEY CHAPEL FL 3 TIMES FOR THE SAME
> PROBLEM. THE PROCEEDED TO DO A "FLUSH" AND
> HAVE REPLACED THE TORQUE CONVERTER.

189.     Another incident involving a 2018 Chevrolet Colorado was reported on October 3,

2018:

> SEVERAL TIMES, WHILE DRIVING RIGHT AROUND 55
> MPH, THE TRANSMISSION DOWNSHIFTED FOR NO
> REASON ON THRUWAY CONDITIONS. WHEN THIS
> HAPPENED, IT WAS ALMOST LIKE SLAMMING ON THE
> BRAKES QUICKLY. ON ALL OCCASIONS, MY BODY
> LURCHED FORWARD. IF SOMEONE WAS BEHIND ME, I
> PROBABLY WOULD HAVE BEEN REAR ENDED. ON
> ANOTHER OCCASION, WITH MY SON IN THE TRUCK, WE
> STOPPED AT A RED LIGHT AND THE TRANSMISSION
> CLUNKED SO VIOLENTLY, THAT WE BOTH THOUGHT
> WE WERE REAR ENDED AT FIRST. I DESCRIBED THE
> ISSUE TO MY GM SERVICE SHOP WHO SAID THAT THEY
> COULDN'T FIND AN ISSUE AND THAT THE CODES WERE
> ALL NORMAL. I WAS ADVISED THAT THE CLUNK AT
> THE RED LIGHT WAS COMMON, AS THE TRANSMISSION
> HAS TO RELIEVE PRESSURE. NO WAY IS THIS NORMAL! I
> GOT ON LINE TO REVIEW FORUMS AND IT APPEARS
> THIS IS A VERY PREVALENT ISSUE. YESTERDAY, I LOST
> MY TRANSMISSION COMPLETELY ON A THRUWAY. I
> HEARD A LOUD CLUNK AND THE RPMS SPIKED. I LEFT
> THE HIGHWAY ASAP BUT COULD NOT GO OVER 30 MPH
> OR THE RPMS WOULD JUST SPIKE WITHOUT MOTION
> RESPONSE. EXITING THE THRUWAY AT THIS SPEED WAS
> VERY DANGEROUS! EVEN WITH HAZARDS ON, DRIVERS
> SELDOM SLOW DOWN OR MOVE OVER, ESPECIALLY 18
> WHEELERS. THESE TRANSMISSIONS ARE CLEARLY A
> SAFETY HAZARD.

190.     Another incident involving a 2018 Chevrolet Colorado was reported on November

2, 2018:

> THE EIGHT SPEED AUTOMATIC TRANSMISSION
> STUTTERS AND ACTS LIKE IT DOESN'T KNOW WHAT
> GEAR TO GO INTO UNDER LIGHT TO NORMAL
> ACCELERATION. THIS OCCURS WHILE COLD AND

DURING THE WARMING PERIOD, (NORMALLY UP TO
AROUND 180 DEGREES), BUT TENDS TO RESOLVE AFTER
THE ENGINE IS COMPLETELY WARMED UP. THIS
TRANSMISSION PROBLEM IS CONTINUOUS AND
HAPPENS EVERY TIME AFTER THE VEHICLE SITS ALL
NIGHT OR IF IT HAS SIMPLY SIT FOR A FEW HOURS. IT IS
VERY APPARENT, OTHER PASSENGERS ASK WHAT IS
WRONG WITH THE VEHICLE WHEN THEY RIDE IN IT. I
BOUGHT THE VEHICLE NEW, BUT WHEN I TOOK THE
TEST DRIVE IT WAS ALREADY WARMED UP. THEREFORE
I WAS UNAWARE OF THE ISSUES PRESENT. I WENT
BACK TO THE SALESMAN TO DESCRIBE THE PROBLEM
AND WAS INFORMED THIS HAPPENS WITH ALL THE 2018
EIGHT SPEED SILVERADO'S HE HAS DRIVEN ON THEIR
LOT. I LOOKED ON THE INTERNET AND FOUND THESE
TRANSMISSIONS HAVE A LEARN CYCLE, SO I DECIDED
TO GIVE IT SOME TIME TO SEE IF WAS A LEARNING
CURVE WITH THE COMPUTER. IT NEVER CLEARED UP. I
LATER BROUGHT THE VEHICLE INTO THE DEALERSHIP
FOR THE INITIAL SERVICE AND DESCRIBED WHAT HAD
BEEN HAPPENING WITH IT TO THE SERVICE
DEPARTMENT. I LEFT THE VEHICLE OVERNIGHT SO THE
TECHNICIAN COULD DRIVE FIRST THING IN THE
MORNING AND PERFORM AN SERVICES. THE NEXT DAY
I WAS CALLED AND TOLD MY VEHICLE WAS READY.
UPON ARRIVAL I WAS INFORMED THE TECHNICIAN WAS
ABLE TO DUPLICATE THE PROBLEMS I DESCRIBED, BUT
IT WAS NORMAL FOR THE EIGHT SPEED TRANSMISSION.
HOWEVER, IT BECOMES WORSE TO BRING IT BACK IN
FOR FURTHER DIAGNOSIS. I CALLED GM, THEY ALSO
LOOKED INTO THE CASE FOR ABOUT A WEEK, THEN
CALLED BACK AND STATED THAT IS NORMAL FOR THE
TRANSMISSION. I BOUGHT THE VEHICLE NEW WITH
ABOUT 2,500 MILES ON IT, (DEMO), AND HAVE HAD IT
ONLY A FEW MONTHS. IT CURRENTLY HAS LESS THAN
10,000 MILES ON IT.

191.    Another incident involving a 2018 Chevrolet Colorado was reported on November

16, 2018:

I HAVE A 2018 CHEVROLET COLORADO LT 4WD CREW
CAB. MULTIPLE TIMES ON A COLD START THE ENGINE
IS MISFIRING. THE CHECK ENGINE LIKE COMES ON, THE
VSA, AND T/C LIGHTS ALL COME ON AND A
NOTIFICATION ON THE DASH SAYING STABILITRAK IS

DISABLED. THE VEHICLE SHAKES TERRIBLY. THE
CHECK ENGINE LIGHT WILL FLASH AND THEN GO
SOLID. I AM AN AUTOMOTIVE TECHNICIAN. I KNOW
THAT A MISFIRE SHOULD SET A HARD DTC. WHEN THE
VEHICLE IS TURNED OFF AND STARTED SEVERAL
HOURS LATER THERE IS NO CHECK ENGINE LIGHT OR
ANY OTHER LIGHT ON. THE DEALERSHIP IN
MARYSVILLE, OH HAD MY TRUCK FOR 3 DAYS AND
TOLD ME THEY CLEANED A BUNCH OF TERMINALS AT
SEVERAL CONNECTORS. WHATEVER THAT IS SUPPOSED
TO DO. THEY SAID THEY STARTED THE VEHICLE
SEVERAL TIMES AFTER AND EVERYTHING WAS GOOD.
THE NEXT DAY AFTER I PICKED THE TRUCK UP, IT DID
THE SAME EXACT THING! EXTREMELY FRUSTRATING! I
KNOW A CONTINUOUS MISFIRE LET'S UNBURNED FUEL
INTO THE CATALYTIC CONVERTER WHICH LEADS TO
PREMATURE BREAKDOWN OF THE CATALYST. SO MY
QUESTION IS WHAT IS BEING DONE ABOUT THESE
ISSUES? ANOTHER ISSUE IS WITH THE TRANSMISSION.
ON A COLD START THERE IS A CLUNK NOISE. THEN
WHEN YOU ARE DRIVING AT CRUISING SPEED AND YOU
LET OFF THE THROTTLE AND DEPRESS THROTTLE
AGAIN THERE IS A SHUDDER. ALSO, WHEN YOU COME
TO A COMPLETE STOP THE VEHICLE TRIES TO JOLT
FORWARD. THIS IS EXTREMELY CONCERNING
ESPECIALLY ON A VEHICLE WITH ROUGHLY 18,000
MILES ON IT. THIS NEEDS TO BE ADDRESSED
PROMPTLY!!

192.    Another incident involving a 2018 Chevrolet Colorado was reported on January 28,

2019:

NOTICED A "SHUDDERING" IN THE TRANSMISSION
DURING LIGHT ACCELERATION BETWEEN 40-60MPH
AROUND 1500RPM. WHOLE TRUCK VIBRATES LIKE YOU
ARE DRIVING OVER RUMBLE STRIPS. ONLY 4150 MILES
ON THE TRUCK!

### k.    2015 GMC Sierra

193.    On the NHTSA website, there are at least 385 consumer complaints for "2015 GMC

Sierra." As one example, on January 28, 2015, the following incident was reported:

I HAD MADE A COMPLAINT TO CHAPDELAINE BUICK-
GMC THAT MY BRAND NEW TRUCK DID NOT SEEM TO
GO INTO FOUR WHEEL DRIVE. I WAS TOLD TO BRING
THE TRUCK TO THE DEALERSHIP AND THEY WOULD
CHECK IT FOR ME. I WAS TOLD BY THE SERVICE
DEPARTMENT THAT THE TRUCK WORKED JUST FINE IN
FOUR WHEEL DRIVE. I THEN NOTICED THAT THE TRUCK
SEEM TO SHIFT VERY ROUGH AND I CALLED THE
SERVICE DEPARTMENT AND TOLD THEM THAT
SOMETHING HAD TO BE WRONG. THE SERVICE
DEPARTMENT ASKED ME TO BRING THE TRUCK BACK
DOWN TO THEM THE NEXT DAY AND THEY WOULD
TAKE IT FOR A TEST DRIVE. WHILE I WAS DRIVING THE
TRUCK TO THE DEALERSHIP IT SHIFTED FROM DRIVE
INTO NEUTRAL.I COASTED TO A STOP PUT THE VEHICLE
INTO PARK SHUT OFF AND RESTARTED THE ENGINE
AND THEN SHIFTED BACK INTO DRIVE AND TRIED TO
DRIVE AGAIN. THIS TIME THE VEHICLE SERVICE
ENGINE LIGHT CAME ON AND THE VEHICLE STAYED IN
LOW GEAR AND WOULD NOT SHIFT INTO A HIGHER
GEAR. THE BEST SPEED I COULD MAKE WAS 10 MPH. I
STOPPED THE VEHICLE AND RESTARTED TWO MORE
TIMES. ON THE SECOND TRY THE VEHICLE DID GO INTO
DRIVE. I MADE IT TO THE DEALERSHIP AND THEY TOOK
IT FOR A TEST DRIVE AND UPON THEIR RETURN GAVE
ME A LOANER VEHICLE. THEY HAD TO REBUILD THE
TRANSMISSION ON MY BRAND NEW TRUCK WHICH
TOOK ABOUT THREE DAYS. THANKFULLY THIS EVENT
TOOK PLACE ON A BACK ROAD WITH LITTLE TRAFFIC.
IF IT HAD HAPPENED ON A BUSY ROAD AN ACCIDENT
MIGHT HAVE OCCURRED. *TR

194.    Another incident involving a 2015 GMC Sierra was reported on August 7, 2015:

THE CONTACT OWNS A 2015 GMC SIERRA. THE
CONTACT STATED THAT WHILE DRIVING AT VARIOUS
SPEEDS, THE TRANSMISSION VIBRATED CAUSING A
HESITATION WHEN THE GEARS SHIFTED. THE CONTACT
MENTIONED THAT THE FAILURE WAS MOST SEVERE
WHILE DRIVING AT SPEEDS BETWEEN 40-50 MPH. THE
VEHICLE WAS TAKEN TO A DEALER WHO CHANGED
THE GEAR RATIO AND ADJUSTED THE REAR END. THE
VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED.
THE MANUFACTURER WAS NOTIFIED OF THE FAILURE.
THE FAILURE MILEAGE WAS 250.

195.    Another incident involving a 2015 GMC Sierra was reported on September 21, 2015:

> VEHICLE RANDOMLY AND REPEATEDLY SHIFTS INTO
> NEUTRAL FROM DRIVE, WITOUT ANY INPUT FROM
> DRIVER, DURING NORMAL DRIVING CONDITIONS.
> VEHICLE RANDOMLY AND REPEATEDLY LOSES
> ACCELERATOR PEDAL CONTROL AND FUNCTIONALITY
> DURING NORMAL DRIVING CONDITIONS.

196.    Another incident involving a 2015 GMC Sierra was reported on November 3, 2015:

> THE TRANSMISSION SEEMS TO SLIP OR HESITATE AT
> TAKEOFF. THE RUNNING LIGHTS ARE TOO DIM TO SEE
> DOWN THE ROAD.

197.    Another incident involving a 2015 GMC Sierra was reported on November 5, 2015:

> HEADLIGHTS ARE VERY POOR (WHEN WET ROAD OR IN
> TOWN) CANNOT TELL THEY BURNING...I HAVE
>
> 20/20 VISION......ON SLOW DOWN DOES NOT DOWN
> SHIFT....CANNOT ACCELERATE....THE STARTER
>
> HANGS UP ON START AS IF DOES NOT FIRE OR NO FUEL
> PUMP

198.    Another incident involving a 2015 GMC Sierra was reported on May 27, 2016:

> TL* THE CONTACT OWNS A 2015 GMC SIERRA 1500.
> WHILE DRIVING 60 MPH, THE VEHICLE BEGAN TO
> DECELERATE AND THE ENGINE WARNING LIGHT
> ILLUMINATED. THE VEHICLE WAS TOWED TO A DEALER
> WHERE IT WAS DIAGNOSED THAT A GEAR CYLINDER
> FRACTURED. THE VEHICLE WAS REPAIRED, BUT WAS
> UNABLE TO BE DRIVEN. THE MANUFACTURER WAS NOT
> NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS
> APPROXIMATELY 4,000.

199.    Another incident involving a 2015 GMC Sierra was reported on July 22, 2016:

> 2015 GMC SIERRA HAS A DELAY THROTTLE RESPONSE.
> DOES IT AT ALL SPEEDS AND FROM TAKE OFF. TOOK TO

DEALER AND SERVICE ADVISOR PULLED TRUCK IN
SHOP. GOT OUT AND SAID IT DOES HAVE A DELAY. THE
RAN VIN NUMBER THROUGH GMC DATA BASE AND
TOLD ME. MANUFACTURE SAID IT WAS A NORMAL
THING. IT'S NOT NORMAL AND NEVER HAD A VEHICLE
WITH A THROTTLE DELAY.

200.    Another incident involving a 2015 GMC Sierra was reported on July 25, 2016:

DELAYED ENGAGEMENT IN DRIVE, TRANSMISSION
CLUNKS, RPM FLARES AND TRUCK QUITS MOVING
UNEXPECTEDLY. SHUDDER AT 3- 50 MPH, VIBRATES
STEERING WHEEL AND LEAVES AN UNEASY FEELING
THE TRUCK IS GOING TO QUIT MOVING.

201.    Another incident involving a 2015 GMC Sierra was reported on September 10,

2016:

FIRST OF ALL THE HEADLIGHTS ARE VERY DIM AND AT
NIGHT CANNOT SEE NOTHING.DEALER SAID IT IS WHAT
IS .VERY BAD !! ALSO MY SIERRA ON WINDOW STICKER
STATES COMES WITH ALL TERRAIN TIRES IT DOES NOT
HAVE ALL TERRAIN TIRES . THEY ARE 265/65/R18
GOODYEAR WRANGLER SRA .I WORKED FOR
GOODYEAR AND THOSE TIRES ARE ALL SEASON !!! NOT
ALL TERRAIN AS SPECIFIED ON WINDOW STICKER !! I
TALKED TO DEALER AND CALLED CUSTOMER SERVICE
AT GM THEY NEVER CALL BACK AND THEY SAID THOSE
ARE THE RIGHT TIRES.THEY ARE NOT ACCORDING TO
MY ATTORNEY WHO STATES THE WINDOW STICKER IS
TOTALLY INCORRECT AND IS FRAUDULENT CHECK
YOUR TIRES AND WINDOW STICKERS AND COMPARE
AND LOOK ON GOODYEARS WEBSITE YOU WILL
SEE.ALSO MY TRANSMISSION CLUNKS AND KNOCKS
AND SHIFTS INCORRECTLY DEALER STATES ITS
NORMAL I SPEND 40K ON A NEW TRUCK AND ALL I
HAVE ARE PROBLEMS AND GM DOES NOTHING. IT
DOWNSHIFTS HORRIBLE WHAT CAN I DO???

202.    Another incident involving a 2015 GMC Sierra was reported on December 2, 2016:

TL* THE CONTACT OWNS A 2015 GMC SIERRA 1500.
WHILE DRIVING VARIOUS SPEEDS, THE TRANSMISSION
VIBRATED AND CAUSED A HESITATION WHEN THE

GEARS SHIFTED WITHOUT WARNING. THE VEHICLE
WAS TAKEN TO THE DEALER AND REPAIRED;
HOWEVER, THE FAILURE RECURRED SEVERAL TIMES.
THE MANUFACTURER WAS MADE AWARE OF THE
FAILURE. THE FAILURE MILEAGE WAS 50.

203.    Another incident involving a 2015 GMC Sierra was reported on December 8, 2016:

EXTREME LAG/DELAY- HARSH ENGAGEMENT WHEN
SHIFTING FROM PARK TO REVERSE. ITS LIKE YOU ARE
BACKING INTO SOMETHING? WHEN CRUISING 28-32 MPH
AND RELEASING ACCELERATOR(AS IF YOU WERE
COASTING INTO A TURN) WHEN SLOWING THE VEHICLE
SEEMS TO SHIFT UP AND LUNGE ENTERING THE TURN.

CLUNKS AND SHIFTS HARD WHEN CRUISING
NORMALLY WHEN YOU HAVE TO RELEASE THE GAS
PEDAL AND SLIGHTLY REACCELERATE, CAUSING THE
DRIVER TO HESITATE.

VEHICLE SHUTTERS AND HARD ACCEL 10X WORSE
WHEN TOWING A 7000 # TRAILER (TRUCK IS RATED
OVER 12,000 LBS. TOWING).

### l.    2016 GMC Sierra

204.    On the NHTSA website, there are at least 108 consumer complaints for "2016 GMC

Sierra." As one example, the following incident was reported on March 21, 2016:

WHILE DRIVING MY TRUCK, IT HAS HAD 3 ALERTS ON
DASH FOR "SERVICE STABILITRAK, POWER STEERING
USE CAUTION AND TRAILER BRAKE." VEHICLE GAUGES
ALL DROP TO ZERO WHILE OPERATING VEHICLE AND
GO ON AND OFF. THE VEHICLE WHEN THIS OCCURS
ALSO DISENGAGES FROM GEAR, VEHICLE IS AN
AUTOMATIC. THEN ENGINE REVS UP WHEN IT SLIPS
OUT OF GEAR AND GENERALLY GOES BACK IN GEAR AS
GAUGES COME BACK ON. THE POWER STEERING SEEMS
TO ALSO LOSE SOME POWER. WHEN THIS OCCURS, IF
YOU DEPRESS THE GAS PEDAL, YOU DO NOT GET ANY
MORE POWER. THIS IS TECHNICALLY THE 6TH
OCCURRENCE. IT HAS BEEN BACK TO DEALER (GRIFFIN
GMC OF MONROE, NC) AND COMPUTER CODES WERE
CLEARED AND NOTHING REPORTED IE...TECHNICALLY
FOUND THAT WOULD CAUSE THIS ISSUE PER THE

DEALERSHIP AS UNABLE TO RE-PRODUCE THE CAUSE. I
RETURNED THE TRUCK TODAY AFTER THIS 6TH
OCCURRENCE DUE TO MY FEAR OF DRIVING THE
VEHICLE WITH MY CHILDREN AND GETTING INVOLVED
IN AN ACCIDENT. I HAVE VIDEO OF THIS LAST
OCCURRENCE OF DASHBOARD GAUGES AND SHARED
THEM WITH THE DEALERSHIP. FIRST OCCURRENCE
PICTURES ARE FEB 29, 2016 AND SUNDAY, MARCH 20,
2016. VEHICLE HAS APPROXIMATELY 2000 MILES ON
ODOMETER. ENTIRE TIME, VEHICLE HAS BEEN
RUNNING ON LOCAL ROAD, EITHER AT STOP OR
DRIVING BELOW 45MPH MOVING STRAIGHT AHEAD. I
COULD NOT REPLICATE OR CAUSE THE ISSUE TO
HAPPEN AGAIN ON PURPOSE, VERY RANDOM.

205.    Another incident involving a 2016 GMC Sierra was reported on September 8, 2016:

TL* THE CONTACT OWNS A 2016 GMC SIERRA 1500.
WHEN THE SHIFTER WAS ENGAGED, THE VEHICLE DID
NOT REGISTER THE CORRECT GEAR AND FAILED TO
MOVE. WHEN THE VEHICLE DID RECOGNIZE THE
CORRECT GEAR, IT ACCELERATED UNINTENTIONALLY.
THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT
WAS DIAGNOSED THAT THE TRANSMISSION WAS
DEFECTIVE AND PARTS IN THE TRANSMISSION NEEDED
TO BE REPLACED. THE VEHICLE WAS REPAIRED;
HOWEVER, THE FAILURE RECURRED. THE VEHICLE WAS
RETURNED TO THE DEALER WHERE IT WAS DIAGNOSED
THAT THE TRANSMISSION NEEDED TO BE REPLACED.
THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE
FAILURE MILEAGE WAS APPROXIMATELY 150.
UPDATED 10/18/16*LJ

206.    Another incident involving a 2016 GMC Sierra was reported on May 3, 2017:

GM 8 SPEED TRANSMISSION IS FULL OF PROBLEM. IT
CONSTANTLY HESITATES, HANG GEARS, BUCKS, AND
POSES VARIOUS SAFETY CONCERNS. FOR INSTANCE IF
MERGING ONTO THE HIGHWAY THE TRANSMISSION
WILL HESITATE AND THE TRUCK WILL BE
UNRESPONSIVE TO GAS PEDAL INPUT FOR A PERIOD OF
TIME SOMETIMES UP TO 12 SECS. THIS HESITATION
CAUSES A SAFETY CONCERN WHEN ATTEMPTING TO
MERGE INTO TRAFFIC. GM ACKNOWLEDGES THESE
CONCERNS BUT STATES THAT IT IS OPERATING AS

DESIGNED BUT ARE WORKING ON SOFTWARE UPDATES
TO IMPROVE TRANSMISSION PERFORMANCE. THIS HAS
BEEN A CONSTANT ISSUE SINCE I PURCHASED THE
TRUCK.

207.    Another incident involving a 2016 GMC Sierra was reported on May 4, 2017:

8 SPEED TRANSMISSION BUCKS, HESITATES, LURCHES
FORWARD, CLUNKS, WHILE IN DRIVE. THE
CONTINENTAL TIRES ARE CUPPING, WHICH GM SAYS IS
CHARACTERISTIC OF THE BRAND. THE TRUCK
VIBRATES WHILE AT 25MPH, AROUND 50MPHM AND 65-
75MPH. WHILE IN AWD/4WD AT 30 AND 50MPH, THE
DRIVELINE MAKES A WHINING NOISE AND VIBRATES
SOMETIMES.

208.    Another incident involving a 2016 GMC Sierra was reported on September 15,

2017:

THIS ISSUE STARTED A FEW MONTHS AFTER I
PURCHASED THE TRUCK TOOK IT TO TWO DEALERS
THEY SAY ITS NORMAL. CALLED GMC & THEY HAVE NO
RECALL. WHEN DRIVING THE TRUCK & HAVE TO SLOW
DOWN IN TRAFFIC THE AUTOMATIC TRANSMISSION
DOWN SHIFTS & HAS A VERY NOTICABLE JERK. WILL
ACTUALLY JERK THE HOLE TRUCK. PEOPLE WHO HAVE
RODE WITH ME TELL ME I HAVE A TRANSMISSION
PROBLEM. WHAT CAN I DO

209.    Another incident involving a 2016 GMC Sierra was reported on March 20, 2018:

PLEASE MAKE GM RESOLVE THE ISSUES WITH THE 8
SPEED TRANSMISSIONS IN THE TRUCKS. 2016 SL T Z71. I
PURCHASED THE TRUCK NEW. IT'S NEVER SHIFTED
PROPERLY. HESITATIONS, CLUNKING, JERKING,
SHUTTER, HARD DOWN SHIFTS .... EVERYTIME I TAKE IT
IN, THEY SAY IT'S DUE FOR AN UPDATE. THE TRUCK
HAS HAD 4 UPDATES AND NONE OF THEM HAVE FIXED
A THING. I HAD IT IN BEFORE THE 36,000 MILE BUMPER
TO BUMPER WARRANTY WAS UP AND WAS TOLD IT
WAS UP TO DATE. THEN LAST WEEK, I TOOK IT IN AND
WAS TOLD IT WAS "SEVERAL UPDATES BEHIND."
(54,XXX) MILES. TO TOP IT OFF, GENERAL MOTORS
WOULDN'T PAY FOR THE $400 UPDATE, WHICH DIDN'T

FIX ANYTHING AT ALL!!! THE TRUCK JERKED BEFORE
WE GOT A BLOCK FROM THE DEALERSHIP. GM SAYS
THAT EVEN THOUGH THE TRUCK IS STILL UNDER A
FACTORY 60,000 MILE POWERTRAIN WARRANTY,
TRANSMISSION UPDATES ARENT COVERED. THE 120,000
EXTENDED WARRANTY WOULDN'T COVER IT BECAUSE
THEY SAY IT SHOULD BE COVERED UNDER THE
FACTORY POWERTRAIN WARRANTY! I ABSOLUTELY
LOVE THE TRUCK OTHER THAN THE JUNK
TRANSMISSION IN IT. I DON'T THINK IT'S SAFE OR MUCH
FUN HAVING A VEHICLE THAT STARTS TO GO THEN
FALLS FLAT ON ITS FACE FOR A FEW SECONDS BEFORE
SLAMMING INTO THE NEXT GEAR. THIS IS A MAJOR
PROBLEM WITH A HUGE NUMBER OF TRUCKS. DON'T
BELIEVE ME? GOOGLE "2016 SIERRA TRANSMISSION
ISSUE" OR ANYTHING OF THE SORT. YOU'LL SEE. I'M
REALLY NOT ASKING FOR MUCH. I DIDN'T WANT TO
PUT MY FAMILY IN A POTENTIALLY UNSAFE VEHICLE
..... YET HERE WE ARE. LIKE I SAID, I'M NOT ASKING FOR
MUCH. ALL I WANT IS FOR MY TRUCK TO SHIFT
NORMAL. TO GO WHEN IT NEEDS OR HAS TO. MY TRUCK
HAS HAD 4 UPDATES AND WAS SEVERAL UPDATES
BEHIND LAST TIME, THAT'S ROUGHLY AN UPDATE
EVERY 10,000 MILES AND NOW THEY'RE NOT COVERED?
ON TWO SEPARATE OCCASIONS, IT'S SHIFTED SO HARD
THAT IT JARRED MY NECK AND MADE IT SORE FOR A
FEW DAYS IVE EVEN PULLED OVER ON THE SIDE OF
THE ROAD THINKING WE WERE REAR-ENDED. SO HAS
MY WIFE. NOT SAFE-NOT NECESSARY!

210.    Another incident involving a 2016 GMC Sierra was reported on July 30, 2018:

TRUCK SHIFTS REALLY HARD AND IS UNPREDICTABLE.
I ALMOST DROVE THROUGH MY GARAGE DOOR THE
OTHER DAY SHIFTING TO DRIVE FROM REVERSE.
TRUCK WILL LUNGE FORWARD OR DELAY IN SHIFTING.
THERE HAVE BEEN A FEW TIMES IVE HAD TO SLAM ON
THE BRAKES BEFORE I BACKED INTO SOMETHING. I
HAVE BROUGHT IT IN 3-4 TIMES FOR THE ISSUE AND
GMC WONT REMEDY THE PROBLEM.

211.    Another incident involving a 2016 GMC Sierra was reported on August 8, 2018:

8 SPEED TRANSMISSION BUCKS, HESITATES, LURCHES
FORWARD, CLUNKS, WHILE STARTUNG ACCELERATION
OR COMING TO A STOP. I TRY TO KEEP A BIG GAP

BETWEEN MY TRUCK AND CARS IN FRONT OF ME AT
STOP SIGNS BECAUSE IT RANDOMLY LURCHES
FORWARD AND I ALMOST HAVE BUMPED CARS IN
FRONT OF ME. I HAVE HAD THE TRUCK INTO THE
DEALER SO MANU TIMES TO FIX THE VIBRATION ISSUES
AS WELL, THEY SAID 3 TIRES THAT CAME IN THE
BRAND NEW TRUCK WERE DEFECTIVE SO I HAD TO
REPLACE THEM ALL AND THE SHAKE IS STILL THERE,
THE BALANCED, REBALANCED, ROAD FORCE BALANCE
AND NOTHING WORKS. LAST TIME AT THE DEALER
SAID IT IS PROBABLY THE TIRES, HE SAID DON'T
ROTATE THEM AGAIN AND WHEN THEY WEAR OUT HE
WILL PUT ME IN A BETTER TIRE. I AM PAST MY
WARRANTY SO THE DEALER SAYS ANY COSTS ARE MY
RESPONSIBILITT, IF THE NHTSA COULD PLEASE STEP IN
TO ASSIST US TO MAKE GM FIC THEAE VEHICLES
WHICH ARE A SAFETY HAZARD.

212.    Another incident involving a 2016 GMC Sierra was reported on September 21,

2018:

TRANSMISSION - WHEN DRIVING THE VEHICLE IT DOES
A HARD SHIFT WHEN ACCELERATING AND
DECELERATING. I HAVE TAKEN THE VEHICLE INTO THE
DEALER TWICE. THEY ARE SAYING THAT IS A "STATE
OF THE ART" COMPUTER THAT NEEDS TO BE RESET!!! I
AM TAKING IT BACK IN FOR A 3RD TIME. THE CARE IS 2
YEARS OLD WITH 31 K MILES.

213.    Another incident involving a 2016 GMC Sierra was reported on October 27, 2018:

TRANSMISSION SHIFTS ABRUPTLY AND TORQUE
CONVERTER CAUSES SHUDDER AT HIGHWAY SPEEDS.
TRUCK HAS BEEN SERVICED TWICE FOR THE SAME
ISSUE BY DEALER AND DEALER RECENTLY TOLD ME
PROBLEM IS UNRESOLVABLE.

214.    Another incident involving a 2016 GMC Sierra was reported on November 6, 2018:

THE CONTACT OWNS A 2016 GMC SIERRA 1500. WHILE
DRIVING 65 MPH IN STOP AND GO TRAFFIC, THE
CONTACT DETECTED A SHUTTER AND HEARD AN
ABNORMAL NOISE WHEN SHIFTING GEARS. THE
VEHICLE WAS TAKEN TO MARTY'S BUICK GMC …

73

WHERE THE TRANSMISSION WAS REPROGRAMMED AND
FLUSHED. THE VEHICLE WAS THEN TAKEN TO BEST
CHEVROLET . . . WHERE THE CONTACT WAS INFORMED
THAT THE CAUSE OF THE FAILURE COULD NOT BE
DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS MADE AWARE OF THE FAILURE.
THE FAILURE MILEAGE WAS 96,794.

**m.     2017 GMC Sierra**

215.    On the NHTSA website, there are at least 58 consumer complaints for "2017 GMC

Sierra." As one example, on April 15, 2017, the following incident was reported:

HEAVY VIBRATION BETWEEN 1200 RPM AND 1500 RPM
ANYWHERE BELOW 45 MPH AND ABOVE 70 MPH

216.    Another incident involving a 2017 GMC Sierra was reported on July 20, 2017:

THE CONTACT OWNS A 2017 GMC SIERRA 1500. WHILE
DRIVING 30 MPH, THE TRANSMISSION FAILED AFTER A
COMPLETE STOP. WHEN THE ACCELERATOR PEDAL
WAS DEPRESSED, THE RPMS INCREASED. WHEN
SHIFTING FROM SECOND TO FIRST GEAR, THE
TRANSMISSION SHIFTED INTO FIRST GEAR WITH
EXTREME FORCE AND CAUSED THE VEHICLE TO
ABRUPTLY ACCELERATE. THE CONTACT HAD TO
ENGAGE THE BRAKE PEDAL WITH FORCE TO AVOID A
CRASH. THE FAILURE WAS EXPERIENCED NUMEROUS
TIMES. THE VEHICLE WAS TAKEN TO WALSH CHEVY
BUICK GMC (2330 NORTH BLOOMINGTON STREET,
STREATOR, IL, 61364 815-673-4333) WHERE THE
TRANSMISSION SYSTEM WAS REPROGRAMMED TWICE
AND THE ELECTRONIC CONTROL MODULE WAS
REPLACED. HOWEVER, THE FAILURE WAS NOT
CORRECTED. THE MANUFACTURER WAS NOTIFIED. THE
FAILURE MILEAGE WAS 112. UPDATED 08/30/17*LJ

217.    Another incident involving a 2017 GMC Sierra was reported on July 27, 2017:

THE CONTACT OWNS A 2017 GMC SIERRA. WHILE
DRIVING APPROXIMATELY 5 MPH, THE VEHICLE FAILED
TO SHIFT OUT OF GEAR AND THERE WAS A DELAY OF
THREE TO FOUR SECONDS BEFORE SHIFTING INTO
SECOND GEAR. THE FAILURE RECURRED EVERY

MORNING. THE VEHICLE WAS TAKEN TO THE DEALER (JIM CAUSLEY, LOCATED AT 38111 GRATIOT AVE, CLINTON TOWNSHIP, MI 48036) WHERE IT WAS CONFIRMED THAT GM WAS AWARE OF THE ISSUE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND INFORMED THE CONTACT THAT THERE WAS NO RECALL ON HIS VIN. NO FURTHER ASSISTANCE WAS OFFERED. THE APPROXIMATE FAILURE MILEAGE WAS 4,500. UPDATED 11/13/17 *BF

218.    Another incident involving a 2017 GMC Sierra was reported on October 17, 2017:

UNINTENDED ACCELERATION – WHEN SLOWING DOWN TO COME TO A STOP THE VEHICLE WILL OCCASIONALLY ENGAGE A LOWER GEAR VERY SUDDENLY AND LURCH FORWARD. THE RESULTING FORCE IS ENOUGH TO OVERPOWER THE BRAKING EFFORT BEING PROVIDED BY THE DRIVER AND THE VEHICLE WILL MOVE FORWARD SEVERAL FEET BEFORE THE DRIVER CAN REACT AND APPLY MORE BRAKING FORCE TO STOP THE VEHICLE. THE ISSUE OCCURS RANDOMLY AND INFREQUENTLY AT VERY SLOW SPEEDS (5-10MPH). THERE HAVE BEEN SEVERAL OCCASIONS WHERE I'VE BEEN BRAKING TO STOP AT A STOP LIGHT AND BEEN FORCED INTO THE MIDDLE OF AN INTERSECTION. I'M CONCERNED THE ISSUE COULD CAUSE THE VEHICLE TO STRIKE THE CAR IN FRONT OF IT OR A PEDESTRIAN CROSSING IN FRONT OF THE VEHICLE AS IT STOPS FOR A CROSSWALK. MULTIPLE UNSUCCESSFUL REPAIR ATTEMPTS HAVE BEEN MADE BY THE DEALER. I ATTEMPTED TO FORCE THE MANUFACTURER TO BUY THE VEHICLE BACK FROM ME THROUGH THE MASSACHUSETTS LEMON LAW AND SINCE THAT TIME THEY HAVE DENIED THE EXISTENCE OF A PROBLEM. I HAVE SEEN SEVERAL INSTANCES ONLINE WHERE CONSUMERS WITH THE IDENTICAL VEHICLE (ALL WITH THE 8 SPEED TRANSMISSION) COMPLAINED OF THE SAME PROBLEM.

219.    Another incident involving a 2017 GMC Sierra was reported on October 25, 2017:

VIBRATION 65+ MPH, FELT IN STEERING WHEEL AND SEAT.

STEERING WHEELS QUIVERS AT 65+ MPH.

TRUCK FEELS VERY UNSTABLE AT HIGHWAY SPEEDS.

DEALER STATES IT'S NORMAL.

220.   Another incident involving a 2017 GMC Sierra was reported on February 23, 2018:

TRANSMISSION HARSH 1-2 SHIFT WHEN IT IS UNDER
LIGHT THROTTLE AND SOMETIME DOES NOT SHIFT OR
MAKE NOSE. GMC DEALER ARE AWARE ABOUT THIS
ISSUES ON ALL GM TRUCK MODEL OF 2015 TO 2017 WITH
8SPED TRANSMISSION SINCE APRIL 2017. I HAVE
ATTACHED DOCUMENTS GIVEN BY DEALER.

221.   Another incident involving a 2017 GMC Sierra was reported on June 1, 2018:

WHEN DRIVING AT SLOW PARKING LOT SPEEDS OR
WHEN COMING TO A COMPLETE STOP THE VEHICLE
INTERMITTENTLY LUNGES, SURGES OR JOLTS, CAUSING
THE VEHICLE TO MOVE FORWARD OR BACKWARDS
UNANTICIPATED. SOMETIMES THE JOLT FEELS LIKE
ANOTHER VEHICLE HAS HIT THIS VEHICLE FROM THE
REAR, AGAIN CAUSING IT TO LUNGE FORWARD.

222.   Another incident involving a 2017 GMC Sierra was reported on June 15, 2018:

I BOUGHT THIS TRUCK USED WITH 12,918 MILES ON IT,
APRIL 2018. WHEN DRIVING(ESPECIALLY ON HIGHWAY),
AND CHANGING SPEEDS, TRANSMISSION CLUNKS AND
LURCHES-AUTOMATIC TRANSMISSION. IT SOUNDS AND
FEELS AS IF DRIVE TRAIN WILL FALL OUT. I HAVE
TAKEN IT TO DEALER TWICE. THE FIRST TIME, THEY
KEPT IT FOR 3 DAYS, THE SECOND TIME, FOR ONE. THE
MECHANIC IS ABLE TO REPLICATE THE
NOISE/LURCHING, BUT THEY ARE UNABLE TO FIND A
CAUSE OR CORRECTION. THEY TELL ME IT IS NOT
DANGEROUS, BUT I AM CONCERNED THAT THE
NOISE/MOVEMENT, COULD CAUSE MYSELF OR
ANOTHER FAMILY MEMBER TO SWERVE OR BRAKE
HARD AND CAUSE AN ACCIDENT. THE MECHANIC HAS
TRIED "UPDATING THE SOFTWARE" BUT THAT DID NOT
FIX IT. SEVERAL OTHER GMC SIERRA OWNERS TELL ME
THEY HAVE HAD SAME PROBLEM.

223.   Another incident involving a 2017 GMC Sierra was reported on August 28, 2018:

THE "CHEVY SAKE". AT SPEEDS OVER 70MPH
EXCESSIVE VIBRATION INSIDE THE VEHICLE. THIS IS
WELL DOCUMENTED ON-LINE, PARTICULARLY
VARIOUS GM FORUMS AND YOU TUBE VIDEOS. IT IS MY
UNDERSTANDING THAT GM DENIES IT IS A PROBLEM,
BUT THEY HAVE BEEN DOING SOME BUY BACKS AND IF
YOU READ SOME OF THE DEALER BLOGS IT IS EVIDENT
THAT GM KNOWS IT IS A PROBLEM.

224.     Another incident involving a 2017 GMC Sierra was reported on December 6, 2018:

THE TRANSMISSION SHIFTS EXTREMELY ROUGH FROM
1ST TO 2ND GEAR IN PARKING LOTS AT A SLOW SPEED
AND ON NORMAL HIGHWAY OR STREET DRIVING AND
EXPERIENCES THE SAME THING WHILE SLOWING DOWN
TO STOP 2. THE ENGINE HAS RECENTLY BEEN HAVING A
AWKWARD SHAKE TO IT WHILE IN IDEAL AFTER IT HAS
BEEN RUNNING AND WARM 3. WHILE BACKING UP AND
TURNING THE WHEEL, THE FRONT SUSPENSION WILL
LET OUT A LOUD CLUNK SOUND AND THE SOUND WILL
RETURN WHEN TURNING THE WHEELS BACK FORWARD
AFTER PUTTING IT INTO DRIVE.

225.     Another incident involving a 2017 GMC Sierra was reported on December 18,

2018:

I HAVE HAD SEVERAL INSTANCES WHERE YOU PUSH
THE ACCELERATOR AND YOU START TO GO AND THEN
IT JUST STOPS MOVING LIKE THE TRANSMISSION HAS
DISENGAGED. STARTED TO TURN INTO ONCOMING
TRAFFIC THIS MORNING AND HAD TO STOP AS AS IT
DID THIS AND I WAS GOING TO GET HIT!!! IT DOES IT A
LOT, FIRST TIME I WOULD HAVE BEEN HIT!!! GM SAYS
THEY KNOW IT'S A PROBLEM, AT SHOP NOW AGAIN FOR
IT! GOING TO GET SOMEONE KILLED!!!!

226.     Another incident involving a 2017 GMC Sierra was reported on January 10, 2019:

TRANSMISSION HAS SURGING AND HESITATION.
DEALER CANNOT FIX.

227.     Another incident involving a 2017 GMC Sierra was reported on February 4, 2019:

77

> TRUCK LAGS POWER WHEN PRESSING THE GAS PEDAL
> AT TIMES AFTER PUTTING TRANSMISSION INTO DRIVE
> FROM REVERSE. TRANSMISSION SHIFTS HARD INTO
> AND OUT OF FIRST GEAR AND AT TIMES FEELS LIKE IT
> IS SKIPPING 2ND GEAR DURING A DOWNSHIFT.

228.   Another incident involving a 2017 GMC Sierra was reported on March 12, 2019:

> TRANSMISSION SHIFT FROM 1ST GEAR. THERE IS A
> PROBLEM IN THE GEAR SHIFT FROM 1ST TO 2ND IT
> SLAMS THE TRANSMISSION WHEN YOU STOP AND
> START. THERE IS A HEATER IN THE TRANSMISSION
> THAT PUTS EXTRA DEGRADATION ON THE OIL CAUSING
> IT TO NEED REPLACEMENT VERY EARLY. DEALER
> KNOWS OF THE ISSUE BUT HAS NO FIX FOR IT ONLY
> STATED THEY NOTED THE FILE IN CASE IT FAILS.
> UNACCEPATABLE FOR A 55,000. PLEASE LOOK INTO
> THIS.

### n.   2015 GMC Yukon Denali

229.   On the NHTSA website, there are at least 292 consumer complaints for "2015 GMC Yukon Denali." As one example, on June 14, 2015, the following incident was reported:

> VERY CONCERNED ABOUT MY 2015 YUKON XLT. THE
> VEHICLE'S GEAR SHIFTED TO A NEUTRAL OF VERY LOW
> GEAR (NOT VERY SURE) AS I WAS DRIVING DOWN A
> LONG HILL NEAR BIRMINGHAM, AL. IT FELT LIKE IT
> WENT TO FIRST GEAR, BUT AT THE SAME TIME IT DID
> NOT SLOW THE VEHICLE DOWN, ALMOST FELT LIKE
> THE GEAR WAS GRINDING. THE TRUCK DID NOT CATCH
> BACK INTO NORMAL GEAR UNTIL THE VEHICLE
> LEVELED BACK AT THE BOTTOM OF THE HILL. (IT WAS
> EXTREMELY SCARY AND WORRISOME EVER SINCE
> THEN, THE TRANSMISSION WILL NOT SHIFT SMOOTHLY.

230.   Another incident involving a 2015 GMC Yukon Denali was reported on June 29, 2016:

> I AM WRITING TO NOTIFY YOU ABOUT A PROBLEM
> WITH THE TRANSMISSION IN 2015 GMC YUKON XL.
>
> GM IS AWARE OF A PROBLEM. THEY ISSUED AN
> INTERNAL NOTICE TO DEALERS IN FEBRUARY 2016.

78

HOWEVER, THEY HAVE NOT NOTIFIED TO OWNERS IN THE FORM OF A RECALL.

ON SEVERAL OCCASIONS, MY VEHICLE JUMPED FORWARD, WHILE DRIVING IN THE CITY, WHEN IT WAS STOPPED, IN DRIVE, WITH BRAKE ENGAGED. I REPORTED TRANSMISSION PROBLEMS TO MY LOCAL DEALER BUT THEY REPEATEDLY IGNORED MY CONCERNS. THEY KEPT GIVING EXCUSES THAT DIDN'T MAKE SENSE. I FINALLY PRESSED ON, REFUSED TO TAKE MY VEHICLE BACK AND REPORTED THE PROBLEM TO SEVERAL EXECUTIVES. THE PROBLEM WAS FINALLY DIAGNOSED UNDER DIFFERENT CONDITIONS AS STATED IN THE FIRST INTERNAL DOCUMENT IN MARCH 2016. THERE WAS A PROBLEM WITH THE TRANSMISSION. THEY FINALLY REPLACED THE TRANSMISSION FOR "ONE THAT DIDN'T HAVE A PROBLEM".

GM ADMITTED THERE ARE PROBLEMS WITH TRANSMISSIONS AND THE PROBLEM HAS BEEN CORRECTED IN NEWER VEHICLES. THEY HAVE YET TO ISSUE A NOTICE TO CURRENT OWNERS THAT THEIR VEHICLES ARE AT RISK.

I OWNED A 2015 GMC YUKON XL BUT CHOSE TO SELL IT OVER SAFETY CONCERNS AND LACK OF APPROPRIATE RESPONSE FROM GM CORPORATE. WITH 2 YOUNG CHILDREN, I SPEND A LOT OF TIME AROUND SCHOOLS (LIKE MOST OWNERS OF LARGE GM VEHICLES). I COULD HAVE INJURED OR KILLED SOMEONE. I FEEL IT IS MY OBLIGATION TO BRING THIS SITUATION TO YOUR ATTENTION. IF YOU INTERVENE, YOU CAN HELP TO AVOID ANY INJURIES IN THE FUTURE. IT IS CLEAR THAT GM WILL NOT VOLUNTARILY PROTECT THE PUBLIC.

231.    Another incident involving a 2015 GMC Yukon Denali was reported on July 19, 2016:

OUR VEHICLE HAS A SIGNIFICANT VIBRATION IN V4 MODE WHEN TRAVELING BETWEEN 45-65 MPH AND ABOVE. THE VIBRATION IS ALSO ACCOMPANIED BY INCREASED CABIN PRESSURE. THESE ISSUES ARE CAUSING HEADACHES, NAUSEA, DIZZINESS, AND ARE FURTHER EXACERBATING MY WIFE'S MULTIPLE SCLEROSIS. WE ALSO HAVE A POPPING SOUND COMING

FROM THE REAR OF THE VEHICLE'S SUSPENSION WHEN
TURNING THAT MAKES US FEEL UNSAFE. THE
VIBRATION STARTED RIGHT AFTER WE TOOK
DELIVERY OF THE CAR AND HAS ONLY GOTTEN WORSE.
WE BOUGHT THE CAR IN APRIL 2015 AND THE ISSUE
CONTINUES UNFIXED TO THIS DAY. THE POPPING NOISE
STARTED ABOUT 3-4 WEEKS AGO AND IT SOUNDS LIKE
A SUSPENSION COMPONENT. OUR AC RECIRCULATING
FEATURE ALSO DOES NOT WORK AND IT ALLOWS
HARMFUL EXHAUST SMOKE IN.

232.    Another incident involving a 2015 GMC Yukon Denali was reported on August 1,

2016:

WHEN APPROACHING A TOLL BOOTH ON THE MASS
TURNPIKE,WITH SEVERAL LANES MERGING,

WITH THE VEHICLE ALMOST STOPPED,IT DOWNSHIFTED
TO 1ST GEAR AND IN THE PROCESS

LURCHED FORWARD EXTREMELY VIOLENTLY TO THE
POINT I ALMOST CRASHED INTO THE CAR

MERGING IN FRONT OF ME-PROBABLY STOPPED SHORT
BY SIX INCHES OR LESS !!!

233.    Another incident involving a 2015 GMC Yukon Denali was reported on August 30,

2016:

TRANSMISSION HAS BEEN CLUNKY AND JERKY FROM
FROM PURCHASE. THE VEHICLE VIBRATES BETWEEN 30
- 35 MILES PER HOUR WHEN SHIFTING. THE VEHICLE
LURCHES FORWARD WHEN ACCELERATING AS IF IT
HAS DIFFICULTY DOWN-SHIFTING. THE PROBLEM IS
PRESENT FROM SIMPLY BACKING UP OUT OF THE
DRIVEWAY, MODEST SPEEDS ON CITY STREETS, OR ON
THE HIGHWAY. WHEN BROUGHT BACK TO THE DEALER,
THEY CLAIMED IT WAS A SOFTWARE ISSUE AND
"REFRESHED" THE SOFTWARE. THE PROBLEM HAS NOT
GONE AWAY AND DID NOT IMPROVE BY THIS
SOFTWARE CORRECTION. MY INTERNET RESEARCH
INDICATES THAT THIS IS A COMMON PROBLEM WITH
THE NEW 8-SPEED TRANSMISSION FOR THE 2015 YUKON
DENALI AND CADILLAC ESCALADE.

234.     Another incident involving a 2015 GMC Yukon Denali was reported on September 18, 2018:

> VEHICLE CLUNKS OR HARD SHIFT WHILE SHIFTING
> VEHICLE FROM PARK TO DRIVE, OR PARK TO REVERSE.
> HAPPENS EVERY MORNING OR WHILE TRANSMISSION
> HAS COOLED DOWN. DEALER INDICATES THERE'S NO
> FIX FOR THIS CONDITION, NOT EVEN A UPDATE TO
> TRANSMISSION SOFTWARE.

### o.     2016 GMC Yukon Denali

235.     On the NHTSA website, there are at least 73 consumer complaints for "2016 GMC Yukon Denali." As one example, on January 5, 2016, the following incident was reported:

> WHEN THE VEHICLE REACHES 40-60 MILES PER HOUR A
> VIBRATION OCCURS... OFTEN SOUNDS LIKE A WINDOW
> IS DOWN AND CAN CAUSE NAUSEA AND HEADACHE...

236.     Another incident involving a 2016 GMC Yukon Denali was reported on May 25, 2016:

> THE VEHICLE'S TRANSMISSION UNEXPECTEDLY SLIPS
> OUT OF GEAR BETWEEN 20 AND 35 MPH. WHEN THIS
> OCCURS, PRESSING THE ACCELERATOR MERELY REVS
> THE ENGINE, WITHOUT FORWARD MOTION. THIS
> OCCURRED 4 TIMES IN THE FIRST 600 MILES OF
> OPERATION. WITHOUT POWER, I CAN'T NAVIGATE OUT
> OF A DANGEROUS SITUATION.

237.     Another incident involving a 2016 GMC Yukon Denali was reported on June 2, 2016:

> VEHICLE HAS VIBRATION & NOISE WIHEN IN 4
> CYLINDER MODE OF OPERATION. GIVES HEADACHE ON
> LONG DRIVES. GM SAYS THAT THE VEHICLE IS
> OPERATING AS DESIGNED. MOST AGRIVATING.

238.     Another incident involving a 2016 GMC Yukon Denali was reported on July 6, 2016:

MY 2016 YUKON DENALI HAS A VIBRATION PROBLEM, WHICH I BELIEVE IS CAUSED BY THE MAGNETIC RIDE CONTROL. THE VIBRATION DOES NOT SPEED UP, NOR SLOW DOWN, DEPENDING ON SPEED. IT IS, HOWEVER, MORE NOTICEABLE WHEN THERE IS ANY ROAD IMPERFECTION.

THE GMC SERVICE DEPT. HAS BALANCED AND ROTATED TIRES, EVEN SENT IT TO TWO OTHER BUSINESSES TO TRY AND FIX -- ALIGNMENT, ETC. VIBRATION CONTINUES. I'VE HAD PASSENGERS WHO ASK "WHY DOES YOUR CAR HAVE THE SHIVERS?" GM DEALER DID GET AHOLD OF A GMC TECHNICIAN WHO FLEW IN, AND DROVE THE CAR AND SAID -- YES IT HAS A VIBRATION, BUT IT IS IN ACCEPTABLE PARAMETERS.

MY DEALER HAS PROVIDED ME 3 DIFFERENT RENTAL CARS WHILE WORKING TO TRY AND FIX THE "SHIVERS" ... ALL THREE WERE FAIRLY NEW, SMALL BUICKS, AND ALL 3 RODE BETTER THAN THIS NEW $75,000 DENALI.

I LOVE THE VEHICLE, HATE THE VIBRATION. GMC ITSELF HAS NOW TOLD ME -- YOUR CASE IS CLOSED! THE VIBRATION IS WITHIN ACCEPTABLE LIMITS.

THE DEALER HAS LET ME DRIVE TWO OTHER YUKON DENALI'S ... BOTH HAVE SIMILAR VIBRATIONS... JUST NOT AS BAD AS THIS VEHICLE.

VIBRATION IS NOTICEABLE AT 25 MPH, AS WELL AS AT 80 MPH; ALTHOUGH IT IS MORE NOTICEABLE ON ROUGHER ROADS.

I AM HAPPY TO SHARE THE REPORTS FROM MY LOCAL GM DEALER, WHO COMPLETELY AGREES THAT THE CAR SHIMMIES. WE TRIED THE GMC BUYBACK PROGRAM, AND I WAS TOLD BY GMC THAT PROGRAM IS NOT AVAILABLE TO ME, EVEN THOUGH I TOOK THE CAR BACK TO THE DEALER WHEN I HAD LESS THAN 100 MILES ON IT. AND HAVE BEEN TAKING IT BACK REGULARLY SINCE.

239.    Another incident involving a 2016 GMC Yukon Denali was reported on October 27, 2016:

SINCE THE DAY I PURCHASED THIS 2016 GMC YUKON XL
DENALI THERE HAS BEEN A VIBRATION IN WHAT I
THINK IS THE PASSENGER REAR END. I'VE TAKEN IT IN 3
TIMES AND EACH TIME THE DEALER AND THE GM
REPRESENTATIVE SAY IT IS "WITHIN SPEC." THIS
PROBLEM HAS PERSISTED. THE VEHICLE IS NOW
ALMOST UN-DRIVABLE DUE TO THE SHAKING. IT
AFFECTS THE STEERING WHEEL AT ALL SPEEDS. THIS
HAPPENS AT ALL SPEEDS ON ALL TERRAINS. THIS
HAPPENS WHEN THE VEHICLE IS COLD AS WELL AS
WARM/HOT. THE VEHICLE WILL SOMETIMES JERK TO
THE LEFT OR RIGHT WHEN THE SHAKING GETS REAL
BAD. THIS VEHICLE IS BECOMING DANGEROUS TO
DRIVE BUT I HAVE TO USE IT. I AM NOT THE ONLY ONE
WITH THIS ISSUE AND WOULD APPRECIATE SOME HELP.

### p.      2017 GMC Yukon Denali

240.     On the NHTSA website, there are at least 7 consumer complaints for "2017 Yukon

Denali." As one example, on September 22, 2018, the following incident was reported:

SHUDDER UNDER LIGHT, CONSTANT ACCELERATION AT
35MPH TO 55MPH, RPM UNDER 1,500. UPHILL GRADE IT
IS ACCENTUATED. SHUDDER OCCURS FOR 1 SECOND
ACROSS WHOLE VEHICLE, REOCCURS EVERY FEW
SECONDS AT A CONSTANT INTERVAL. SEEMS TO BE
SAME ISSUE WITH ALL 8L90 TRANSMISSIONS FROM
GM/CHEVY/CADI.

### q.      2017 GMC Canyon

241.     On the NHTSA website, there are at least 15 consumer complaints for "2017 GMC

Canyon." As one example, on February 5, 2018, the following incident was reported:

THE GMC 2017 CANYON VIBRATES AT HIGHWAY SPEED
60MPH TO 70MPH. THE 2ND DAY AFTER I BOUGHT IT
TOOK IT ON LONG TRIP FOUND IT HAD VIBRATION
PROBLEMS. AFTER TAKING IT TO THE DEALERSHIP FOR
TIRE BALANCE TWICE REPLACED FRONT WHEEL
BEARING THEN TRANSMISSION FLUSH. THEN AFTER
TRANSMISSION FLUSH HAD VIBRATION BETWEEN 40-45
THEY SAID IT WAS NORMAL THAT THERE WAS
NOTHING ELSE THEY COULD DO. DUE TO VIBRATIONS
OVER TIME THIS CONCERNS ME. FOR BEING STRANDED

OR WORSE CAUSING AN ACCIDENT FROM SOMETHING
COMING LOOSE. I`VE ALREADY HAD TO TIGHTEN UP
MY SPARE TIRE. I BOUGHT THIS PICKUP FOR LONG
TRIPS SINCE I`VE RETIRED. LIKE THE ONE MY WIFE AND
I ARE GOING ON IN JUNE OF THIS YEAR. I ALSO FEEL IF
THERE GOING TO SELL CRAP LIKE THIS THEY NEED TO
PUT THE VIBRATION ISSUES ON THE ACCESSORY `LIST
SO BUYERS WILL HAVE THE OPTION WHETHER TO BUY
OR NOT. I WOULD HAVE NOT BOUGHT A $40,000.00
VIBRATOR!!

242.    Another incident involving a 2017 GMC Canyon was reported on August 1, 2018:

TRANSMISSION BEGAN SHIFTING HARD. BEFORE LONG
WHOLE TRUCK RATTLED WHEN SHIFTING. ALMOST A
GRINDING SOUND. CHEVY DIAGNOSED TORQUE
CONVERTER HAS GONE BAD. BACK ORDERED FOR 2
WEEKS.

243.    Another incident involving a 2017 GMC Canyon was reported on December 31,

2018:

TORQUE CONVERTER FAILS AT 12000 MILES FOR MANY.
THERE IS A GMC NOTICE OUT SINCE 2016. MINE FAILED
AT 16000 MILES AND THE ONE THEY REPLACED WILL
LIKELY FAIL AGAIN IN ANOTHER 16K MILES. THIS IS
BAD. I NOTICED IT WHEN I PRESSED ON THE
ACCELERATOR AND AS I INCREASED SPEED UP TO 45
MPH. IT RATTLED AND ROCKED BADLY. THE GMC
REPAIRMAN SAID, "YEAP.....EVER SINCE 2016 ALL THESE
DAMN TORQUE CONVERTERS HAVE BEEN FAILING IN
THE CANYONS AND COLORADOS BECAUSE GM AND
CHEVY CHANGED THE SIZE AND STRENGTH OF THE
METAL USED IN ORDER TO REDUCE THE WEIGHT OF
TRHE VEHICLE. WE WILL REPLACE IT, BUT I CAN
ASSURE YOU IT WILL FAIL AGAIN AND YOU'LL HAVE TO
BRING IT BACK TO USE FOR CHANGE OUT AGAIN."
WOW....WHAT A BUNCH OF CRAP.

### r.    **2018 GMC Canyon**

244.    On the NHTSA website, there are at least 5 consumer complaints for "2018 GMC

Canyon." As one example, on August 28, 2018, the following incident was reported:

TRANSMISSION JERKS FROM 4TH TO 5TH. SOMETIMES
FEELS LIKE SOMEONE HIT YOU IN THE REAR ENDED.

245.    Another incident involving a 2018 GMC Canyon was reported on September 7,
2018:

TRANSMISSION CLUNKS FEELS LIKE YOUR HIT IN THE
REAR END. I THOUGHT I WAS REAR ENDED 3 TIMES SO
FAR. MY TRANSMISSION SURGES FORWARD FROM 4TH
TO 5TH GEAR. VERY DANGEROUS TO WEAR I DON'T
WANT TO DRIVE THE TRUCK.

246.    Another incident involving a 2018 GMC Canyon was reported on September 7,
2018:

THE AUTOMATIC TRANSMISSION SHIFTS
AGGRESSIVELY THE FIRST GEARS FROM A COLD
STARTED ENGINE AFTER ENGAGING FROM PARK TO
DRIVE. SLUGGISH SHIFTING AND ACCELERATION.

247.    Another incident involving a 2018 GMC Canyon was reported on December 14,
2018:

RUMBLING OF TRANSMISSION. CLUCKY START. GM
DEALER ACKNOWLEDGES THE PROBLEM AND HAS
TRIED TO REPAIR VEHICLE. GM SAYS AT THIS TIME THE
TRUCK 8 SPEED TRANSMISSIONS ARE NOT FIXABLE

3.    ***Consumer Complaints on Internet Forums Demonstrate That GM Was
Aware of the Transmission Defect***

248.    Similarly, complaints posted by consumers in internet forums demonstrate that the
defect is widespread and dangerous and that it can manifest without warning and/or suitable repair.
The complaints also indicate GM's awareness of the problems with the transmission and how
potentially dangerous the defect is for consumers. The following are some safety complaints
specifically relating to GM's eight-speed transmissions (spelling and grammar mistakes remain as
found in the original) (gm-trucks.com (May 7, 2019), Edmunds.com (May 7, 2019),
http://www.edmunds.com/; Cars.com (May 7, 2019), http://cars.com/; CarComplaints.com (May

7, 2019), http://www.carcomplaints.com/; http://gm-trucks.com (May 7, 2019), and http://cadillacforums.com (May 7, 2019)):

### a. Complaints on Edmunds.com

249. On Edmunds.com, a consumer of the 2015 Cadillac Escalade wrote on September 29, 2016:

> We have owned our vehicle since August 2015. We have had problems since the first day. Bad airbags, steering wheel had to be replaced 3 times, steering column replaced, torque converter replaced, front camera replaced. The MAIN issue is still not fixed after many many many trips to Service. There is a rough idle at any stop. The engine idle is so rough that the RPM's bar is moving up and down while the car is stopped. At times it feels like the car is going to shut off. Cadillac is not accepting responsibility and is saying this is NORMAL. So...if you like a rough idle in a $100,000 Luxury vehicle go ahead and buy this SUV. Otherwise, I would suggest you go down the road and find a different luxury vehicle.

250. On Edmunds.com, a consumer of the 2016 Cadillac Escalade wrote on July 22, 2016:

> This is our third Escalade to own. I couldn't be more disappointed in the quality of the car this time. They really cut corners in the interior and it shows from parts coming unglued to the interior leather peeling. On the outside of the car the Crome trim on the door popped off and all four doors trim work between the doors had to be replaced. My car had less than 8k miles and they replaced the transmission. For a vehicle costing almost 100k very disappointed Cadillac. This will be our last.

251. On Edmunds.com, a consumer of the 2016 Cadillac Escalade ESV wrote on January 12, 2016:

> Having owned the 2007 ESV I thought long and hard about buying a new 2016. Keeping in context we have owned Lexus since 1990, total of five LS models over the years. Best single auto manufacturer in the world for quality, value, cost of ownership. Unless you need the size of the ESV for family, road travel, don't

buy one.  Your hard earned $80K+ needs to go elsewhere because
of the workmanship, quality issues.  It LOOKS awesome, rides
great, it is the fitment, vibration, flutter of plastic parts rubbing
against each other that will drive you crazy. The center CUE had a
vibration as if a wiring harness had been flopping around. The
sunroof decided just this morning that something up in there,
needed to be jostling around, and these things happen only when
they want to.  We have only owned her 3 weeks, she has 735 miles
on her.  We got her for the room, size to accommodate family.  If
LEXUS ever decides to make one similar in size, we are in.

Nothing in my review changes except that I will never own
another.  It is GM junk at the highest level.  Last May 22, 2016 we
finally got help from the BBB in Washington DC to help replace
the original 2016 we bought in Dec. 2015.  It took us 6 months to
get rid of that pile of junk, replaced it with another pile of junk.
Folks other than the dealer experience being so stealor and
supportive, I will never own another.  PERIOD.  From problems
with transmissionn shifting at times I cant understand, to the dye
color of the leather already wearing away.  Plastic parts look like
wood and yet vibrate into a frenzy at times.  Listen carefully, you
do what you want.  If you want to toss money into a pit loaded
with stress and problems, then buy this thing.  If you want to save
yourself the grief, buy Lexus or something else.   UPDATE:
JUNK it is OVERPRICED JUNK   Would love to sell it if you
know of anyone interested.  DO NOT BUY ANYTHING
CADILLAC

252.     On Edmunds.com, a consumer of the 2017 Cadillac Escalade wrote on September

25, 2017:

Transmission is horrible. I feel unsafe in this car. It jerks or lunges
on me at a stop or slow speed at least once a day. The dealership
has had my car 7 times and has not fixed it yet. I filed a lemon law
complaint.

253.     On Edmunds.com, a consumer of the 2016 Cadillac ATS wrote on August 21, 2016:

When I got the got a few months ago, I was more excited about the
electronics than the feel of the car.  A few weeks into driving I
discovered how erratic  the transmission shifting was--you can
actually feel the car going into gear and ,in some instances, the
engine downshifts, which I consider unsafe.  Even with disabling
the "stop engine" mode, you can feel the noticeable changes in

shifting.  It is an unsatisfactory ride and I have owned or leased
over 40 GM cars.

254.    On Edmunds.com, a consumer of the 2016 Cadillac CTS wrote on July 23, 2016:

Complex cue system, maybe need. Cd tutorial for visual learners,
engine designed to stop when brakes applied to stop. Explanation
of no spare tire!

Passenger door hard to close due to handles too far forward.
Transmission seems to shift hard at times, has refused to change
when accelerating hard into traffic

255.    On Edmunds.com, a consumer of the 2016 Chevrolet Corvette wrote on October

21, 2016:

Many owners of 2016 Chevrolet Corvettes (some 2015's) are
reporting on various internet sites IE: Corvette Forum. Stingray
Forum, that their new Corvettes, primarily base models with
automatic transmissions produce a 'WARBLE' type noise at
exactly 1500 RPM under light throttle load , as when going up a
slight grade. I am one of said owners. Go to these internet sites and
look up 'WARBLE' and even view the video / audio of the issue /
complaint. Currently I understand that owners are invoking the
lemon law process; GM 'supposedly' has taken back vehicle (s).
Basically there is no proven correction at this time. I too have
contacted GM and like many others, I was given a "case number".
It's been awhile; GM has been involved deeply; taken cars back in
exchange...under pretense of studying them. However; GM IS
REMAINING VERY QUIET about this serious issue. WHY ?
Dealing with this corporation; their possibly covert approach to
this serious matter will make GM owners uncomfortable...if they
care to listen. Meanwhile, my C7 Stingray, auto has had the
differential changed; a improvement is noted but the "WARBLE"
goes on.................. and on.....................!

256.    On Edmunds.com, a consumer of the 2016 Chevrolet Silverado 1500 wrote on May

18, 2016:

For 43K, and purchased brand spanking new, at 3k miles i should
not have vibration issues, hard downshifting, and terrible dealer
denial.  I am so fed up with the lack of quality, and attention to
detail.  All the bells and whistles don't mean a thing if the vehicle
shifts poorly, lunges when placed in gear, and makes terrible

noises when it downshifts.  The dealer was helpless (i kinda feel for the dealer, they are not the manufacturer. This is an engineering and quality issue).

I DO NOT recommend you waste your money on the 2016 chevy silverado crew, 5.3l.  Chevy CANNOT get the basic functionality of what a vehicle is supposed to be correct.  Don't buy into the look, or the commercials, these vehicles are nothing but polished poop.  purchasing this chevy truck was a major mistake and i hope you learn from my mistake, but at my cost.   God bless.

257.    On Edmunds.com, another consumer of the 2016 Chevrolet Silverado 1500 wrote on June 5, 2016:

Vibration problems started within two weeks of owning the truck. The dealer knows there are vibration problems but there is not a fix. I was told that's the way they are, deal with it. The transmission is sluggish and slow to keep up with the driving situations. The electronics crash frequently. The dealership said it was due to subpar and cheap Chinese made memory chips and control boards. Please do not waist your money on this truck. I traded the truck for a Dodge Ram after only 2200 mile. Worst of all the dealership fully understands the problems but will not mention them during the sales process. They will gladly take your money and give you a piece of junk in return.

258.    On Edmunds.com, another consumer of the 2016 Chevrolet Silverado 1500 wrote on November 23, 2016:

Have owned two Chevy Vans last 18 years never an issue.  Wanted a truck to pull my boat.  Chose to stay with Chevy given the track record. Truck shifts hard in the low gears.  Cold starting the truck jerks into gear and when down shifting it is harder than it should be.  Should not feel it down shift.  Took it to the dealer and their mechanic got it to down shift hard in parking lot but he said thinks it will smooth out over time.  Otherwise I love the truck, comfortable, smooth ride on both highway and around town. Gas mileage is

259.    On Edmunds.com, another consumer of the 2016 Chevrolet Silverado 1500 wrote on December 13, 2016:

2016 truck has 2400 miles on it. Is the roughest ride I have ever
had in a chevy pickup. Cant travel it because wife feels the truck is
going to break down due to the vibration. Had it in the shop 7
times for shimmy(vibration) at medium and highway speeds. Shop
changed tires , balanced several times. Nothing they did helped.
Dealer told me it was the best they could do. I had several friends
drive it and they came to the same conclusion. We all agreed to
never purchase a Silverado and pass that statement on to others.

260.    On Edmunds.com, a consumer of the 2016 GMC Sierra 1500 wrote on June 9,

2016:

I have had this truck into the dealer twice and I have 6500 miles on
the truck. They have done a reprogramming both times and it is
fine for a week or two and then starts shifting hard again.   I
purchased the truck with the larger engine so that I can tow my 22
foot Airstream. When the AS is in tow it is great but not when you
have to daily drive. This should not happen for the money paid for
the truck.

261.    On Edmunds.com, a consumer of the 2016 GMC Sierra 1500 wrote on December

28, 2016:

I've owned my sierra for roughly 8 months now and am very happy
with the truck overall. Classy interior, quiet and comfortable ride,
strong acceleration and great mpg's (for a truck). One complaint
that I do have is with the transmission. From time to time, the
tranny will seemingly slip. Other times, shifting is very rough.
These issues aren't consistent, but when they do occur, they seem
to occur when shifting from 1st to 2nd gear. These issues seem to
be common and I've read that they are less about the transmission
itself and more about the programming that determines shift points
and other transmission related operations. Apparently these things
have been programmed for max gas mileage and the result is less
than desirable shifting. This is a tough pill to swallow considering I
paid 50,000+ for the truck. I'd gladly give up 1mpg for a
transmission that doesn't act like its about to fall out of the truck.

262.    On Edmunds.com, a consumer of the 2015 GMC Yukon Denali wrote on January

18, 2015:

Almost all 2015 Yukons/Denalis with AWD are having severe
problems with the transmission.

Basically, if you used the AUTO setting on the drive selector the trans will lock into 4WD and never come out. GM has no fix for this problem yet. Driving the vehicle like this is unsafe and makes a horrible racket. It might also damage the vehicle.

Avoid any Yukon or Tahoe until the fix is found.

You can google this problem to read more about it

263.    On Edmunds.com, another consumer of the 2015 GMC Yukon Denali wrote on August 9, 2016:

Bought the 2015 Denali w/ all the bells and whistles in October 2014. At that time, the new body style was very hard to find, because it was so new. I have owned for over 2 years & have 49,000 miles on it. Have major problems when going 65 to 70-75 mph on freeway with the transmission-- while driving and increasing the speed on highway, it feels like the car "jerks" as it accelerates. Its horrible! Have taken to dealership 3X's complaining about it & they look @ me like I am crazy. I am getting ready to trade it in due to high mileage...other complaint is the usb ports--always tearing up my iphone cords. Miserable! When you plug your phone in into the usb, it automatically connects phone to vehicle...if you aren't paying attention, end up missing texts, phone calls, directions. I do love that you can use OnStar w/ directions, & remote start from your iphone...great little perk. Love the 3rd row seats and cargo...haul kids & dogs

264.    On Edmunds.com, a consumer of the 2016 GMC Yukon Denali wrote on September 26, 2016:

I am so disappointed with my purchase of the 2016 Yukon XL Denali. The issues with this vehicle in just 1 month are endless. The main one being the brakes are sooo bad. I got in an accident after 1 week, because the brakes on the car just dont work. The quality of the seats are so poor, you can feel the springs in the seats. The transmission keeps slipping. I hate this vehicle. DO NOT BUY.

### b.    Complaints on Cars.com

265.    On Cars.com, a consumer of the 2016 Cadillac ATS wrote a review titled "One week after I bought my new ATS 2016" on September 8, 2016:

> The transmission control module was faulty, I purchased the vehicle for piece of mind now I worry about more problems arising.So disappointed in the quality

266.    On Cars.com, a consumer of the 2015 Chevrolet Corvette wrote a review titled "Automatic sucks" on July 2, 2017:

> Happy to get rid of car!! Car stumbled like had bad gas. 93 octane same problem. CHEVROLET would not return my call

267.    On Cars.com, a consumer of the 2016 Chevrolet Camaro wrote a review titled "Rear diff and trans issues TSB" on September 28, 2017:

> I have less than 6k miles on my Camaro 2ss and it has had the transmission flushed 3 times, the rear diff flushed 9 times and the shudder is back. There is a TSB for this issue and for some reason Chevy can't get it worked out. Other then that I love the car! It is a beast it has good seating, explosive power with 455 hp 455 tq, the interior is much better than my 2010 2ss. Overall I would buy this car again it is a great handling car, with more tech features than I need.

268.    On Cars.com, another consumer of the 2016 Chevrolet Camaro wrote on August 16, 2018:

> THE CAR LOOKS FANTASTIC INSIDE AND OUT. INTERIOR IN THE 2LT/2SS IS AWESOME. THE V6 IS FASTER THAN MOST PEOPLE THINK IT ALSO HAS GREAT HANDELING. HOWEVER IF YOU ARE A CAR ENTHUSIAST THIS PROBABLY ISNT THE CAR FOR YOU. THE STEERING IS NUMB, SEATS ARE MORE FOR COMFORT RATHER THAN SUPPORT, 8 SPEED AUTO CAN BE A BIT DIMWITTED AND SLOW, AND THE DRIVE MODE SALECTOR CHANGES ABSOLUTLY NOTHING EXCEPT THE STEERING WEIGHT (BUT ITS STILL NOT HEAVY ENOUGH) AS A STYLISH COMFORTABLE COUPE IT IS FANTASTIC, BUT AS A SPORTS CAR ITS A BIT TOO NUMB AND DIALED DOWN. I ALSO HAD ISSUES WITH BUILD QUALITY. THE INTERIOR HAD SEVERAL RATTLES MAKING IT ALMOST IMPOSSIBLE TO DRIVE WITHOUT MUSIC ON. THE EXTERIOR ALSO HAD A FEW PANNEL GAPS. ALSO IF YOU WANT SOMETHING UNIQUE THIS IS NOT THE CAR FOR YOU!

269.     On Cars.com, another consumer of the 2016 Chevrolet Camaro wrote on March 22, 2019:

> I love the style inside and out, but only owned a month and had problem with 8 speed automatic. It started slipping in and out of gear and felt like running over a wash board. The dealer did a transmission flush and added special fluid and told to drive 200 miles to see if fixes. If not bring back. I understand chevy has a problem with this tranny and trying to correct short of a new transmission. What a bad situation for the owner and feeling of realiabilty when driving.

270.     On Cars.com, a consumer of the 2015 Chevrolet Silverado 1500 wrote on August 14, 2017:

> There seemed to be something wrong with this truck from the time we bought it till we got rid of it. It had really funny sounds, it wouldn't go when we tried accelerating, it was almost like a putt putt truck. Was So Happy we traded it in on a New Ram!

271.     On Cars.com, another consumer of the 2015 Chevrolet Silverado 1500 wrote on November 24, 2017:

> we feel we decided wrong to select the dealer they do not check the vehicles.I do not trust anymore, this vehicle presents problem with the transmission...., think so it's a shame

272.     On Cars.com, another consumer of the 2015 Chevrolet Silverado 1500 wrote on January 31, 2018:

> 2015 Z71 standard cab 4x4. This is the worst shifting truck I ever owned it also had a 308 rear axle made for highway not towing. I bought a 2017 with same motor 5.3 but with a 342 rear axle, What a major difference! The 2015 also had Goodyear tires and major vibrations, The 2017 has Bridgestones and it rides and shifts awesome like a truck should, So if your looking for a New truck definitely check the difference on 308 vs 342. With the 308 it shifts and bangs and gets confused when to shift.... 342 imo is the only way to go!!

273.    On Cars.com, another consumer of the 2015 Chevrolet Silverado 1500 wrote on August 28, 2018:

> I but a brand new 2015 crew cab Silverado from the 2 months I
> have problems I never buy another one is my last one first all the
> lights in the dashboard at 25000 miles the transmission went out
> And now at 94000 miles my engine making all this noises is not a
> safe truck to drive I talk to couple of my friends they're having
> problems too '

274.    On Cars.com, a consumer of the 2016 Chevrolet Silverado 1500 wrote on December 16, 2017:

> Nice extirier and intirier but engine knock and problom with
> vibation when driveing don the road take it to dealer to be repair
> and thay said its normal

275.    On Cars.com, a consumer of the 2016 Chevrolet Silverado 1500 wrote on April 28, 2019:

> The transmission is shuttering and slamming into gear it's just over
> its 41,000 Chevy said they know that there is a problem they have
> tried to fix it at 980 dollar bill and it is still doing it. It doesn't
> matter shifting up or slowing down it feels like it's going to fall
> out. They won't stand behind the transmission, even though it a
> known problem.

276.    On Cars.com, a consumer of the 2015 GMC Sierra 1500 wrote on December 14, 2018:

> I got a lemon. Roof leaking, received damaged spare
> tire/equipment, transmission is slipping, heated seats failed
> already, the dealerships/service are awful. I will never buy another
> GMC ever. Not to mention, second model from top Denali... no
> heat to the backseat!!!

277.    On Cars.com, a consumer of the 2016 GMC Sierra 1500 wrote on October 1, 2017:

> 61000 for a old tractor like ride. They can't fix it. They tried. Don't
> think even manufacture knows the cure. Poor quality. Better drive

one at freeway speeds before buying cause they can't fix if it
shakes or vibrates

278.    On Cars.com, a consumer of the 2015 GMC Yukon wrote on January 17, 2019:

My 2015 Yukon Denali is 4 whl drive, the transmission when put
in reverse seems to have a second engagment a couple second after
putting in reverse which is troublesome. Anyone else have this
issue?

279.    On Cars.com, a consumer of the 2015 GMC Yukon wrote on February 7, 2019:

DO NOT BUY THIS VEHICLE NOTHING BUT TROUBLE
ONE THING AFTER ANOTHER $70,000 pcs of junk AIR
COND COMPRESSER FRONT REAR STRUTS
TRANSMISSION PARKING SENSOR ALL KINDS OF
RATTLES BUY SOMETHING ELSE YOU WILL BE
THANKFUL

280.    On Cars.com, a consumer of the 2017 GMC Canyon wrote on September 13, 2018:

Save your money and buy something else. The seriously flawed 8
speed transmission will leave shuddering and vibrating due to a
faulty torque convertor design. It feels like you are driving over
rumble strips. Worse yet, when you accelerate the transmission
bogs down and is a serious safety issue. GM is clueless. I
understand they may have a new design torque convertor but you
are put on a waiting list. Meanwhile, makes you wonder what all in
the transmission is being damaged as they will not pay for a loaner
vehicle until the parts come in, even under their own warranty. So
you simply drive the piece of junk and hope for the best.

281.    On Cars.com, another consumer of the 2017 GMC Canyon wrote on June 23, 2018:

This 2017 slt vehicle is a disappointment. Bought it new April 26
2017, today is June 22, 2018. I have 4500 miles on it. Had it in the
shop 2 times for a total of 43 days for transmission problems. It
would down shift very hard from 3 rd to first. Felt like something
was grabbing the rear rend. 1st visit the dealer had for 3 days and ,
after 'tweaking the software' , said the hard shifting was normal.
Second time I requested a ride along. That dealer employee
happened to have a 2018 canyon, which was good because he
could make a legitimate comparison. When the problem
demonstrated itself, he said ' whoa, mine does that but not THAT
bad'. Then the wait started. Service mgr had to discuss with GMC

95

big boys. They wanted to keep 'tweaking the software'. Then they wanted technician to 'tear it down' . Fortunately the tech said was stupid and the Gmc big boys finally authorized a new transmission. Then it took 14 days to 'find' a transmission and install. Total of 43 days. In January 2018 I started to experience a feeling/sound like going over rumble strips. I waited until it finally got so frequent and pronounced that when I took it in the dealership could not deny experiencing it. Or say 'that is normal'. I took it in June 11. It is now June 22. Decision is that it is the torque converter. But they haven't even started to replace it because there are no torque converters available. But, I should be glad to know that I am first on the list. Whoopee!! 55 days total in the shop for transmission and torque converter and counting. And this is assuming they will not find any other problems once they start. After this is resolved then they have to address the suspension. The ride has progressively gotten worse. It is like riding over cobblestones regardless of speed or road surface. This is already on my problem list at the dealership. Very much regret giving up my 2005 midsized foreign truck. I am making payments but cannot use my truck. I will say the service mgr did give me a compensation after my transmission saga. Soothes the pocketbook a little, But sure hasn't taken away the frustration, irritation, disappointment, aggravation we are experiencing. Don't know if I will every feel comfortable with this vehicle b [review cut off]

282.    On Cars.com, a consumer of the 2017 GMC Yukon XL wrote on February 5, 2019:

The 8-speed transmission is horrible and doesn't drive smoothly. I've never spent so much money on a car and been so unhappy with a car. We are in the process of trying to get it bought back...

### c.    Complaints on CarComplaints.com

283.    On CarComplaints.com, a consumer of the 2017 Chevrolet Silverado 1500 High Countrys V8 with and automatic transmission wrote on September 1, 2017:[10]

I found hundreds of complaints about a transmission slip, bump feeling when starting to drive or slowing to a stop with no solutions or suggestions. Took it in last week for the third time and after hearing the previous 2 times that it was a "programming issue" they told me it might be the drive shaft.

---

[10]    https://www.carcomplaints.com/Chevrolet/Silverado_1500/2017/transmission/surges_and_jerks.shtml (last accessed May 7, 2019).

When I went to pick it up at Chevy they told me the drive shaft
was fine and gave me the following bulletin (#PIT5161F).
Basically states that if you do not have a full or empty tank - the
shifting in fuel can cause these characteristics. So here I am
thinking that I have a $56,000 truck (high country 4x4) with no
rear a/c and now I have to deal with a feeling of getting rear ended
if I do not have a full tank of gas. Rear AC - my fault for not
noticing...but not sure how GM thinks this gas tank issue is
acceptable. Its a truck that weighs over 5,000 lbs and a couple
hundred pounds of gas "shifting" can make it feel like it has
transmission issues. Owned it about a year and has 15,000 miles on
it. Wish I could just return it at this point.

284.    Also on CarComplaints.com, consumers commenting on the 2015 Chevrolet
Corvette repeated their Transmission Defect issues, including the following:[11]

a) On May 1, 2015:

8 speed automatic transmission down shifts at a stop with such
force it feels as you have been hit from behind by another car
while coming to a stop. Transmission also will not always engage
properly and will over rev and slam into gear possibly causing an
accident. Transmission at times will disengage while going
forward then slam into gear with great force. I was told by a GM
insider that GM is aware some transmissions are defective and is
working on a kit to fix the fluid starvation problem internally but
has done nothing to inform owners of the potential dangers of
erratic shifting that it's causing while driving. This also causes the
transmission to over heat and to illuminate a warning lamp.

- Downers Grove, IL, USA

b) On February 27, 2016:

8-speed automatic transmission always shifts erratically when
starting out cold (lazy shift, slow shift, etc.) and occasionally does
not downshift when car comes to a stop, only to slam hard into 1st
when gas pedal is pressed to resume travel. Dealer says GM
claims this is "normal, " but no car I've ever owned behaves like this.
Appears to be fluid starvation internally. Any fix/replacement
would be costly for GM, so given their history w/faulty ignition
switches, not surprised they're trying to avoid it. Transmission is
definitely not normal and behavior is unpredictable + unacceptable

---

[11]    https://www.carcomplaints.com/Chevrolet/Corvette/2015/drivetrain/power_train.shtml, (last accessed May
7, 2019).

-- especially at this price. When car is moving & transmission is in drive and trying to lazily shift gears, you temporarily lose ability to apply power, which is both dangerous and unnerving. Clearly, this transmission was put into production w/inadequate testing & development. A recall is necessary to fix properly.

- Kansas City, MO, USA

c) On November 22, 2015:

Automatic 8 speed transmission had to be replaced at 2000 miles on the odometer due to hard shifts and shifting automatically to low gear at highway speeds nearly bringing the car to a stop in interstate traffic, now 700 miles and 4 months later the transmission is stuck in second gear and you cant drive fast enough to get out of the way of traffic. And I know of several other cars like it that have similar problems. This is a real safety problem and GM seems to ignore it, probably until someone gets hurt or killed.

- Lexington, KY, USA

d) The A8 automatic transmission in the 2015 Corvette is prone to occasional hard downshifts from 2nd to 1st gear when driving at slow speeds (less than 10 mph). Sometimes the downshifts are so violent that the car jerks forward several feet. The first time it happened I thought I had been rear ended by another car. The unpredictable behavior of the transmission is especially dangerous in proximity to pedestrians or other vehicles.

- Salado, TX, USA

e) On January 7, 2016:

Automatic A8 transmission has the following issues: 1) morning shift from reverse to drive severely delayed, bangs in eventually. 2) erratic shifting in normal traffic 3) the 2-1 downshift when coming to a stop results in severe bang, lurches forward and is very unsafe in a parking lot situation. Also in stop and go traffic, same lurching forward. Feels as if someone hit you from behind 4) torque converter lockup in 5th and 6th gear. Dealer tore apart the car to replace the stator, performed software update - neither solution worked.

-Murphy, TX, USA

f) On October 16, 2017:

I had my vehicle serviced at dan vaden Chevrolet in savannah, ga on 16 Oct 2017 at (12,200 miles). My main concern was a shudder and jerky motion the car starts demonstrating while in motion, accompanied by fluctuating engine rpms. After researching on the internet there are 1000's of issues with these torque converters and who knows what accidents these failures have caused. There should be a total recall on these transmissions. A service department technician test drove my vehicle and confirmed and documented my concerns and stated it was okay to drive ? I am scheduling another service at (13000 miles). A search of the internet will fill you full of facts on these failures. Problems with the torque converters with these high end vehicles are well on the way to become another Corvette issue of epidemic proportions. Please assist.

- Hinesville, GA, USA

g) On March 22, 2016:

2015 Corvette stingray Z51 - 8 speed automatic transmission torque converter. With only 7,500 miles on the car it started to run jerky and rpms would fluctuate for no reason (especially at highway speeds when fully warmed up). Often felt like driving on a washboard dirt road. After a cold start, there was a delay after shifting into drive. When it engaged after several seconds it would do so violently, lurching the car forward suddenly. Dealer diagnosed faulty torque converter as defective and a known problem with these transmissions. After less than 2,000 miles the symptoms returned and the dealer again replaced the torque converter. So now I'm on my 3rd defective tc. After 1,700 miles, symptoms returned again! dealer said that Chevrolet and GM have ordered a stop on replacing the tc's since no fix was available. GM advised to drain and flush tranny, refilling with mobil1 transmission fluid. This seemed to work (only for a little longer) but is worrisome because in the future service, a technician will likely refill with GM fluid, not mobil1. Especially if a second owner. Now at 16,100 miles the symptoms are returning! jerkiness, slamming into gear after a delay on cold starts. GM seems to have turned their back on stingray owners by kicking the can down the road beyond warrantee (with the mobil1 "band-aid fix"). on the forums there are so many owner complaining about this same issue. I am amazed that there is no official investigation resulting in a recall. This Z51 LT3 stingray was $75,000 otd! for this cost we should be able to expect a quality vehicle and a motor company that stands behind it! can somebody please help us with this serious and potentially dangerous problem?

- Wellington, FL, USA

285.    Also on CarComplaints.com, a consumer of the 2015 Chevrolet Silverado commented on November 1, 2015:[12]

> I've been researching hoping to find a solution to the 8 speed transmission in my 2015 Silverado LTZ Custom Sport Z71 with 6.2 l. It does the same as many others have described on here. The shifting is horrible, feels like its going to rip the drive line out at times. I've taken it back to the dealer at least 5-6 times, I've been told it needed to be reprogrammed, that it needs to get used to the way I drive, and poor gas. Finally the dealership replaced the transmission and this was great, my truck was driving and shifting like it should and then after a couple of months it went right back to doing the same thing, it even surges at times when you first put it in gear so you best have a good foot on the brake.
>
> I'm at a loss now, I don't know what to do. I got a price to trade it in but it was going to cost me a great deal more and I honestly don't see why I should have to spend more to get a vehicle that is mechanically sound when my truck only has 15,000 miles on it. I love my truck, the 6.2 has excellent power but what happens when my warranty runs out.
>
> I've watched and hoped someone would start a class action lawsuit against GM for knowingly selling vehicles with problems. Or have they fix the problem in the 2017's. I know some of the corvettes have the 6.2 motor do they have the 8 speed transmission also? If so do they have the same problems?
>
> As for the lemon law, I'm in Louisiana and honestly not sure if that would work here. I just know when you pay 56,000 dollars for a vehicle you expect to have zero trouble out of it.
>
> If anyone finds a solution please post it here for us all to see.
>
> - Lando S., Anacoco, LA, USA

286.    Also on CarComplaints.com, consumers of the 2017 Chevrolet Silverado

---

[12] https://www.carcomplaints.com/Chevrolet/Silverado_1500/2015/transmission/transmission_shifts_poorly.shtml (last accessed May 7, 2019).

commented on their Transmission Defect issues, including the following:[13]

a) On November 22, 2016:

My problem is like a lot of the other complaints that I've been reading. I purchased my 2017 LTZ Z71 with a 5.3 and 8 speed transmission in late 2016 and after driving it for a month or so I really started to notice surges and jerks mostly at low speeds and sometimes slowing down coming to a stop. The jerks sometimes feels like I got hit from behind. After several visits to the dealer and long discussions with service management, I was first told I had to learn my driving habits. Then I was told it is a characteristic of the transmission. I recently took it back and they replaced the transmission fluid and told me they were going to replace the torque converter early next year when the new design came out. So I guess have to just put up with it, I just don't know for how long.

- Rudy D., Corpus Christi, US

b) On January 3, 2018:

Purchased 2017 Silverado 5.3 w/8 speed auto on Dec 20 2017. At approx 535 miles, transmission began shifting hard at speed under 15 miles per hour, included a "clunk" similar to a universal joint going bad. Problem exists with both up shift and down shift. At 2066 miles truck started to surge as I slowed to stop. A heavy clunk and surge gave me the impression I was hit from behind. I stopped at selling dealer and service advisor assured me that this transmission had a "learning" curve that adjusted to my driving habits and i should drive for 10,000 miles to allow the system to "learn" my habits. Deciding that sounded like a great story I Googled for Silverado's with 8 speed transmission issues and found more than I cared to.

I have seen all the complaints and concerns but no solution from GM. I fear I have invested a bunch of money into a disaster. Having owned over 7 GM products over 57 years I am disappointed with this one.That said I'm heading back to dealer today.

Any GM service people monitoring this or anyone that has a definitive solution I'd appreciate a reply.

---

[13]     https://www.carcomplaints.com/Chevrolet/Silverado_1500/2017/transmission/surges_and_jerks.shtml (last accessed May 7, 2019).

- Gary L., Cumming, US

c) On February 4, 2018:

$62,000.00 truck including the new CORSA 3.5" exhaust and COLD AIR INDUCTIONS sealed cold air intake box. This truck shifts horribly throughout the 1-2 shift and especially the 2-3 shift. How can these 8 speed transmissions function this poorly. I had a 2012 AUDI Q7 S-LINE with over 110K miles on it. The 8 speed transmission worked flawlessly the entire time I owned it. Every single shift whether flooring it or accelerating as slowly as humanly possible, were seamless and exuded quality engineering and workmanship. How can this transmission shift as poorly as it does with only 4637 miles on my truck. GM big wigs need to start taking some pride and responsibility in their most profitable and best selling vehicle that they sell.

- 98supra6spd, YPSILANTI, Michigan, United States

287.    In another comments page on CarComplaints.com for the 2017 GMC Sierra, consumers stated: [14]

a) On April 3, 2017:

When going slow it will shift hard and clunks sometime worse then others when shifting from 1st to 2nd and other times it works right. I have had it to the dealer at least 3 times. 1st time they said it was too new and had to learn my driving habits. At about 3500 miles they did a adaptive relearn. The third time they found an update and did a relearn, no change. Now there is around 7500 miles on it and I was told there is nothing else they can do and this normal for this 8 speed transmission. At 58000 dollars it is ridiculous to think this is OK. They need to come up with a fix for this. I'm not the only one with this problem go on GMC trucks.com. There are 9 pages of complaints for this problem. I would be afraid to buy the new 2019 truck coming out, as they can't even get the current model right.

b) In January 2019:

January 4, 2019: I dropped my truck off at the dealership service department and informed the sales staff that I was having a significant engine/transmission related problem that I did not feel

---

[14]    https://www.carcomplaints.com/GMC/Sierra_1500/2017/transmission/hard_shift_in_and_out_of_first _gear.shtml (last accessed May 7, 2019).

comfortable driving the vehicle. I made an appointment and left the vehicle. It is current being troubleshot; the mechanic informed me that an ejector must be replaced and the transmission must be further analyzed to determine what is going on with the vehicle. I was informed that a loaner vehicle may be provided if they can not repair my truck in the near term. I am currently renting a car for getting to/from work. This problem was noticed on the first day of purchase but I was informed that it was normal, but the problem has gotten worse and more intense.

Update from Jan 9, 2019 I purchased the 2017 GMC Sierra, Crew Cab, SLT 1, truck from Sam Taylor Buick/GMC/Cadillac in Fort Walton Beach FL. I noticed a faint shifting problem immediately, but was told it was normal and it would go away eventually. The problem has become extremely noticeable and severe at times. I do not feel that the vehicle is reliable to drive outside my immediate commuting area until it is repaired by certified GMC mechanics. Sam Taylor Buick, GMC, Cadillac is now under new ownership and they are trying to resolve the mechanical issues with my vehicle. I will give the a fair opportunity to do right by their GM product. I will update this post as more information comes to light.

Update from Jan 14, 2019 Step One Buick GMC of Fort Walton Beach, FL has been working on my 2017 GMC Sierra 1500, 6.2 L truck for almost 1 week now. I rented a car during the first week and now waiting to get a loaner. The Service Department says its put back together but requires a road test; its now1:52 pm -- apparently the road test must be a length process. No calls yet. Why hasn't the State of Florida, Texas, and other Consumer Affairs agencies gotten involved with this GMC Sierra vehicle issue? (Rhetorical) The public always get lip service and NO ACTION but when it comes to enforcing product standards and laws to protect the public. These vehicles should be classified as lemons after Big GMC fails to correct the defects!

Update from Jan 15, 2019 Step One Automotive Group, aka Sam Taylor Buick Cadillac, returned my 2017 Sierra after 1 week of troubleshooting the check engine light, vibrating steering column, as well as the shuddering and knocking in low gears. The remedy was to replace an ejector, clean the trans pan, and replace the transmission fluid. I still feel the shifts during the transition through the lower gears, but its a bit smoother....no banging from the rear differential. The Service staff could have followed through with providing the loaner vehicle once I returned my rental car. The good part is that I was not charged for the repairs. The Service Department staff was on point and the mechanic work acceptable, however, I do not believe the issues have been permanently

resolved. Time will tell. If there is a recurrence of the same issues, I will likely trade the GMC Sierra for another brand that is more reliable.

### d.    Complaints on gmauthority.com

288.    Similar comments have been posted in threads on gmauthority.com, including the following comments discussing the 2016 GMC Sierra:[15]   One commenter began the thread on February 1, 2016 as follows:

> I took delivery of a 2016 Sierra Denali (5.3 V8, 8-Spd, 3.42) in November and had to take it into the dealer a week later for a transmission issue (coming to a stop the truck would shudder as though the transmission was shifting hard into first gear or as though the engine was about to stall). 3 weeks after taking it into the shop, GMC engineers determined that there was a torque converter problem that was staying engaged too long causing the engine to nearly stalling out when coming to a stop. They okay'd replacing the entire transmission for a new one. I finally got the truck back (a MONTH after first taking it into the shop – and yes, the truck spent 30 days of its first 39 days of ownership in the hands of my dealer) and figured that would be the last of my problems. Since then, I've noticed that when yielding – or in traffic/congestion – when I'm slowing down almost to a stop (around 5 mph or lower), then stepping on the accelerator, there will be a long (1 to 2 seconds) delay between me stepping on the accelerator to move and the truck shifting into first and beginning to accelerate. I took it to the dealer again, and they claimed the delay and even "hard" little shifts are normal for this transmission because it is "adaptive" and constantly learning… What? I at first bought it (they are the pros), but I'm beginning to hate not having the confidence of pulling out of a driveway, side street, etc. and being able to immediately get the power and acceleration I need to get out of the way (or better yet to get on my way). Is anyone else here having similar issues with their new GM 8-spd?

> (a)  A consumer responded on this thread on February 11, 2016:

> First post. Hate to see you are having problems. Thought I might be the only one after hearing what service department is telling me. I just bought a 2016 Silverado LTZ with an eight speed and it shifts horrible. Love the truck but not fun to drive while taking off

---

[15]     http://gmauthority.com/blog/topic/2016-sierra-8-spd-issue/ (last accessed May 7, 2019).

and stopping. Truck has 1400 miles on it because according to service department I have to get my truck to learn my driving habits. I am either a bad driver or have a truck with a learning disability. When truck sits over night or going home from work it always jerks a couple times taking off. Never fails. When I first bought, every time I would stop it would do something that felt like it was still shifting down when I should be stopped and actually feel like a double stop or surge forward. May sound crazy but really is the only way I can explain. There has been a couple times when I pulled into a parking spot to where it felt like I hit a curb because of the way it would stop. I have never experienced anything like this with any vehicle I have ever had. Seems like the computer is not in sync with the transmission at all. I will make turns and vehicle don't seem to downshift when it should. I truly feel like I am driving a manual shift truck without using clutch. Love the truck and hope enough people speak up so this problem can be fixed. According to my service department vehicle runs as it should. If this is the case I wish I would have kept my perfect running 2013 Ford F-150 4×4.

(b)  A consumer responded on this thread on November 15, 2016:

I purchased a 2015 Sierra SLT with 6.2l and 8 Speed in August 2015 and when it is cold meaning its been setting a day or so, you will almost always get a slip in the transmission causing a several second delay. I had went to a show for my company in Atlanta GA and almost got hit because, I backed out onto the street and when I put it in forward it would not go for several seconds because it just revs up the stairs shudders going forward. I have taken it back to my dealer twice and they cannot recreate the problem so, they have done nothing. I ran into a man at my dealership who was in the process of describing the exact same problem and gave him my business card to see if they fixed his issue. The dealership told him the same thing and he called me yesterday to let me know he and his wife got hit in the Highland NC because, he backed out and could not go forward just like I do weekly in mine. I now have a couple phone videos of mine doing it to show my dealer again but, I am wondering what to do as they have not done anything yet.

(c)  A consumer responded on this thread on December 5, 2016:

I just bought a 2017 silverado ltz 6.2/8-speed and I'm experiencing similar issues! If I'm driving 35-55mph every once in a while I get a shudder in the wheel for a brief 1-3sec on and off while I'm at these speeds it's so frustrating!! The truck has 500 miles on it and

my old 1995 silverado with 185k drove with no shudder or vibration issues.

(d)  A consumer responded on this thread on December 5, 2016:

I purchased a 2017 GMC Sierra 5.3 with the 8 speed transmission two weeks ago. (This is my 5th GMC truck) no previous problems.

I now have 1000 miles on this truck.

I noticed the truck shudders and seems to have a hesitation between gears, especially at low end. I went in on Dec 2nd 2016 and talked with the dealer who said it takes a while for the transmission to learn my driving habits. What? . It also clunks when taking off. Was told the clunk is normal. This morning Dec 5th i warmed the truck up for ten minutes put it in reverse and the truck would not move. just revved up. 10 seconds later it slowly starts to back up onto the street. I put it in drive and it still won't go ,just reeves up for another 10 seconds before it finally jumps into gear. Made an appointment to bring it back to the dealer.

This can not be normal for a commercial grade pickup.

(e)  A consumer responded on this thread on December 19, 2016:

I bought it brand new Dec 2015 (2015 High Country 4×4, 6.2ltr V-8) with the new eight-speed Hydra-Matic 8L90 transmission. So I've had it a year now and have put 19k + miles it. I noticed about a month ago when the engine was cold and I went from park to drive it felt as if I was parked on a hill and the trans was in a bind, taken 1-2 seconds before roughly engaging in gear. Then it started doing it more often even when the transmission fluid temp was above 130. Well last week it began to shudder almost like driving over road strips before a stop sign. I also noticed that if I had it on cruise control between 40-60mph the tachometer would rev up every time it shuttered/vibrated. It took it back to the dealership as it is still under warranty and had the mechanic ride with me so he could see for himself what my Chevrolet was doing. He knew immediately as to what he thought was causing the vibration…torque converter he says! So as of right now it is in the shop to replace the torque converter with an upgraded one per this bulletin 15389 which provides a service procedure to reprogram the transmission control module (TCM) on certain 2015 model year Cadillac Escalade, Escalade ESV, Chevrolet Silverado, GMC Sierra, Yukon Denali and Yukon Denali XL vehicles equipped with an 8L90 8-Speed (M5U) transmission and 6.2L (L86) engine.

These vehicles may have a condition in which transmission calibration allows a higher than target energy input to the torque converter clutch (TCC) under certain conditions. This may lead to faster than expected torque converter clutch material wear, and a shudder feeling.

(f)  A consumer responded on this thread on November 15, 2017:

Good day to you all. I have a 2016 Sierra with the 8 speed transmission. At 18300 miles I took the local dealer because of a vibration at low RPM throughout the gear range; rough idle; and jerking gear changes from 1st to 2nd at low speeds.

The dealer had the truck for 5 days. They had to await the back-ordered tranny flush juice. They did the "triple flush" of the tranny and also replaced all 4 engine mounts. They claimed they updated the software on the truck engine management control and they also updated the software on the infotainment system.

I now have 19300 miles on the truck, and it is now going back for the exact same reasons – rough idle (not as bad as the first time), and the start of the vibrations.

I expect them to keep the truck for a week, as I dont wish to continue going back there every 6-8 weeks.

I was advised that they are short handed WRT transmission specialists. This is a common excuse in Fort Lauderdale, with at least 5 dealers all "sharing" the same transmission specialists.

My humble advise is to have them do the tranny flush and confirm there is a warranty on these services. I assume the flush is good for +- 1500 miles MAXIMUM.

As soon as I have my truck back, i shall report the dealers explanation.

(g)  A consumer responded on this thread on December 12, 2017:

bought a 17 Denali 6.2 w/ 8-spd in march of 17. I finally got around to taking to the dealer for a shifting issue from first to second gear (19k miles). If I was accelerating slowly it would shift very hard into second. It appeared as though the RPMs would go too high before shifting, then slam in to second. They replaced my transmission, and now I have a whole new set of problems. Its sluggish and hesitant between gear 1-3 or maybe 1-4 when

107

accelerating, and sometimes clunks into first coming from second upon stopping. Needless to say I'm on the verge of trading it in.

(h) A consumer responded on this thread on August 16, 2018 and on August 21, 2018:

I purchased a pre-owned 2017 GMC Z71 with the 6.2 and 8spd in April this year. It had 10,500 miles on it at the time and I really like/liked the truck. Great power, fuel economy and very comfortable. Last moth while traveling on the interstate (on vacation 250 miles from home) it started exhibiting the same problems mentioned above (like someone flipped a switch). At first I thought I was riding on rumble strips and tried swapping lanes, no change. Next I noticed the engine RPM's were fluctuating and it felt like it was hunting for the right gear. It also exhibited the same problem mentioned in another post above when going uphill. We were not towing anything, the hitch had never been used when I purchased the truck and I have not pulled anything heavier then our 16ft boat. The truck had 16,700 miles on it when this started. Once we arrived at our vacation destination I did a search to see if other people had been experiencing problems with these transmissions and after viewing all the post I wished I had done more research before purchasing this truck.

I was finally able to get it to the dealership and left it with them on August 6th. They still have it and can not correct the problem. They did the flush and replaced the engine mounts. They also commented that they know there are problems with this transmission. I was told yesterday that they are trying to contact GM to see what to do next. I have purchased 6 new GM vehicles over the years and 7 pre-owned GM vehicles and never experienced anything like this before with them where the problem couldn't be corrected. If they don't get this corrected I will be done with GM.

[August 21, 2018:]

The dealership called Friday (August 17th) and stated they had the problems resolved. I picked the truck up around noon and initially it performed great. After about 40 miles of driving I made a stop and upon starting the truck the shudder came back while idling as well as the rpm fluctuations. At highway speeds the shudder comes and goes and a couple of times it acted like it was hunting for the right gear which was one of the problems it had before the repair attempt. I contacted the dealership and they stated they would look further into the issue. If the TCM is really "learning" my driving

habits then I will have to agree with an earlier post that the computer has a learning disability.

After a couple more days of driving the truck it is starting to look like all of the original issues may be returning.

I will say the dealership has been very cooperative and wants to resolve the problem. They even picked up the extra cost of the rental beyond what GM covers.

I have also contacted GM priority care. Below is their response and I will keep posting updates.

"We understand how you like to have this issue resolved and we would like to work closely with you along with the GMC dealership in resolving this issue. Due to the nature of your concern we will endorse your case to a Senior Advisor who will continue to work directly with you and your dealership to review your vehicle and concerns. Please know that all the information you have provided will be available to both your dealer and Senior Advisor as well. We will forward your case to them and the Advisor and Dealer will review your case and vehicle details, and one of them will be in contact you within 2 business days to assist you further."

### e.    Complaints on gminsidenews.com

289.    On gminsidenews.com, a consumer posted on September 12, 2017:[16]

2018 8 speed transmissions

Does anybody know if the 2018 model GMC 1500 trucks have upgraded -improved the 8 speed transmissions? My 2016 has only 10000 miles and at the lower speeds it has always shifted funny and sometimes hard. Out on the highway it shifts good in the higher gears. I have to let it warm up alittle or it jumps into gear. I was going up the driveway the other day and the transmission just quit for a second and jumped back into gear. I have contacted the dealer but he says that all the 8 speed trans act that way. Wish now that I would have stayed with the 6 speed trans as my 2014 Tahoe has never given me a problem and shifts smooth.

---

[16]    https://www.gminsidenews.com/forums/f22/2018-8-speed-transmissions-278401 (last accessed May 7, 2019).

**f.   Complaints on gm-trucks.com**

290.   Similar comments have been posted in threads on gm-trucks.com.  One commenter

began a thread titled "My own 8 speed problems & resolution" on March 1, 2016 as follows: [17]

> **I wanted to post up my own experience with my 8 speed**
> **transmission in my 2015 SILVERADO HIGH COUNTRY**
> **6.2L 8 SPEED 8L90**
>
> I bought the truck brand new in July 2015. Manufactured date of
> April 2015. I purchased it from a dealer in NH and they have been
> great to deal with.
>
> So here is the story-->
>
> July 2015 --> At first the truck was flawless. It shifted butter
> smooth and on a very rare occasion (once a week maybe) it would
> clunk slightly when downshifting. It was totally negligible.
>
> ***As time went on and the mileage increased it got worse. Here
> is a list and description of what it was doing once I hit about 3500~
> miles. It didn't clunk and act sloppy all the time. HOWEVER,
> there is a good 65% chance the truck was going to shift poorly.
>
> • It clunks (HARD) into lower gears when slowing
> down/downshifting. This is the biggest issue and has continued to
> happen up to now.
>
> • Taking off from a stop with smooth, consistent acceleration, it
> has trouble deciding the correct gear and vibrates.
>
> • Same scenario as above, the rpm's fluctuate.
>
> • It makes clicking noises constantly when shifting. If you
> manually shift it, you can hear clicks in almost every gear.
>
> • I can MAKE it clunk hard if I coast in gear 7 and manually shift
> it into gear 6. **NO RELATION TO AFM/DoD WITH THIS.**
>
> • For some reason, turning into another road or turning in a slight
> corner and accelerating will make it downshift and clunk hard.

---

[17]   https://www.gm-trucks.com/forums/topic/184117-my-own-8-speed-problems-resolution/ (last accessed
May 7, 2019).

• Going from Park to Reverse either cold or after driving it would slight clunk, then engage a second or two after the initial clunk is heard/felt.

December 2015 --> I took it to my dealer at the 5000 mile oil change/scheduled maintenance and I had the service manager ride with me to hear the clunking. The truck was really acting up that day, and it was clunking like crazy. The service manager said he heard the noises clear as day. He told me the 8 speeds have some clunks, and because they are so new people need to get used to them. He gave me the whole they need to learn and EPA demands greater fuel mileage talk. I disagreed with him and we had a long conversation. I mentioned to him when the truck was new it did not do this.

When we returned to the dealership, this is exactly what he told me: "this is normal operation, we are not going to do anything about this issue"

I asked him to at least check for updates and go over the truck top to toe and check motor mounts, transmission mounts, spring shackles, etc. Just to rule out any possible 'looseness' that could cause the clunks. The work order said they checked for updates and looked the truck over. They found nothing out of place and no updates available.

Around two weeks later, with 7200~ miles on the truck, I was talking to my uncle about the transmission issues and he called his local Chevy dealer on my behalf. The service manager said the 8 speeds have a couple updates available, and to bring my truck up to see if they apply to it. He said the update had really helped a couple 8 speeds they had recently sold. So I drove up to their dealer (an hour in the opposite direction of MY dealer) and they hooked my truck up. I figured MY dealer had done the updates, but there was an available update. They updated it and it really didn't help much. It seemed to make the truck hold a little higher RPM cruising, but I didn't notice anything besides that.

March 2016 --> Just yesterday I dropped my truck off at my purchasing dealership with 9800~ miles. I asked them to do the scheduled maintenance, and look into the transmission one more time. Especially considering it hasn't gotten better, it got worse. I specifically asked them to drop the pan and look at the fluid, valve body, etc. They called me Monday afternoon and told me they took an extensive look at my transmission and they are going to put a new transmission in it. They said after driving it/taking a look that

111

it is "A GM candidate for a new transmission" because of the "symptoms it exhibits"

In 5-8 days the transmission will arrive from Detroit and then they will put in a new transmission.

I will keep you all posted on the results and we will see if over the next 10k miles the new transmission stays smooth.

…

I am giving GM a chance to fix the problem. Out of all the 8 speeds they have manufactured, they can't ALL be bad.

If this doesn't fix it I will ask them to buy it back. If they wont buy it back, then I will trade it in. Lesson learned.

**On March 22, 2016**

I just dropped the truck off at the dealer this evening. I just hit 10000 miles. The tech wanted to hear it. I drove, and I got it clunking quite a bit. He told me the way my transmission was clunking was NOT normal. He also said they have had a lot of concerns with 8 speeds. He said most of the 8 speeds have slight clunking that is due to tolerances/backlash which is understandable. He also mentioned the torque converters have been known to 'shred' themselves and create a lot of debris. Either way the 8 speed is not doing so hot. GM is working on it a permanent fix, but no absolute fix yet.

I can't say enough good things about my dealer though. They told me if it can't be fixed, or it comes back from GM I 'have to live with the clunk' that they will help with either trade assistance or buy it back. I really hope they can figure out a fix. It's a damn nice truck.

To those of you having any kind of doubt, bring it in to the dealer and at least have them document it. I live an hour away from the dealer, so I know how much of a pain it is going to the dealer. These trucks cost too much to settle for these transmission issues.

**On March 24, 2016**

[In response to the question "Are people with 2016 models and the 8 speed transmission having the same issues?"] Not sure if the 2016 8 Speeds are quite as bad. The tech told me the transmissions currently being put into the trucks have an updated torque

112

converter. That was one problem. My tech was very friendly and did say they have had a 'slew' of problems with the 8 Speed.

HERE IS ANOTHER UPDATE:

I picked the truck up last night after a 24hr turn around from my dealership. They took the truck for a four hour drive as they called it and did the relearn adapt while driving around. They had one guy drive, and another with the computer monitoring the transmission.

***

The drive home seemed to be much smoother. I will let you all know how it goes. I have spoken with the service manager, my sales man, and the manager of my dealer and if this doesn't meet my satisfaction they have agreed to buy it back. I have been ultra patient with this whole thing, and they have been more than willing to help me this. At least there are some dealers out there that care about the customer. Believe me, I have had my fair share of different dealerships treat you like crap.

I hope this fixes it because I do enjoy driving this truck around.

**On April 12, 2016**

Alright everybody. Here is the verdict.

I have an appointment tomorrow morning to bring the truck back to my dealer. The 'reprogram' did not help at all. They told me to drive 500 miles after the program to help it 'learn' further. I drove it 1000 and it still does the same clunks. All low speed clunks. I know exactly when it will clunk now, so riding with my dealer should show them my issues.

At this point I am planning on getting rid of the truck. I tried multiple times to have GM fix this damn 8 speed/clunk fiasco and they have failed so far. Really disappointing as this was my first new truck.

I know I am not the only one with this issue, and I know not every truck built has this issue. I wish all of you luck with your trucks moving forward.

(a) A consumer responded on this thread on March 14, 2016:

113

I'm having problems with my 8 speed as well. Tranny doesn't engage well especially going from park to reverse and if you give it gas before it's ready, it will hammer into reverse and jerk the whole truck violently. Makes you look like an idiot driver when it happens. Truck just lurches backwards. Also clunks when stopping or starting from stop. Also clanks between most shifts. This tranny was definitely not ready for prime time. If it had done this when I test drove it.. I would not have bought the truck.

(b)  Another consumer responded on April 16, 2016 and April 20, 2016:

Well I'm another victim of GM's great 8sp. trans. Actually mine wasn't really giving me too much trouble until I took it in for the TCS update and my truck went crazy. I think they corrupted my computer. Drivers assist back up and all went bad. My RPM's were jumping 1500 to 2000 rpms at 45 mph with the cruise. Not 5 miles down the road it shuttered so bad it jerked the steering wheel out of my hand.

Now my truck has been in the shop all week with no reply except they tried to blame it on me for putting Denali 22in wheels on the truck. Said it would change the dynamics of the transmission. Needless to say my words weren't that great. Its a 4 wheel drive what the hell has happened. Wanted to know if I had a programmer for changing the tire size. I know what they are trying too pull on me, and told them so. They are really reaching for any excuse.

I could be another lemon victim. Really sucks I love the truck. I have a 30ft off shore racing boat and the 6.2 pulls it with ease.

I know now my truck will never be the same. I'm getting too old for this crap.

Also heard the Dodge 8sp was having issues also. An older gentleman I work with told me they are cramming too many gears in a small case and it won't work. Kinda makes since. I will keep updates if or when I get my $60,000 rolling turd back.

…

Lets face it all lie's and deception. My dealer is trying everything in the book to blame me. Its really pathetic they would stoop so low for GM.

They still have my truck, this is week 2. So lets think about that, truly how long does it take to program the computer. That just tells me that there is NOT a cure for our transmissions. It's going to take

114

us the consumer to stand up for our rights and make GM figure
something out. I smell a recall but the only one's suffering is us.
Who knows how long it will take. Folks don't settle push it to the
end, they expect us to give up and walk away. Lets face it the easy
solution is to trade it in on something else but that's not the cure. I
will ride my dealers ass till something is done. I don't give up.

I have no clue when I'm getting my truck back, but I told the
service manager I want my truck shifting like it was right off the
lot, that's what I paid for not a test machine. I'm 6' 6" and they gave
me a regular cab with no gas at all. I'm so glad their on my side.
The 2016 truck I'm driving around in shutters, not sure the tranny
size but its a v6. So that tells me there's no fix in sight. My dealer
says its a software problem and not the trans. Humm!!!!!!

I will let everyone know what happens if I ever get my truck back.


(c)  Another consumer responded on May 13, 2016:

I'm taking my truck in for the second time with 8 speed
transmission issues. I took it in about 2 weeks ago and the
performed all of the TSB updates for the programming and it
shifted worse than ever. Clunking on upshifts like it was a 1980
Camaro with a stage 25,839,874,329,876,443 shift kit.

The last straw which made me call in for a second service
appointment was me starting from a stop on a 3% decline at less
than 5mph it felt like I was rear ended hard. I looked back behind
me and there was no car. I'm guessing there was no pre-load on the
pinion gear and it was between shifts when I started to roll forward
and then locked up with some backlash. This is strike #2. If I get it
back next Tuesday and I have one more tranny fart, I'm going to be
looking to do the same as the OP.

(d)  Another consumer responded on November 2, 2016:

2016 gmc sierra 6.2 8 speed. I too am big gm fan. Have had many.
This truck with the exception to the power of 6.2 is a p.o.s ...
transmission is garbage. Engine is very noisy and idles like it
wants to stall. Rides like a hosre. All for almost 60 grand. I'm sure
it's not all of them but too many where there is a big problem here.
On my second converter. Many relearns. I too would rather drive
my old car than this new one. Headed for lemon law. Gm has had
their shot.

115

(e)  Another consumer responded on July 25, 2017:

OK truck has been at dealership (not from where truck was purchased) for about a week now because of steering wheel vibration and clunky transmission and also when left over night you start up in the morning it takes a few seconds for the reverse to grab. The dealership allowed me to drive a brand spanking new Tahoe Platinum so guess I cant complain. So the first time me and service personal talked he said the Torque Converter would be replaced and that GM wanted them to empty out the transmission fluid and refill with different type. I will let him know about the 16-NA-014 Bulletin. I am sure he knows about it. Since I'm not going to mention the dealership at this point the technician told me they were have alot of issues with the 8 speeds. I love my truck and the power of the 6.2.

(f)  Another consumer responded on September 1, 2017:

I just had my torque converter replaced for shutter for the 2nd time. Both time they lasted roughly 16k miles. Does anyone have high miles on their 8sp as i am very concerned about long term reliability. I see now why they decreased the powertrain warranty.

(g)  Another consumer responded on October 20, 2016:

My 2017 GMC sierra 1500 6.2/ 8 speed with 4k miles just had TSB done on relearn of C3 return spring, i took it in because of the clunky noise on downshifts when coming to a stop. At first i thought it was fixed only to discover it wasn't, still clunky. It seems to downshift normally half the time and clunky the other half UNDER THE SAME EXACT DRIVING CONDITIONS. Also took in for rough idle, they adjusted the motor mounts then replaced them, no fix either, giving the truck some more time then I'm trading it in and never buying a GM truck again, what a damn joke this is for the amount i paid for this truck. Also forgot to mention they had my truck 14 days, i got lucky and they gave me a little Buick car for loaner, talked with others who had to endure longer times without getting a loaner. i hope eventually a class action lawsuit against GM is created for this transmission mess and the way they are handling it.

291.    Another thread on gmtrucks.com titled "2017 Canyon 8 Speed Absolutely

Horrible" began with a post by a consumer named Ron on June 27, 2018[18]:

> It shifts way to quick into high gears, press on the gas its like you
> have a standard trans and forgot to down shift, its starts doing the
> chug a lug.
>
> Press a little more and you get the dreaded torque convertor
> shudder. Press a little more on throttle and it drops 3 or 4 gears and
> is screaming!
>
> Then there is the slow reverse engagement in the morning after it
> sits over night. And the next reverse engagement is so hard it
> shakes the whole drivetrain! I bought a new truck so I wouldn't
> have any issues. I dread going to the dealer for transmission issues
> at 7 thousand miles. I would trade it but ill loose thousands. I am
> really amazed GM would let this transmission out the door with all
> these problems.There are a few bulletins out with the issues I have.
> Anyone have any fixes done that solved the problem? One of the
> bulletins involves a transmission flush with mobil 1 trans fluid,im
> not buying that. The shudder is slowly getting worse,has to be
> wrecking the torque convertor clutch!

> (a)  A consumer responded on this thread on June 27, 2018:
>
> Welcome to the 8 speed world. It's the land of confusion for sure.
> No one knows how to fix them and if you're lucky enough to get
> one issue fixed another pops up.
>
> When it works right it's a great transmission...or so I hear.

> (b)  Another consumer responded on June 27, 2018:
>
> No one can fix it because it is a pisspoor design that should never
> have been released to the public in the condition it was. Rushed out
> to keep up with other 8 speeds out there already. I am the guy who
> gets to try and fix the unfixable. I am the transmission guy at a
> GMC Buick dealer and I can tell you from experience in dealing
> with this piece of shit since 2014- cut your losses and get rid of it
> now.You will never be happy with it. Fast adapts, calibration
> update after update, valve body replacements and the triple flush
> on Canyon and Colorado and the one time flush on everything
> else.Band aid at best.Hopefully the ten speeds will be better.

---

[18]     https://www.gm-trucks.com/forums/topic/213033-2017-canyon-8-speed-absolutely-horrible (last accessed
May 7, 2019).

Haven't had one complaint yet and they have been out for a while now and the eight speeds were bad from day one.

(c)  Another consumer responded on July 19, 2018:

Gary, lots of the same issues in the forum with the 8 spd. My 'shudder' issues started around 8 thousand miles and got worse up until they found the technical service bulletin detailing the trans flush. The flush fixes the shudder, temporarily. My shudder is back with a vengeance at 23K miles. Taking it in again for an oil change and the transmission issue will be brought up again. It's under warranty.. yeah... but like you, I think there is probably some long term damage being done to the transmission and torque converter. I'll address that in my next visit with the service manager. All the other issues you listed with the transmisison... lazy gear changes, quick to find the top gear, slow to downshift when you need power are all characteristics of a transmission built to get high mileage at the expense of performance. All cars and trucks are going that way I think. That's the world we live in. You're on the right track knowing about the TSB on the trans flush. Let us know how your service visit turns out. Good luck.

(d)  Another consumer responded on March 12, 2019:

It is well known, and even acknowledged by GM, that the problems with this transmission cannot be fixed. Therefore, as soon as possible and with as few miles on the vehicle as possible, take it back to a dealer and request the defect be repaired. Do this several times, keeping all records of when, where, action taken (even if none), any advice or comments made by dealer persons, and if possible, record everything on video with sound. Remember it's not the dealers fault you bought a vehicle with a problem that cannot be fixed by any means, but the dealer is the one that's stuck with trying to fix it. Obtain all the information you can find on this problem, and even similar problems in other models (because the same transmission is used in multiple other vehicles), obtain all applicable GM TCB's (such as TCB 18-NA-177 and TCB 18-NA-355) that have any bearing on the problem, and then after a "reasonable number" of repair attempts apply for Arbitration according to the requirements applicable in your state. In Arbitration, which is free to the vehicle purchaser, present all evidence regarding nature of the problem, past history and the manufacturers inability to correct these serious defects, evidence that the issue exists in the vehicle you purchased, and the history of repeated attempts by dealer(s) to fix the problem but that the problem still exists. When is all is said and done, you may be given

118

a refund of the vehicle purchase price, a replacement vehicle having the same configuration and options, a decision to return to a dealer for further repair attempts, or no other action or remedy. In the case of the 8L45 / 8L90 transmission issues, arbitration in many states has already ordered refunds and replacement vehicles, as the problems with this model transmission have been around for so long and are so well documented. In any event, Good Luck.

292.    In yet another thread on gmtrucks.com, a consumer explained his issues with the Transmission Defect on May 10, 2018 as follows[19]

I have a 2015 6.2 with the 8 speed with 58k miles I have had a new transmission put in then a stator shaft recall done then a new torque converter and now once again the shutter is coming back seams like they just throw parts at it until the warranty runs out. Also wen the engine is in V4 mode around 40 mph the valves sound like there about to come apart but no problems yet with that. Has anyone had this much trouble and any luck with a fix I read on another form that they went to a mobile 1 fluid and it helped a lot. I wonder what a new converter and flush is going to cost me after the warranty runs out?

**g.**    **Complaints on cadillacforums.com**

293.    Another set of consumers of the Cadillac-brand vehicles discussed their issues in a thread titled "GM's 8L45 Cadillac Automatic Transmission" on cadillacforums.com.[20]   One consumer began the thread on June 19, 2017 as follows:

GM's 8L45 Eight-Speed Cadillac CT6 Automatic Transmission: Recall, Replace, Re-tune or Deny

GM's 8L45 Eight Automatic Transmission is a clunker. GM's customer assistance center acknowledges that the reviews are 'mixed' and one service bulletin has been issued. The 'mixed' aspect of the feedback shows that this 8L45 works normally for a while for some owners. Internet forums are heating up with discussions about otherwise fine cars cursed with this crude, confused and embarrassingly bad 8 speed lemon.

---

[19]    https://www.gm-trucks.com/forums/topic/211930-8l90-can-it-ever-be-fixed/ (last accessed May 7, 2019).

[20]    https://www.cadillacforums.com/forums/cadillac-forum/t-974121.html (last accessed May 7, 2019).

General Motors has managed to take its customers back several decades to an unpleasant time in the early development of the automatic transmission. The GM 8L45 Hydramatic Transmission is part of the powertrain in the Cadillac CT6, CTS, ATS, Chevrolet Camaro and perhaps more vehicles under a different name. This questionable feat of backwards design and engineering was accomplished with variable force solenoid technology, speed sensors and a processor executing hundreds of calculations and commands every 6.25 milliseconds. Clearly, this is not often enough, as evidenced by the ride experience inflicted on the driver and passengers when the thing desperately hunts for the proper gear and any gear will do … to lurch forward. With all that technology it performs far worse than the bands and torque converters of that our grandparents enjoyed in the 1960's and later. In 2016, General Motors was simply not ready to evolve past the 6 speed transmission but that didn't stop it from going ahead and cursing entire fleets of its new vehicles with the crudest powertrain component in its history. And yes indeed, it weighs over 30 lbs. less than its predecessor (one that actually works, though evidently grossly overweight). Perhaps the elusive 2nd, 3rd and 4th gears each weigh 10 lbs., accounting for both the weight loss and crude performance.

The 8L45 is a mess. Its crude state of performance sometimes rears its ugly head on a new GM vehicle on its way home from the dealership, or lurks deep inside its innards for a later outbreak of hard shifts, flares, thunks, and head jerking downshifts at random times in the early lives of the fleet. GM's confidence with this clunker drove it to install it in the Cadillac CT6, CTS and ATS models. Dealerships are forced to appease customers with such phrases as 'performs as designed' and 'performed adaptive fast learn' as a way to force owners to get used to it. The other line of defense is that the transmission is learning and adapting to the driver's style. Enduring the explanations and excuses of GM service technicians and service managers can be tiring. Confidentially, they'll admit that the thing is a disaster.

Other than a single service bulletin, GM is ignoring this failure as of Spring 2017. To admit there's a problem would be a devastating blow to the marketability of its current unsold inventory. There is also a lot of ego at stake here. GM promoted the 8L45 in its literature in a series of puffed up articles with statements like this:

 "The 8L45 was designed to enhance the CT6's driving experience, offering a strong balance between performance and efficiency," said Bill Goodrich, GM's assistant chief engineer for eight-speed automatic transmissions "Perhaps its best attribute will be that

customers really won't notice it – they'll simply enjoy the CT6's seamless, smooth driving experience and on-demand performance."

Read more: http://gmauthority.com/blog/2015/03/new-8l45-eight-speed-automatic-to-debut-in-2016-ct6/#ixzz4k4cZAecM

The owner of a vehicle cursed with this clunker will know there's a problem when passengers ask why the brakes are being pumped when coasting to a stop. That's the 8L45's attempt at downshifting. When the driver gingerly feathers the accelerator to coax the thing into gear after an auto-stop shutdown it may skip several gears and slam into 4th or 5th with a violent shutter. The driver and passengers all feel it as the entire vehicle shutters. At times it may seem like the driveshaft is going to come up through the cupholder and cellphone battery charger. Its performance is indefensible. If it's shifting like an average GM vehicle and it hasn't yet slipped into this confused state, it soon will. No amount of learning, adaptive fast learns or software tunes can apparently help it find the right gears, other than reverse or park, which, luckily seem to work. Dealer lots are filling up with unsold inventory and returned vehicles, many with less than 2000 troubled miles on the odometer. Apparently, frustrated owners were not able to adapt and learn along with the car's stuttering, clunking, and confused transmission.

So, what is the future of the 8L45? Maybe a software tune can bring it under control. If this is not possible, and clearly, GM is in no hurry to resolve this issue, the fate of the 8L45 has these possible futures:

1. It will quietly disappear in 2018, leaving the current fleet in an abyss of wildly unpopular clunkers. The CT6 is becoming known as the shimmying, stuttering, lurching flagship that looks nice.

2. It can finally break in at 40,000 miles or so and can then find the correct gears at appropriate times after a few years of learning and adapting.

3. Third party after-market companies will offer a way to replace and retrofit it with a nicely functioning transmission, like the 6L45, thus salvaging the resale value of the CT6 and others.

Corporate denial doesn't help the brand. Blaming the customer for expecting better shifting insults the brand loyalists. It's clear that the 8L45 was rushed into production without quality engineering and design. Hopefully, GM and its Cadillac division can conjure

up a solution that can make its attractive CT6 flagship drive as nicely as it looks parked.

(a)  A consumer responded on this thread on June 21, 2017:

The 8L90 is not any better. My 8L90 in my CT6 with turbo 3.0 is terrible. Worst transmission I have ever had. The 1-2 shift is hard. It also depends on outside temperature whether it acts up to a greater extent. I think the 8L90 could use better fluid or better pressure sensors. . . .

(b)  The original poster added to this thread on June 25, 2017:

To be clear, my article is not about those barely perceptible quivers and shift sequences experienced with most of the 8 speed transmissions in the market. What I am addressing are the violent shifts, head lurching downshifts and abysmal performance of GM's 8L45 transmission that is the curse of the Cadillac CT6.

The perspective formed, as presented in my post is based on two 8L45's, one exhibiting all of its faults on the day of delivery and the second one performing relatively normally until mile number 2435, when all hell broke loose. Again, this pertains to the 8L45 in two Cadillac CT6's that I have owned. Additionally, an internet search of other GM discussion forums brings up similar complaints wherever the same transmission is part of the powertrain. Following through with Cadillac customer support and GM corporate discussions it's clear that the customer base is not universally pleased with this crude transmission. As one would expect, the people in these two GM areas are very polite, helpful and proactive and admit there are concerns. It's not about customers who not quite ready for fuel saving technology that needs to shift constantly. My issue with GM is its slowness in dealing with the CT6's problems and the pompous pre-sale promotion of a transmission that 'makes the driver unaware that it's shifting.' Believe me, when your CT6 issues loud thunks, can barely get through a busy intersection after an auto start/stop lurch as it searches for a gear, you'll want to get rid of the thing. The CT6, with its eye-catching edgy design, can be an extremely unpleasant car to drive when its transmission can't shift correctly, in a violent fashion.

The notion that these things are highly sophisticated and require a long break-in period is silly. Some arrive from the factory in a confused state while others don't lapse into their failure mode until much later. And again, it's not about those common 8 speed

transmissions' slight quivers and shakes. Apparently 8, 9 and 10 speed transmission technology is driven by fuel economy and acceptable performance from a piddly little 4 or 6 cylinder engine. I realize that the current fleet of Cadillacs are budget luxury cars and expectations have to be adjusted to these price points, but can you imagine telling this to customers in the real luxury car market? 'Get used to it! or You're not driving it right', 'Performs as designed' or 'You're expecting too much' and other arguments would not set well with affluent owners. . . .

(c)  Another consumer responded on June 27, 2017:

My 2016 CTS now has 20K miles on it, and the transmission is totally unpredictable. At times, especially first thing in the morning, the car drives great - quick smooth shifts and excellent acceleration. However, after the car sits for a few hours, most of the time the transmission is terrible. Harsh shifts and a bogged down feeling like the car is in too high of a gear. Give it some gas, and it lurches forward to the point that the car is hard to control. Usually I will then put the car in manual mode and use the shift paddles, and this helps a bit. I recently drove 2 Malibus with the 2.0L turbo and 9 speed transmission, and these cars drove MUCH better than the CTS (with a sticker price of $20K less). I will never buy a GM vehicle with the 8 speed again...

(d)  The original poster added on October 15, 2017:

So at this time there has not been a complete resolution to this problem?

Well, GM is still in the 'Deny' stage. There's no word on any recalls, unit re-design, or retuning. This poorly designed cheap piece of crap called a transmission is providing headaches for service departments and owners. I've been told that service departments are giving up on the 'performs as designed' excuse, along with the 'relearning shift adapts' attempts and complete fluid changes. The current solution is a complete transmission replacement, which is an extensive gut of these relatively new vehicles. It's a $4,300 (dealer cost) warranty claim. The problem is that when the trauma is complete, this otherwise nice vehicle is cursed with another 8L45 transmission. I have now owned three (yes, 3) of these transmissions over the past 10 months and the most recent replacement is shifting the best it can. Transmissions #1 and #2 failed at 1480 and 2500 miles respectively, with harsh flares, clunky 1-2 upshifts and NO gear after coasting through

123

turns and intersections. When in that state, it's an unsafe vehicle. . .
.

(e)  Another consumer responded on April 1, 2018 and July 4, 2018:

> Today the shift was so hard I actually thought I had been rear
> ended. This is the first time that I have ever experience the shift
> being this hard and yes it was so rough that it jerked my body.
> Cadillac really needs to address this issue in the 8L45 8 Speed
> before they venture off into a 10 Speed as my guess is at this rate it
> will be no better.
>
> …
>
> [W]hat may come back to haunt GM/Cadillac is how this
> transmission was promoted and advertised. There are also Cadillac
> models that cost less than the CT6 whose transmission to not
> exhibit this sometimes harsh shift issue. The last word I received
> from the Cadillac Customer service rep is that Cadillac Quality
> Brand is pursuing this issue and something still may yet get done.
> My advice to all who are reporting this issue is to keep the pressure
> on and do not back off. IMO Cadillac/GM needs to find a
> permanent fix, replace with a better transmission or consider
> financial compensation, to do other wise IMO is not acceptable

### 4.  *Well-Publicized Criticism of the Transmission Defect in Trade Publications Demonstrate GM's Knowledge of the Defect.*

294.   GM was also made aware of the Transmission Defect through criticisms of automotive journalists, who identified the problems described above in online trade publications. In an article on gmauthority.com describing updates to its 2019 transmission, the publication emphasizes:

> In prior-generation, K2 platform Silverado and Sierra, the GM 8-
> speed was often criticized for its jerky and unexpected shifting
> behavior that ultimately worsened the satisfaction of driving and/or
> riding in the pickup. Whether the improvements made to the 8-
> speed gearbox in the all-new T1 platform 2019 Sierra and
> Silverado will address these issues is unknown.[21]

---

[21]   *See* Alex Luft, "GM 8-Speed Automatic Enhanced For 2019 Silverado, Sierra" dated July 18, 2018, available at http://gmauthority.com/blog/2018/07/gm-8-speed-automatic-enhanced-for-2019-silverado-sierra/ (last accessed May 7, 2019).

295.    And a January 11, 2018 article on the trutheaboutcars.com described the ongoing

problems associated with the Transmission Defect, reporting:

> The 1-2 shift sounds and feels like it's going to rip the diff out of
> the axle, which is a common complaint about the eight-speed
> transmission in these vehicles. The AWD mode, which lives
> between 2WD and 4-High and which is basically the "4WD" in the
> Escalade/Denali, is laughably slow to respond to spinning rear
> wheels.[22]

296.    Finally, the automotive journalists at motortrend.com highlighted the flaws GM's

eight-speed transmission in comparison with its new 10-speed transmissions:

> Simply put, . . . . we were unimpressed by how the Silverado's
> volume 5.3-liter DFM V-8 and its eight-speed automatic
> performed. We're disappointed to find that GM didn't fix the old
> 5.3's biggest flaws: its sloppy throttle response at low speeds and
> its transmission's over eagerness to get to its top gear. The truck
> feels powerful enough once it's moving, but getting there is
> frustrating. 'The engine has power, but it's being tag-teamed by the
> unholy GM duo of a lazy throttle pedal and a transmission that
> hates to downshift,' features editor Scott Evans said. 'Every time
> you want to move, you've got to get deep into the throttle before
> anything useful happens. The shifts aren't as smooth as the 10-
> speed automatic, either, so you notice every time it's forced to
> drop two gears to maintain speed up a hill.'
>
> The 6.2-liter V-8 and its 10-speed auto, which is only available as
> an option on the top-level Silverado LTZ and Silverado High
> Country, improves things immensely. The big V-8 has plenty of
> power on tap, and it sounds especially great when you bury your
> foot into the throttle. The 10-speed automatic is worlds better than
> the eight-speed, too. It feels modern and well sorted—basically the
> polar opposite of the eight-speed automatic. Its shifts are seamless
> and nearly unnoticeable, and it doesn't display the hunting
> behavior of the other transmission, either.[23]

---

[22]    *See* Jack Baruth,"2017 Silverado LTZ Long-term Test – 10,000 Miles and Counting" dated January 11,
2018, available at https://www.thetruthaboutcars.com/2018/01/long-term-test-2017-silverado-ltz-10000-
miles/ (last accessed May 7, 2019).

[23]    *See* Christian Seabaugh, "2019 CHEVROLET SILVERADO FIRST TEST: PENCILS DOWN" dated
September 14, 2018 available at https://www.motortrend.com/cars/chevrolet/silverado-1500/2019/2019-
chevrolet-silverado-first-test-review/ (last accessed May 7, 2019).

297.    These well-publicized criticisms disclosing the Transmission Defect, in addition to GM's own documents and hundreds of consumer complaints, show GM's awareness of the Transmission Defect.

### C.    Plaintiffs' Experiences

#### 1.    *Keith and Karen Shelton (2018 Chevrolet Silverado 1500)*

298.    In or about August 2018, Plaintiffs Keith and Karen Shelton purchased a new 2018 Chevrolet Silverado 1500 from I.G. Burton Lewes Chevrolet Buick GMC, an authorized GM dealer in Lewes, Delaware. Their vehicle was equipped with an 8L90 or 8L45 transmission.

299.    Plaintiffs purchased their vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

300.    At the time Plaintiffs purchased the vehicle, they were aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiffs' decision to purchase the vehicle.

301.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiffs' decision to purchase the vehicle. Before purchasing their Class Vehicle, Plaintiffs test drove the vehicle, discussed their potential purchase with the authorized dealer representative, and researched the vehicle through Kelley Blue Book.

302.    Within the first three months after purchase, Plaintiffs' transmission was hesitating and jerking while shifting and causing shuddering, vibrating, harsh shifting, and even unintended acceleration. Plaintiffs reported the problems to GM and/or GM's authorized dealership numerous times.

303.    On or around January 9, 2019, at 10,195 miles, Plaintiffs took the vehicle to I.G. Burton Lewes Chevrolet Buick GMC, the authorized GM dealer where they purchased the vehicle, complaining that they felt the vehicle vibrating at 60 MPH and that they felt "like [gas] pedal is tapping g [sic] on something[.]" The service technician inspected and test drove the vehicle, after which the wheels were rebalanced. Although the technician "found a tsb on the transmission[,] 16-

126

na-361 said that the transmission is working just fine and should not be replaced[.]" Accordingly, the technician made no further repairs regarding the transmission complaints.

304.    On or about February 20, 2019, with approximately 12,837 miles on the odometer, Plaintiffs took their vehicle to I.G. Burton Lewes Chevrolet Buick GMC, complaining of a "long hard shift" between first and second gears. Plaintiffs also repeated that they felt "like something is hitting on the gas pedal" and "the vibration of the vehicle transmitting through the gas pedal." Again, the technician "refer[red] to bulletin #16-na-361" in which "GM confirms harsh 1-2 shift is a normal characteristic of vehicle with the 8 speed transmission and no repairs are necessary[.]" Similarly, the technician dismissed the gas pedal and vibration issue as a "normal vehicle characteristic" and made no repairs.

305.    On or about April 1, 2019, with approximately 13,993 miles on the odometer, Plaintiffs took their vehicle again to I.G. Burton Lewes Chevrolet Buick GMC, complaining of the transmission's hard shifts and shudders. Plaintiffs also reported a "whining sound at low gear when cold" that sounded as if the four-wheel drive was engaged. According to Plaintiffs' invoice, the dealership technicians merely flushed the transmission and made no other repairs. However, the transmission flush did not resolve the Transmission Defect.

306.    Frustrated with the GM technicians' refusal to acknowledge or fix the defects in their vehicle, on or about April 25, 2019, with approximately 15,724 miles on the odometer, Plaintiffs took their vehicle to AAMCO to be inspected. The AAMCO technicians confirmed that Plaintiffs' vehicle exhibited transmission and electrical problems.

307.    Plaintiffs' vehicle continues to exhibit the problems they had previously reported to authorized GM dealer.

308.    GM's authorized dealership has failed to adequately repair Plaintiffs' vehicle or even acknowledge the Transmission Defect. Despite these diagnosis and repair attempts by GM and its dealers, Plaintiffs' transmission continues to shudder, vibrate, hesitate and cause jerking, harsh shifting, and unintended acceleration.

309.    Had GM disclosed its knowledge of the Transmission Defect before Plaintiffs

purchased their 2018 Chevrolet Silverado 1500, Plaintiffs would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiffs. Like all Class Members, Plaintiffs would not have purchased their 2018 Chevrolet Silverado 1500, or would not have paid the purchase price charged by GM, had they known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from unintended acceleration, delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other problems.

310.    At all times, Plaintiffs, like all Class Members, have driven their vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 2. *Daniel Drain (2018 GMC Sierra)*

311.    On or about June 29, 2018, Plaintiff Daniel Drain purchased a new 2018 GMC Sierra from Alpine Buick GMC, an authorized GM dealer in Denver, Colorado. His vehicle was equipped with an 8L90 or 8L45 transmission.

312.    Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

313.    At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

314.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff test drove the vehicle, discussed his potential purchase with the authorized dealer representative, and reviewed GM's materials on the vehicle, including brochures and the details of the vehicle on its "Monroney" window sticker.

315.    Within the first three months after purchase, Plaintiff's transmission was exhibiting delayed acceleration and harsh shifting. Plaintiff's vehicle also went into "limp mode" following malfunction light illuminations on the vehicle's control center when driving at 50 miles per hour

or higher.

316.    On or around August 10, 2018, less than two months after Plaintiff purchased the vehicle, he took the vehicle to Transwest Buick GMC, an authorized GM dealer in Henderson, Colorado, complaining of his vehicle engine's "RPMs [have] been going higher than normal when trying to shift," harsh and jerky shifting, and the check engine light repeatedly turning on and off. The service technician inspected the vehicle but did not make any repairs. At the time of this visit, Plaintiff's vehicle had approximately 3,395 miles on the odometer.

317.    On or about August 20, 2018, with approximately 3,800 miles on the odometer, Plaintiff took his vehicle to Transwest Buick GMC, again complaining of problems with Plaintiff's transmission and that the check engine light was on. After assessing Plaintiff's vehicle, dealership technicians replaced the transmission control valve body and performed programming and setup procedures. However, this did not resolve the Transmission Defect.

318.    On or about August 24, 2018, with approximately 3,900 miles on the odometer, Plaintiff took his vehicle for the third time to Transwest Buick GMC to have his transmission and check engine light inspected again. According to Plaintiff's invoice, dealership technicians noted that they test drove the vehicle, during which the "torque converter failed to lock causing the code to come on again[.]" The dealership technicians replaced the torque converter, but this did not resolve the Transmission Defect.

319.    Plaintiff's vehicle continues to exhibit the problems he had previously reported to authorized GM dealer.

320.    GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues to shift erratically and cause jerking, harsh shifting, and delayed acceleration.

321.    Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2018 GMC Sierra, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have purchased his 2018 GMC Sierra, or would not have paid the purchase price charged by

GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

322.    At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 3.    *Wavers Smith (2017 Chevrolet Camaro)*

323.    On or about November 24, 2017, Plaintiff Wavers Smith purchased a used 2017 Chevrolet Camaro with approximately 12,000 miles on the odometer from a Kia dealership in South Cobb, Georgia. His vehicle was equipped with an 8L90 or 8L45 transmission.

324.    Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

325.    At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

326.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff researched the vehicle on GM's and/or the dealership's website, on other internet websites, and on Kelley Blue Book. Plaintiff test drove the vehicle before the purchase.

327.    Within the first few months after purchase, Plaintiff's transmission was shuddering, jerking, and vibrating, and exhibiting transmission slips and hesitating while accelerating.

328.    On or about December 17, 2017, with approximately 13,480 miles on the odometer, Plaintiff took his vehicle to John Miles Chevrolet, an authorized Chevrolet dealer in Conyers, Georgia, complaining that Plaintiff's transmission was vibrating, sometimes at low speeds or other times at cruising speeds. Dealership technicians initially "found apparent TCC [torque converter clutch] shudder[,]" then later noted that they "confirmed TCC shudder." According to Plaintiff's invoice, dealership technicians flushed and drained the transmission fluid in Plaintiff's vehicle

three times as outlined in TSB 16-NA-175. However, this did not resolve the Transmission Defect.

329.     On or about December 18, 2017, with approximately 14,144 miles on the odometer, Plaintiff took his vehicle back to John Miles Chevrolet, renewing his complaint that the transmission was shuddering, most noticeably at low speeds or at cruising speeds and that he had to "play with the accelerator to be able to drive around the shudder." After assessing Plaintiff's vehicle, dealership technicians "determined there is a TCC [torque converter clutch] shudder." According to Plaintiff's invoice, dealership technicians flushed and drained the transmission fluid in Plaintiff's vehicle three times as outlined in TSB 16-NA-175. However, this did not resolve the Transmission Defect.

330.     On September 18, 2018, with approximately 23,941 miles on the odometer, Plaintiff took his vehicle back to John Miles Chevrolet, complaining that the vehicle was vibrating badly while driven at low speeds and that the vehicle was very sluggish in the mornings. Dealership personnel stated they were unable to perform the test drive to inspect the vehicle because the vehicle's rear tires should be replaced before proceeding.

331.     On or around October 8, 2018, with approximately 24,704 miles on the odometer, Plaintiff took his vehicle back to John Miles Chevrolet to have his transmission serviced again due to experiencing a "constant vibration" while driving. According to Plaintiff's invoice, upon test driving the vehicle, dealership technicians "found [a] shudder under light load at 50MPH." The dealership technicians replaced the torque converter and transmission fluid, but this did not resolve the Transmission Defect.

332.     Plaintiff's vehicle continues to exhibit all of the problems he had previously reported to authorized GM dealer.

333.     GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues to shudder, jerk, vibrate, and exhibit transmission slips and hesitation while accelerating.

334.     Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2017 Chevrolet Camaro, Plaintiff would have seen such disclosures and been aware

of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have purchased his 2017 Chevrolet Camaro, or would not have paid the purchase price charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

335.    At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 4.    *Richard Freeman (2017 GMC Canyon)*

336.    In or around November 2017, Plaintiff Richard Freeman purchased a new 2017 GMC Canyon from Walker Cadillac Buick GMC (now known John Thornton Buick GMC), which was an authorized GM dealership in Carrollton, Georgia. His vehicle was equipped with an 8L90 or 8L45 transmission.

337.    Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

338.    At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

339.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff researched the vehicle on GM's and the authorized dealership's website, on other internet websites, on Kelley Blue Book, and on Edmunds.com. Plaintiff also test drove the vehicle, discussed his potential purchase with the authorized dealer representative, and reviewed the details of the vehicle on its "Monroney" window sticker.

340.    Within the first three months after purchase, Plaintiff's transmission was shuddering, jerking, making banging noises, vibrating, and exhibiting harsh or hard shifts and delayed acceleration. In addition, the transmission had problems shifting in reverse including

132

suddenly jolting backwards after hesitating. At times, the vehicle hesitated before jumping into gear to start moving after being stopped at an intersection or stop sign.

341.    On or about February 13, 2018, with approximately 3,970 miles on the odometer, Plaintiff took his vehicle to Walker Cadillac Buick GMC, the authorized GM dealer where he purchased the vehicle, complaining of the transmission's sudden shifting problems and banging noises. According to Plaintiff's invoice, dealership technicians consulted TSB 16-NA-019 and performed a software update (fast learn procedure). However, this did not resolve the Transmission Defect.

342.    On or about February 26, 2018, with approximately 4,197 miles on the odometer, Plaintiff took his vehicle back to Walker Cadillac Buick GMC for an air conditioner compressor replacement. Plaintiff also reported to the dealership that while he had been driving in rush hour, stop-and-go traffic on the interstate, the vehicle felt as if it were slipping out of gear and banged so loudly that he initially thought he had been rear-ended. However, the dealership technicians responded that they could not duplicate the reported conditions, advised Plaintiff to bring it in when he could duplicate the issue, and instead merely serviced the air conditioner issue.

343.    On March 14, 2018, with approximately 4,472 miles on the odometer, Plaintiff took his vehicle back to Walker Cadillac Buick GMC, complaining that the check engine light illuminated and the vehicle "stumbled." The dealership technicians performed an evaporative emission canister purge and replaced a solenoid valve, but this did not resolve the Transmission Defect.

344.    On September 17, 2018, with approximately 8,105 miles on the odometer, Plaintiff took his vehicle back to Walker Cadillac Buick GMC, complaining that the vehicle was shaking and shuddering, and that "engine bogs down while driving," lowering the fuel efficiency. The dealership technicians consulted service bulletin #18-NA-177 and replaced the torque converter, the torque converter seal, the transmission filter, and flushed the cooler. Dealership personnel noted they were unable to duplicate the concern regarding the engine bogging down and made no repairs.

345.     On or around November 20, 2018, with approximately 10,996 miles on the odometer, Plaintiff took his vehicle back to the same dealership, now named John Thorton Cadillac Buick GMC, again complaining of "a shudder while driving." According to Plaintiff's invoice, upon test driving the vehicle, dealership technicians did not find the shudder, but flushed the vehicle "for customer satisfaction." However, the technician then rode in the vehicle with Plaintiff and reported feeling a torque converter shudder. Despite this, the dealership technicians made no further repairs.

346.     Plaintiff's vehicle continues to exhibit all the problems he had previously reported to authorized GM dealer.

347.     GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues shuddering, jerking, making banging noises, vibrating, and exhibiting harsh or hard shifts and delayed acceleration.

348.     Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2017 GMC Canyon, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have purchased his 2017 GMC Canyon, or would not have paid the purchase price charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

349.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 5.     *Samuel Ford (2018 Chevrolet Silverado 1500)*

350.     In or around May 2018, Plaintiff Samuel Ford leased a 2018 Chevrolet Silverado 1500 for 39 months from Andy Mohr Chevrolet, an authorized Chevrolet dealership, in Plainfield, Indiana. His vehicle was equipped with an 8L90 or 8L45 transmission.

134

351.    Plaintiff leased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

352.    At the time Plaintiff leased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

353.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff test drove the vehicle, discussed his potential purchase with the authorized dealer representative asking specifically about the eight-speed transmission, and reviewed GM's materials on the vehicle, including brochures and the details of the vehicle on its "Monroney" window sticker.

354.    Within the first four months after beginning the lease, Plaintiff's transmission was shuddering, jerking, vibrating, surging, and exhibiting delayed acceleration and shifting problems and harsh or hard shifts. Specifically, the shuttering and jerking is exceptionally severe when coming to a stop or when shifting in reverse, with hard jerks when putting the vehicle into park from any gear. The transmission also exhibits problems downshifting when slowing to a stop.

355.    On or around October 3, 2018, with approximately 5,965 miles on the odometer, Plaintiff took his vehicle back to Andy Mohr Chevrolet, the authorized GM dealer where he leased the vehicle, complaining of the transmission's shuddering, surging, delayed acceleration, and shifting problems. According to Plaintiff's invoice, dealership technicians confirmed that the "vehicle exhibits TCC shudder[.]" The dealership technicians consulted TSB 16-NA-019, replaced the torque converter and transmission fluid, and performed a software update (fast learn procedure). However, this did not resolve the Transmission Defect.

356.    Plaintiff's vehicle continues to exhibit all of the problems he had previously reported to authorized Chevrolet dealer.

357.    GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues shuddering, jerking, vibrating, surging, and exhibiting delayed acceleration and shifting problems and harsh or

hard shifts.

358.     Had GM disclosed its knowledge of the Transmission Defect before Plaintiff leased his 2018 Chevrolet Silverado 1500, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have leased his 2018 Chevrolet Silverado 1500, or would not have agreed to the lease term prices charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

359.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 6.     *Keith Fenske (2017 Cadillac CT6)*

360.     On or about February 17, 2018, Plaintiff Keith Fenske purchased a certified pre-owned 2017 Cadillac CT6 with approximately 4,637 miles on the odometer from Bergstrom Cadillac, which was an authorized Cadillac dealership in in Madison, Wisconsin. His vehicle was equipped with an 8L90 or 8L45 transmission.

361.     Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

362.     At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

363.     Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff researched the vehicle on the dealership's website and on CarandDriver.com. Plaintiff test drove the vehicle before the purchase.

364.     Within the first three months after purchase, Plaintiff's transmission was surging and lunching at slow speeds upon acceleration.

365.    In or around September 2018, Plaintiff took the vehicle to Key Cadillac, an authorized Cadillac dealer in Edina, Minnesota, complaining of the transmission's lunching and surging. The service technician inspected the vehicle and informed Plaintiff that the reported issue could not be duplicated. The service technician did not make any repairs or suggestions.

366.    On or about January 8, 2019, with approximately 8,906 miles on the odometer, Plaintiff took his vehicle to Morrie's Golden Valley Cadillac, an authorized Cadillac dealer in Minneapolis, Minnesota, again complaining that the "transmission seems to surge on shift from 1st to 2nd gear on first start up and take off happens around 8mph." After assessing Plaintiff's vehicle, the technician referred to "doc#16-NA-361" and noted that "this is a normal condition [.]" Accordingly, the technician made no repairs.

367.    Plaintiff's vehicle continues to exhibit the problems he had previously reported to authorized GM dealer.

368.    GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues to surge, lunch, and exhibit shifting problems.

369.    Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2017 Cadillac CT6, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have purchased his 2017 Cadillac CT6, or would not have paid the purchase price charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

370.    At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 7.    *Colton Kelly (2017 Chevrolet Silverado 1500)*

371.    In or around December 2017, Plaintiff Colton Kelly purchased a new 2017

Chevrolet Silverado 1500 from Denny Menholt Rapid Chevrolet, an authorized Chevrolet dealership in Rapid City, South Dakota, where Plaintiff resided at the time. His vehicle was equipped with an 8L90 or 8L45 transmission.

372.   Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

373.   At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

374.   Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff researched the vehicle on the authorized dealership's website, on other internet websites and on Chevrolet online forums. Plaintiff also test drove the vehicle, discussed his potential purchase with the authorized dealer representative, and reviewed the details of the vehicle on its "Monroney" window sticker.

375.   Almost immediately after purchase, Plaintiff noticed problems with the transmission, such clunking noises. Within six months after purchase, Plaintiff's transmission was shuddering, jerking, making banging noises, and exhibiting harsh or hard shifts. Specifically, the transmission causes a significant thud and jolt when shifting from first to second gear. Additionally, at times, the back wheels lock, with the vehicle banging and/or jolting so severely that Plaintiff feels as if he has been rear-ended.

376.   On or about March 13, 2018, with approximately 4,341 miles on the odometer, Plaintiff took his vehicle to Denny Menholt Rapid Chevrolet, the authorized Chevrolet dealer where he purchased the vehicle, complaining of the transmission's hard shifting between first and second gears. The service technician test drove the vehicle and informed Plaintiff that the reported issue could not be duplicated. The service technician did not make any repairs or suggestions.

377.   On or about July 31, 2018, with approximately 9,525 miles on the odometer, Plaintiff took his vehicle to Denny Menholt Rapid Chevrolet, again complaining of the shifting

problems with Plaintiff's transmission. After assessing Plaintiff's vehicle, dealership technicians noted that the issues were "possible [sic] related to 16-NA-404 and/or 16-NA175" and that the "valve body [was] failing internally[.]" The dealership technicians replaced the transmission control valve body and performed programming and procedures. However, this did not resolve the Transmission Defect.

378.    On or about February 11, 2019, Plaintiff took the vehicle to Findlay Chevrolet, an authorized Chevrolet dealer in Las Vegas, Nevada, having moved to Nevada from South Dakota. Plaintiff again complained of the hard shifting between first and second gears and also reported an "occasional violet shudder when shifting gears around 35MPH." Plaintiff also told the service technicians that the prior valve body replacement performed by previous service technicians did not resolve the issue. The service technician test drove the vehicle and noted that the issue could not be duplicated. Additionally, the technician referred to "doc 4605342 [16-NA-361] advising that this is a normal condition" and "normal as per design[.]" The service technician did not make any repairs or suggestions.

379.    On or about March 25, 2019, with approximately 15,013 miles on the odometer, Plaintiff took his vehicle to Henderson Chevrolet, an authorized Chevrolet dealer in Henderson, Nevada, complaining of the same previously reported problems with his transmission. Although Plaintiff requested a transmission flush, dealership technicians refused his request and performed a software update (fast learn procedure). However, this did not resolve the Transmission Defect.

380.    Plaintiff's vehicle continues to exhibit the problems he had previously reported to authorized GM dealer.

381.    GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues shuddering, jerking, making banging noises, jolting, and exhibiting harsh or hard shifts.

382.    Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2017 Chevrolet Silverado 1500, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members,

Plaintiff would not have purchased his 2017 Chevrolet Silverado 1500, or would not have paid the purchase price charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

383.    At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### 8.    *Christopher Giles (2017 Chevrolet Colorado)*

384.    In or around August 2018, Plaintiff Christopher Giles purchased a used 2017 Chevrolet Colorado with approximately 21,000 miles on the odometer from Carr Nissan in Beaverton, Oregon, a suburb near Plaintiff's residence in Vancouver, Washington. His vehicle was equipped with an 8L90 or 8L45 transmission.

385.    Plaintiff purchased his vehicle primarily for personal, family, or household use. GM manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

386.    At the time Plaintiff purchased the vehicle, he was aware of the applicability of a warranty that would cover certain defects in the vehicle. This warranty was a material factor in Plaintiff's decision to purchase the vehicle.

387.    Passenger safety, vehicle performance, gas mileage, and reliability were all factors in Plaintiff's decision to purchase his vehicle. Before purchasing his Class Vehicle, Plaintiff researched the vehicle on the dealership's website, on other internet websites, and on Kelley Blue Book. Plaintiff also test drove the vehicle and discussed his potential purchase with the dealer representative before the purchase.

388.    Within the first four months after purchase, Plaintiff's transmission was shaking, vibrating, and shuddering, usually on longer trips.

389.    On or about April 12, 2019, Plaintiff took the vehicle to Alan Webb Chevrolet, an authorized Chevrolet dealer in Vancouver, Washington, complaining of the transmission's

shaking, vibrating, and shuddering. According to Plaintiff's invoice, dealership technicians test drove the vehicle and "verified a shudder at freeway speeds." The dealership technicians consulted "bulletin #18-NA-355" and "performed transmission fluid/flush exchange as outlined in the bulletin [and] filled transmission fluid level to the proper level[.]" However, this did not resolve the Transmission Defect.

390.     Plaintiff's vehicle continues to exhibit all of the problems he had previously reported to authorized Chevrolet dealer.

391.     GM's authorized dealership has failed to adequately repair Plaintiff's vehicle. Despite these repair attempts by GM and its dealers, Plaintiff's transmission continues to shake, vibrate, and shudder.

392.     Had GM disclosed its knowledge of the Transmission Defect before Plaintiff purchased his 2017 Chevrolet Colorado, Plaintiff would have seen such disclosures and been aware of them. Indeed, GM's omissions were material to Plaintiff. Like all Class Members, Plaintiff would not have purchased his 2017 Chevrolet Colorado, or would not have paid the purchase price charged by GM, had he known that the 8L90 or 8L45 transmissions are prone to premature internal wear and failure and that the 8L90 or 8L45 transmissions suffer from delayed acceleration, delayed deceleration, shaking, shuddering, jerking, and harsh shifting, among other defects.

393.     At all times, Plaintiff, like all Class Members, has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## CLASS ACTION ALLEGATIONS

394.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

395.     Pursuant to Fed. R. Civ. Proc. 23(b)(2), (b)(3) or (c)(4), Plaintiffs assert classes

141

based on the applicable state law of the plaintiffs. The Class and Sub-Classes are defined as:

396.     **Nationwide Class**: All individuals in the United States who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission[24] (the "Nationwide Class" or "Class").

397.     **Delaware Sub-Class**: All residents of Delaware who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[25]

398.     **Colorado Sub-Class**: All residents of Colorado who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[26]

399.     **Georgia Sub-Class**: All residents of Georgia who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[27]

400.     **Indiana Sub-Class**: All residents of Indiana who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[28]

401.     **Minnesota Sub-Class**: All residents of Minnesota who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[29]

402.     **South Dakota Sub-Class**: All residents of South Dakota who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[30]

403.     **Washington Sub-Class**: All residents of Washington who purchased or leased any GM passenger vehicle equipped with a GM 8L45 or 8L90 transmission.[31]

---

[24]     On information and belief, these vehicles include the 2015-2019 Chevrolet Silverado; the 2017-2019 Chevrolet Colorado; the 2015-2019 Chevrolet Corvette; the 2016-2019 Chevrolet Camaro; the 2015-2019 Cadillac Escalade and Escalade ESV; the 2016-2019 Cadillac ATS, ATS-V, CTS, CT6, and CTS-V; the 2015-2019 GMC Sierra, Yukon, and Yukon XL, and Yukon Denali XL; and the 2017-2019 GMC Canyon.

[25]     *See* n.24.

[26]     *See* n.24.

[27]     *See* n.24.

[28]     *See* n.24.

[29]     *See* n.24.

[30]     *See* n.24.

[31]     *See* n.24.

404.     Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class or any Sub-Class should be expanded or otherwise modified.

405.     **Numerosity**: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in GM's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

406.     **Typicality**:  Plaintiffs' claims are typical of the claims of the Class and Sub-Classes in that Plaintiffs, like all Class Members, purchased or leased a Class Vehicle designed, manufactured, and distributed by GM, and equipped with the defective GM 8L45 or 8L90 transmissions. The representative Plaintiffs, like all Class Members, have been damaged by GM's misconduct in that they have incurred or will incur the cost of repairing or replacing the defective GM 8L45 or 8L90 transmission components. Furthermore, the factual bases of GM's misconduct are common to all Class Members and represent a common thread resulting in injury to the Class as a whole.

407.     **Commonality**:   There are numerous questions of law and fact common to Plaintiffs, the Class and Sub-Classes that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

     (a) Whether Class Vehicles contain defects relating to the GM 8L45 or 8L90 Transmission;

(b) Whether the defects relating to the GM 8L45 or 8L90 Transmission constitute an unreasonable safety risk;

(c) Whether the defective nature of the GM 8L45 or 8L90 Transmission constitutes a material fact;

(d) Whether Defendant has a duty to disclose the defective nature of the GM 8L45 or 8L90 Transmission to Plaintiffs and Class Members;

(e) Whether Plaintiffs and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(f) Whether Defendant knew or reasonably should have known of the defects relating to the GM 8L45 or 8L90 Transmission before it sold and leased Class Vehicles to Plaintiffs and Class Members and, if so, how long Defendant has known of the defect;;

(g) Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective GM 8L45 or 8L90 Transmission;

(h) Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective GM 8L45 or 8L90 Transmission; and

(i) Whether Defendant breached the implied warranty of merchantability pursuant to the laws governing each of the Sub-Class jurisdictions; and

(j) Whether Defendant breached express warranties pursuant to the laws governing each of the Sub-Class jurisdictions.

408. **Adequate Representation**:  Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

409.   **Predominance and Superiority**:   Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of GM's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for GM's misconduct. Absent a class action, Class Members will continue to incur damages, and GM's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

410.   In the alternative, this action is certifiable under the provisions of Fed. R. Civ. Proc. 23(b)(1) and/or (b)(2) because:

(a)  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for GM;

(b)  The prosecution of separate actions by individual members of the Class would create a risk of adjudications as to them which would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)  GM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to members of the Class on a mandatory, class-wide basis.

411.    Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which should preclude its maintenance as a class action.

## TOLLING OF THE STATUTES OF LIMITATIONS

412.    Because the defect is undetectable until it manifests and GM failed to disclose or intentionally concealed the Transmission Defect, Plaintiffs and Class Members were not reasonably able to discover the problem until after purchasing the Class Vehicles, despite exercise of due diligence.

413.    Additionally, on information and belief, GM instructed its authorized dealership employees and technicians to inform Class Members that the manifestations of the Transmission Defect in the GM 8L45 and 8L90 Transmission were normal, and therefore not a defect as alleged herein.

414.    Plaintiffs and the Class Members had no realistic ability to discern that the GM 8L45 and 8L90 Transmissions in Class Vehicles were defective. Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

415.    Plaintiffs are informed and believe and based thereon allege that GM has known of the Transmission Defect since at least 2014 and has concealed from or failed to alert owners and lessees of the Class Vehicles of the defective nature of the GM 8L45 and 8L90 Transmissions.

416.    Any applicable statute of limitations has therefore been tolled by GM's knowledge, active concealment, and denial of the facts alleged herein. Defendant is further estopped from relying on any statute of limitations because of its concealment of the Transmission Defect.

## COUNT I

**Breach of Warranty Under the Magnuson-Moss Warranty Act**
**15 U.S.C. § 2303 *et seq.***
**(On Behalf of the Nationwide Class)**

417.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

418.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class Members.

419.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

420.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

421.    GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

422.    GM's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

423.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

424.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

425.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

426.    Furthermore, under the Powertrain Component of the Warranties, GMC expressly

147

warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

427.    On information and belief, GM breached the express warranty by:

(a) Extending the Bumper-to-Bumper Limited Warranties and the Powertrain Warranties with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship, including the subject transmission, at no cost to the owner or lessee;

(b) Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period;

(c) Refusing to honor the express warranty by repairing or replacing, free of charge, the transmission or any of its component parts or programming and instead charging for repair and replacement parts; and

(d) Purporting to repair the Class Vehicles and/or performing inadequate, illusory repairs, including by falsely informing Class Members that there was no problem with their Class Vehicles, performing ineffective procedures including software updates, and/or replacing defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

428.    Furthermore, GM impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions were manufactured, supplied,

distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

429.     Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design of their transmissions.

430.     GM's breach of express and implied warranties has deprived Plaintiffs and Class Members of the benefit of their bargain.

431.     The amount in controversy of the individual claims of each Plaintiff and Class member meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

432.     GM has been afforded a reasonable opportunity to cure its breach, including when Plaintiffs and Class Members brought their vehicles in for diagnoses and repair of the transmission.

433.     As a direct and proximate cause of GM's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. GM's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

434.     As a result of GM's violations of the Magnuson-Moss Warranty Act as alleged herein, Plaintiffs and Class Members have incurred damages.

## COUNT II

### Violation of the Delaware Consumer Fraud Act
### 6 DEL. CODE § 2511(7)
### (On Behalf of the Delaware Sub-Class)

435.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

436.    Plaintiffs Keith Shelton and Karen Shelton (collectively, the "Delaware Plaintiffs") bring this cause of action on their own behalf and on behalf of the members of the Delaware Sub-Class.

437.    GM is a "person" within the meaning of 6 DEL. CODE § 2511(7).

438.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 DEL. CODE § 2513(a).

439.    GM participated in deceptive trade practices that violated the Delaware CFA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

440.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any

material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

441.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

442.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

443.    GM knew or should have known that its conduct violated the Delaware CFA.

444.    Delaware Plaintiffs and Delaware Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

445.    Had Delaware Plaintiffs and Delaware Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

446.    Delaware Plaintiffs and Delaware Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Delaware Plaintiffs and Delaware Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

447.    As a result of GM's conduct,  Delaware Plaintiffs and Delaware Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

448.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Delaware Plaintiffs and Delaware Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

449.    Delaware Plaintiffs and Delaware Sub-Class Members seek damages under the

Delaware CFA for injury resulting from the direct and natural consequences of GM's unlawful conduct. *See, e.g., Stephenson v. Capano Dev., Inc*., 462 A.2d 1069, 1077 (Del. 1983).

450.    GM engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

## COUNT III

### Breach of Express Warranty
### 6 DEL. CODE §§ 2-313 and 2A-210
### (On Behalf of the Delaware Sub-Class)

451.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

452.    Delaware Plaintiffs Keith Shelton and Karen Shelton bring this cause of action on their own behalf and on behalf of the members of the Delaware Sub-Class.

453.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under 6 DEL. CODE §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

454.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 6 DEL. CODE § 2A-103(1)(p).

455.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 DEL. CODE §§ 2-105(1) and 2A-103(1)(h).

456.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

457.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

458.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty

period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

459.    Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

460.    GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

461.    The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Delaware Plaintiffs and Delaware Sub-Class Members.

462.    Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

463.    Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Delaware Plaintiffs and Delaware Sub-Class Members.

464.    Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did

not cure the defect.

465.     GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed Delaware Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

466.     GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

467.     Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

468.     The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Delaware Plaintiffs and Delaware Sub-Class Members. Among other things, Delaware Plaintiffs and Delaware Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

469.     Delaware Plaintiffs and Delaware Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

470.     Delaware Plaintiffs and Delaware Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs

and/or replacements of the transmissions or components thereof, and through other internal and external sources.

471.    Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

472.    Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

473.    As a direct and proximate cause of GM's breach, Delaware Plaintiffs and Delaware Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Delaware Plaintiffs and Delaware Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

474.    As a direct and proximate result of GM's breach of express warranties, Delaware Plaintiffs and Delaware Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT IV

### Breach of the Implied Warranty of Merchantability
### 6 DEL. CODE §§ 2-314 and 2A-212
### (On Behalf of the Delaware Sub-Class)

475.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

476.    Delaware Plaintiffs Keith Shelton and Karen Shelton bring this cause of action on their own behalf and on behalf of the members of the Delaware Sub-Class.

477.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under 6 DEL. CODE §§ 2-104(1) and 2A-103(3), and a "seller" of motor vehicles under § 2-103(1)(d).

478.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under 6 DEL. CODE § 2A-103(1)(p).

479.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 DEL. CODE §§ 2-105(1) and 2A-103(1)(h).

480.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under 6 DEL. CODE §§ 2-314 and 2A-212.

481.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Delaware Plaintiffs and the Delaware Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Delaware Plaintiffs and the Delaware Sub-Class Members, with no modification to the defective transmissions.

482.    GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

483.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

484.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale

or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

485.    As a result of GM's breach of the applicable implied warranties, Delaware Plaintiffs and the Delaware Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Delaware Plaintiffs and the Delaware Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

486.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of 6 DEL. CODE §§ 2-314 and 2A-212.

487.    Delaware Plaintiffs and Delaware Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

488.    Delaware Plaintiffs and Delaware Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

489.    As a direct and proximate cause of GM's breach, Delaware Plaintiffs and Delaware Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Delaware Plaintiffs and Delaware Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

490.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Delaware Plaintiffs and Delaware Sub-Class Members have been damaged in an amount to be proven at trial.

**COUNT V**

**Violation of the Colorado Consumer Protection Act**
**COLO. REV. STAT. §§ 6-1-101, *et seq.***
**(On Behalf of the Colorado Sub-Class)**

491.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

492.    Plaintiff Daniel Drain ("Colorado Plaintiff") brings this cause of action on his own behalf and on behalf of the members of the Colorado Sub-Class.

493.    GM is a "person" within the meaning of the Colorado Consumer Protection Act ("CCPA"), COLO. REV. STAT. § 6-1-102.

494.    The CCPA prohibits a person from engaging in a "deceptive trade practice," including "knowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods […];" "represent[ing] that goods, good, services, or property are of a particular standard, quality, or grade, […] if he knows or should know that they are of another;" and "advertis[ing] goods, services, or property with intent not to sell them as advertised." COLO. REV. STAT. § 6-1-105(1)(e), (g), and (i).

495.    GM participated in deceptive trade practices that violated the CCPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

496.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any

material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

497.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

498.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

499.    GM knew or should have known that its conduct violated the CCPA.

500.    Colorado Plaintiff and the Colorado Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

501.    Had Colorado Plaintiff and the Colorado Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

502.    Colorado Plaintiff and the Colorado Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Colorado Plaintiff and the Colorado Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

503.    As a result of GM's conduct,  Colorado Plaintiff and the Colorado Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

504.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Colorado Plaintiff and the Colorado Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

505.    Colorado Plaintiff and the Colorado Sub-Class Members seek damages in an

amount to be proven at trial, including but not limited to actual damages, under the CCPA.

## COUNT VI

### Breach of Express Warranty
### COLO. REV. STAT. §§ 4-2-313 and 4-2.5-210
### (On Behalf of the Colorado Sub-Class)

506.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

507.     Colorado Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Colorado Sub-Class.

508.     GM is and was at all relevant times a "merchant" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

509.     With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

510.     The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

511.     GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

512.     GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

513.     Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded

160

categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

514.    Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

515.    GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

516.    The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Colorado Plaintiff and the Colorado Sub-Class Members.

517.    Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

518.    Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Colorado Plaintiff and the Colorado Sub-Class Members.

519.    Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

520.    GM breached the express Warranties by performing illusory repairs. Rather than

161

repairing the vehicles pursuant to the express Warranties, GM falsely informed Colorado Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

521.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

522.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

523.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Colorado Plaintiff and the Colorado Sub-Class Members. Among other things, Colorado Plaintiff and the Colorado Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

524.    Colorado Plaintiff and the Colorado Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

525.    Colorado Plaintiff and the Colorado Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

526.    Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

527.    Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

528.    As a direct and proximate cause of GM's breach, Colorado Plaintiff and the Colorado Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Colorado Plaintiff and the Colorado Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

529.    As a direct and proximate result of GM's breach of express warranties, Colorado Plaintiff and the Colorado Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT VII

### Breach of the Implied Warranty of Merchantability
### COLO. REV. STAT. §§ 4-2-313 and 4-2.5-212
### (On Behalf of the Colorado Sub-Class)

530.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

531.    Colorado Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Colorado Sub-Class.

532.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3), and a "seller" of motor vehicles under § 4-2-103(1)(d).

533.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

534.    The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

535.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under COLO. REV. STAT. §§ 4-2-313 and 4-2.5-212.

536.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Colorado Plaintiff and the Colorado Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Colorado Plaintiff and the Colorado Sub-Class Members, with no modification to the defective transmissions.

537.    GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

538.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

539.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

540.    As a result of GM's breach of the applicable implied warranties, Colorado Plaintiff

and the Colorado Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Colorado Plaintiff and the Colorado Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

541.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of COLO. REV. STAT. §§ 4-2-313 and 4-2.5-212.

542.    Colorado Plaintiff and the Colorado Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

543.    Colorado Plaintiff and the Colorado Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

544.    As a direct and proximate cause of GM's breach, Colorado Plaintiff and the Colorado Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Colorado Plaintiff and the Colorado Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

545.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Colorado Plaintiff and the Colorado Sub-Class Members have been damaged in an amount to be proven at trial.

**COUNT VIII**

**Violation of the Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. § 10-1-370, *et seq.***
**(On Behalf of the Georgia Sub-Class)**

546.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

547.    Plaintiffs Wavers Smith and Richard Freeman ("Georgia Plaintiffs") bring this cause of action on their own behalf and on behalf of the members of the Georgia Sub-Class.

548.    GM, Georgia Plaintiffs, and the Georgia Sub-Class Members "persons" within the meaning of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

549.    The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

550.    GM participated in unfair or deceptive trade practices that violated the Georgia UDTPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

551.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in

166

connection with the sale of the Class Vehicles.

552.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

553.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

554.    GM knew or should have known that its conduct violated the Georgia UDTPA.

555.    Georgia Plaintiffs and the Georgia Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

556.    Had Georgia Plaintiffs and the Georgia Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

557.    Georgia Plaintiffs and the Georgia Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Georgia Plaintiffs and the Georgia Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

558.    As a result of GM's conduct, Georgia Plaintiffs and the Georgia Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

559.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Georgia Plaintiffs and the Georgia Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

560.    Georgia Plaintiffs and the Georgia Sub-Class Members seek an order enjoining GM's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper

relief available under the under the Georgia UDTPA.

## COUNT IX

**Breach of Express Warranty**
**Ga. Code. Ann. §§ 11-2-313 and 11-2A-210**
**(On Behalf of the Georgia Sub-Class)**

561.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

562.    Georgia Plaintiffs bring this cause of action on his own behalf and on behalf of the members of the Georgia Sub-Class.

563.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

564.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

565.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

566.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

567.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

568.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded

categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

569.     Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

570.     GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

571.     The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Georgia Plaintiffs and the Georgia Sub-Class Members.

572.     Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

573.     Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Georgia Plaintiffs and the Georgia Sub-Class Members.

574.     Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

575.     GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed Georgia Sub-Class

Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

576.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

577.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

578.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Georgia Plaintiffs and the Georgia Sub-Class Members. Among other things, Georgia Plaintiffs and the Georgia Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

579.    Georgia Plaintiffs and the Georgia Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

580.    Georgia Plaintiffs and the Georgia Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

581.    Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered

under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

582.    Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

583.    As a direct and proximate cause of GM's breach, Georgia Plaintiffs and the Georgia Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Georgia Plaintiffs and the Georgia Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

584.    As a direct and proximate result of GM's breach of express warranties, Georgia Plaintiffs and the Georgia Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT X

**Breach of the Implied Warranty of Merchantability**
**Ga. Code. Ann. §§ 11-2-314 and 11-2A-212**
**(On Behalf of the Georgia Sub-Class)**

585.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

586.    Georgia Plaintiffs bring this cause of action on his own behalf and on behalf of the members of the Georgia Sub-Class.

587.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and a "seller" of motor vehicles under § 11-2-103(1)(d).

588.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

589.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

590.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under Ga. Code. Ann. §§ 11-2-314 and 11-2A-212.

591.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Georgia Plaintiffs and the Georgia Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Georgia Plaintiffs and the Georgia Sub-Class Members, with no modification to the defective transmissions.

592.    GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

593.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

594.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

595.    As a result of GM's breach of the applicable implied warranties, Georgia Plaintiffs and the Georgia Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect,

Georgia Plaintiffs and the Georgia Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

596.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of under Ga. Code. Ann. §§ 11-2-314 and 11-2A-212.

597.    Georgia Plaintiffs and the Georgia Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

598.    Georgia Plaintiffs and the Georgia Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

599.    As a direct and proximate cause of GM's breach, Georgia Plaintiffs and the Georgia Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Georgia Plaintiffs and the Georgia Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

600.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Georgia Plaintiffs and the Georgia Sub-Class Members have been damaged in an amount to be proven at trial.

**COUNT XI**

**Breach of Express Warranty**
**IND. CODE §§ 26-1-2-313 and 26-1-2.1-210)**
**(On Behalf of the Indiana Sub-Class)**

601.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

602.    Plaintiff Samuel Ford ("Indiana Plaintiff") brings this cause of action on his own behalf and on behalf of the members of the Indiana Sub-Class.

603.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under IND. CODE §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

604.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under IND. CODE § 26-1-2.1-103(1)(p).

605.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IND. CODE §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

606.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

607.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

608.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs

174

"including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

609. Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

610. GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

611. The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Indiana Plaintiff and the Indiana Sub-Class Members.

612. Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

613. Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Indiana Plaintiff and the Indiana Sub-Class Members.

614. Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

615. GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed Indiana Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures

175

including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

616.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

617.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

618.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Indiana Plaintiff and the Indiana Sub-Class Members. Among other things, Indiana Plaintiff and the Indiana Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

619.    Indiana Plaintiff and the Indiana Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

620.    Indiana Plaintiff and the Indiana Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

621.    Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

622.    Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

623.    As a direct and proximate cause of GM's breach, Indiana Plaintiff and the Indiana Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Indiana Plaintiff and the Indiana Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

624.    As a direct and proximate result of GM's breach of express warranties, Indiana Plaintiff and the Indiana Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT XII

### Breach of the Implied Warranty of Merchantability
### IND. CODE §§ 26-1-2-314 AND 26-1-2.1-212
### (On Behalf of the Indiana Sub-Class)

625.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

626.    Indiana Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Indiana Sub-Class.

627.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under IND. CODE §§ 26-1-2-104(1) and 26-1-2.1-103(3), and a "seller" of motor vehicles under § 26-1-2-103(1)(d).

628.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under IND. CODE § 26-1-2.1-103(1)(p).

629.    The Class Vehicles are and were at all relevant times "goods" within the meaning of IND. CODE §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

630.    A warranty that the Class Vehicles were in merchantable condition and fit for the

ordinary purpose for which vehicles are used is implied by law under IND. CODE § 26-1-2-314 and 26-1-2.1-212.

631.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Indiana Plaintiff and the Indiana Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Indiana Plaintiff and the Indiana Sub-Class Members, with no modification to the defective transmissions.

632.    GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

633.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

634.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

635.    As a result of GM's breach of the applicable implied warranties, Indiana Plaintiff and the Indiana Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Indiana Plaintiff and the Indiana Sub-Class Members were harmed and suffered actual damages in

that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

636.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of IND. CODE § 26-1-2-314 and 26-1-2.1-212.

637.    Indiana Plaintiff and the Indiana Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

638.    Indiana Plaintiff and the Indiana Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

639.    As a direct and proximate cause of GM's breach, Indiana Plaintiff and the Indiana Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Indiana Plaintiff and the Indiana Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

640.    As a direct and proximate result of GM's breach of the implied warranties of merchantability and that the Class Vehicles were fit for ordinary use, Indiana Plaintiff and the Indiana Sub-Class are entitled to either rescission or damages in an amount to be proven at trial.

## COUNT XIII

**Violation of Minnesota Prevention of Consumer Fraud Act**
**MINN. STAT. § 325F.68 *et seq.***
**(On Behalf of the Minnesota Sub-Class)**

641.    Plaintiffs incorporate by reference and re-allege the allegations contained in

paragraphs 1-416 of this Complaint.

642.    Plaintiff Keith Fenske ("Minnesota Plaintiff") brings this cause of action on his own behalf and on behalf of the members of the Minnesota Sub-Class.

643.    The Class Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68.

644.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …." MINN. STAT. § 3 25F.69(1).

645.    GM participated in misleading, false, or deceptive acts that violated the Minnesota CFA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

646.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

647.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

648.    GM knew that the Class Vehicles and their transmissions suffered from an inherent

defect, were defectively designed or manufactured, and were not suitable for their intended use.

649.    GM knew or should have known that its conduct violated the Minnesota CFA.

650.    Minnesota Plaintiff and the Minnesota Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

651.    Had Minnesota Plaintiff and the Minnesota Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

652.    Minnesota Plaintiff and the Minnesota Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Minnesota Plaintiff and the Minnesota Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

653.    As a result of GM's conduct, Minnesota Plaintiff and the Minnesota Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

654.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Minnesota Plaintiff and the Minnesota Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

655.    Pursuant to MINN. STAT. § 8.31(3a), Minnesota Plaintiff and the Minnesota Sub-Class Members seek damages in an amount to be proven at trial, including but not limited to actual damages and attorneys' fees, under the Minnesota CFA.

656.    Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that GM's acts show deliberate disregard for the rights or safety of others.

**COUNT XIV**

**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**MINN. STAT. § 325d.43-48** *et seq.*
**(On Behalf of the Minnesota Sub-Class)**

657.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

658.    Minnesota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Minnesota Sub-Class.

659.    The Class Vehicles constitute "merchandise" within the meaning of MINN. STAT. § 325F.68.

660.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) advertises goods or services with intent not to sell them as advertised." MINN. STAT. § 325D.44.

661.    GM participated in deceptive trade practices that violated the Minnesota DTPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

662.    By systematically devaluing safety and concealing a plethora of defects in the 8L90

and 8L45 Transmissions and the Class Vehicles, GM engaged in unfair or deceptive practices prohibited by the Minnesota DTPA, including: (1) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the 8L90 and 8L45 Transmissions and the Class Vehicles with the intent not to sell them as advertised.

663.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

664.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

665.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

666.    GM knew or should have known that its conduct violated the Minnesota DTPA.

667.    Minnesota Plaintiff and the Minnesota Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

668.    Had Minnesota Plaintiff and the Minnesota Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

669.    Minnesota Plaintiff and the Minnesota Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Minnesota Plaintiff and the Minnesota Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

670.    As a result of GM's conduct,  Minnesota Plaintiff and the Minnesota Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

671.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Minnesota Plaintiff and the Minnesota Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

672.    Pursuant to MINN. STAT. §§ 8.31(3a) and 325D.45, Minnesota Plaintiff and the Minnesota Sub-Class Members seek damages in an amount to be proven at trial, including but not limited to actual damages and attorneys' fees, under the Minnesota DTPA.

673.    Plaintiffs also seek punitive damages under MINN. STAT. § 549.20(1)(a) given the clear and convincing evidence that GM's acts show deliberate disregard for the rights or safety of others.

## COUNT XV

### Breach of Express Warranty
### MINN. STAT. §336.2-313 and 336.2A-210
### (On Behalf of the Minnesota Sub-Class)

674.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

675.    Minnesota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Minnesota Sub-Class.

676.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under MINN. STAT. §§ 336.2-104(1) and a "seller" of motor vehicles under § 336.2-103(1)(d).

677.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under MINN. STAT. § 336.2A-103(1)(p).

678.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MINN. STAT. §§ 336.2-105(1) and 336.2A-103(1)(h).

679.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

680.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

681.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

682.    Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

683.    GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

684.    The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Minnesota Plaintiff and the Minnesota Sub-Class Members.

685.    Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

686.    Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Minnesota Plaintiff and the Minnesota Sub-Class Members.

687.    Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

688.    GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed Minnesota Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

689.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

690.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

691.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Minnesota Plaintiff and the Minnesota Sub-Class Members. Among other things, Minnesota Plaintiff and the Minnesota Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity

186

in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

692.     Minnesota Plaintiff and the Minnesota Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

693.     Minnesota Plaintiff and the Minnesota Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

694.     Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

695.     Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

696.     As a direct and proximate cause of GM's breach, Minnesota Plaintiff and the Minnesota Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Minnesota Plaintiff and the Minnesota Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

697.     As a direct and proximate result of GM's breach of express warranties, Minnesota Plaintiff and the Minnesota Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT XVI

### Breach of the Implied Warranty of Merchantability
### MINN. STAT. §§ 336.2-314 and 336.2A-212
### (On Behalf of the Minnesota Sub-Class)

698.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

699.     Minnesota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Minnesota Sub-Class.

700.     GM is and was at all relevant times a "merchant" with respect to motor vehicles under MINN. STAT. §§ 336.2-104(1) and a "seller" of motor vehicles under § 336.2-103(1)(d)

701.     With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under MINN. STAT. § 336.2A-103(1)(p).

702.     The Class Vehicles are and were at all relevant times "goods" within the meaning of MINN. STAT. §§ 336.2-105(1) and 336.2A-103(1)(h).

703.     A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under MINN. STAT. §§ 336.2-314 and 336.2A-212.

704.     GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Minnesota Plaintiff and the Minnesota Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Minnesota Plaintiff and the Minnesota Sub-Class Members, with no modification to the defective transmissions.

705.     GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

188

706.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

707.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

708.    As a result of GM's breach of the applicable implied warranties, Minnesota Plaintiff and the Minnesota Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Minnesota Plaintiff and the Minnesota Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

709.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of MINN. STAT. §§ 336.2-314 and 336.2A-212.

710.    Minnesota Plaintiff and the Minnesota Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

711.    Minnesota Plaintiff and the Minnesota Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs

and/or replacements of the transmissions or components thereof, and through other internal sources.

712.     As a direct and proximate cause of GM's breach, Minnesota Plaintiff and the Minnesota Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Minnesota Plaintiff and the Minnesota Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

713.     As a direct and proximate result of GM's breach of the implied warranty of merchantability, Minnesota Plaintiff and the Minnesota Sub-Class Members have been damaged in an amount to be proven at trial.

## COUNT XVII

### Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law
### S.D. CODIFIED LAWS § 37-24-6
### (On Behalf of the South Dakota Sub-Class)

714.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

715.     Plaintiff Colton Kelly ("South Dakota Plaintiff") brings this cause of action on his own behalf and on behalf of the members of the South Dakota Sub-Class.

716.     South Dakota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the South Dakota Sub-Class.

717.     South Dakota Plaintiff, the South Dakota Sub-Class Members, and GM are "persons" within the meaning of S.D. CODIFIED LAWS § 37-24-1(8).

718.     The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact

been misled, deceived, or damaged thereby." S.D. CODIFIED LAWS § 37-24-6(1).

719.    GM participated in deceptive trade practices that violated the South Dakota CPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

720.    By systematically devaluing safety and concealing a plethora of defects in the 8L90 and 8L45 Transmissions and the Class Vehicles, GM engaged in unfair or deceptive practices prohibited by the South Dakota CPA, including: (1) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the 8L90 and 8L45 Transmissions and the Class Vehicles with the intent not to sell them as advertised.

721.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

722.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

723.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

724.    GM knew or should have known that its conduct violated the South Dakota CPA.

725.    South Dakota Plaintiff and the South Dakota Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

726.    Had South Dakota Plaintiff and the South Dakota Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

727.    South Dakota Plaintiff and the South Dakota Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, South Dakota Plaintiff and the South Dakota Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

728.    As a result of GM's conduct, South Dakota Plaintiff and the South Dakota Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

729.    As a direct and proximate result of GM's unfair or deceptive acts or practices, South Dakota Plaintiff and the South Dakota Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

730.    South Dakota Plaintiff and the South Dakota Sub-Class Members seek damages in an amount to be proven at trial, including but not limited to actual damages, under the South Dakota CPA.

## COUNT XVIII

### Breach of Express Warranty
### S.D. CODIFIED LAWS
### (On Behalf of the South Dakota Sub-Class)

731.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

732.   South Dakota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the South Dakota Sub-Class.

733.   GM is and was at all relevant times a "merchant" with respect to motor vehicles under S.D. CODIFIED LAWS §§ 57A-104(1) and 57A-2A-103(1)(t), and a "seller" of motor vehicles under § 57A-104(1)(d).

734.   With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under S.D. CODIFIED LAWS § 57A-2A-103(1)(p).

735.   The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §§ 4-2-105(1) and 4-2.5-103(1)(h).

736.   GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

737.   GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

738.   Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs "including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

739.   Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all

193

internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

740.    GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

741.    The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to South Dakota Plaintiff and the South Dakota Sub-Class Members.

742.    Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

743.    Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by South Dakota Plaintiff and the South Dakota Sub-Class Members.

744.    Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

745.    GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed South Dakota Sub-Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

746.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint,

has voided any attempt on its part to disclaim liability for its actions.

747.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

748.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect South Dakota Plaintiff and the South Dakota Sub-Class Members. Among other things, South Dakota Plaintiff and the South Dakota Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

749.    South Dakota Plaintiff and the South Dakota Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

750.    South Dakota Plaintiff and the South Dakota Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

751.    Because GM, through its conduct and exemplified by its own service bulletins, has covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

752.    Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

753.    As a direct and proximate cause of GM's breach, South Dakota Plaintiff and the

South Dakota Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, South Dakota Plaintiff and the South Dakota Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

754.    As a direct and proximate result of GM's breach of express warranties, South Dakota Plaintiff and the South Dakota Sub-Class Members have been damaged in an amount to be determined at trial.

**COUNT XIX**

**Breach of the Implied Warranty of Merchantability**
**S.D. CODIFIED LAWS §§ 57A-2-314 and 57A-2A-212**
**(On Behalf of the South Dakota Sub-Class)**

755.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

756.    South Dakota Plaintiff brings this cause of action on his own behalf and on behalf of the members of the South Dakota Sub-Class.

757.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under S.D. CODIFIED LAWS §§ 57A-104(1) and 57A-2A-103(1)(t), and a "seller" of motor vehicles under § 57A-104(1)(d).

758.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under S.D. CODIFIED LAWS § 57A-2A-103(1)(p).

759.    The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. CODIFIED LAWS §§ 4-2-105(1) and 4-2.5-103(1)(h).

760.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under S.D. CODIFIED LAWS §§ 57A-2-314 and 57A-2A-212.

761.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and

196

8L45 transmissions to customers through authorized dealers, like those from whom South Dakota Plaintiff and the South Dakota Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to South Dakota Plaintiff and the South Dakota Sub-Class Members, with no modification to the defective transmissions.

762.     GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

763.     This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

764.     Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

765.     As a result of GM's breach of the applicable implied warranties, South Dakota Plaintiff and the South Dakota Sub-Class Members of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, South Dakota Plaintiff and the South Dakota Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

766.     GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of S.D. CODIFIED

LAWS §§ 57A-2-314 and 57A-2A-212.

767.     South Dakota Plaintiff and the South Dakota Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

768.     South Dakota Plaintiff and the South Dakota Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

769.     As a direct and proximate cause of GM's breach, South Dakota Plaintiff and the South Dakota Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, South Dakota Plaintiff and the South Dakota Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

770.     As a direct and proximate result of GM's breach of the implied warranty of merchantability, South Dakota Plaintiff and the South Dakota Sub-Class Members have been damaged in an amount to be proven at trial.

## COUNT XX

### Violation of the Washington Consumer Protection Act
### WASH. REV. CODE. §§ 19.86.010, *et seq.*
### (On Behalf of the Washington Sub-Class)

771.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

772.     Plaintiff Christopher Giles ("Washington Plaintiff") brings this cause of action on his own behalf and on behalf of the members of the Washington Sub-Class.

773.     Washington Plaintiff, the Washington Sub-Class Members, and GM are "persons"

within the meaning of WASH. REV. CODE § 19.86.010(2).

774.    GM committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of WASH. REV. CODE. § 19.96.010.

775.    The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE § 19.86.020.

776.    GM participated in deceptive trade practices that violated the Washington CPA as described below and alleged throughout the Complaint. By failing to disclose the Transmission Defect, by concealing the Transmission Defect, by marketing its vehicles as safe, reliable, easily operable, efficient, and of high quality, and by presenting itself as a reputable manufacturer that valued safety, cleanliness, performance and efficiency, and stood behind its vehicles after they were sold, GM knowingly and intentionally misrepresented and omitted material facts in connection with the sale or lease of the Class Vehicles. GM systematically misrepresented, concealed, suppressed, or omitted material facts relating to the Class Vehicles and Transmission Defect in the course of its business.

777.    By systematically devaluing safety and concealing a plethora of defects in the 8L90 and 8L45 Transmissions and the Class Vehicles, GM engaged in unfair or deceptive practices prohibited by the Washington CPA, including: (1) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the 8L90 and 8L45 Transmissions and the Class Vehicles are of a particular standard, quality, and grade when they are not; and (3) advertising the 8L90 and 8L45 Transmissions and the Class Vehicles with the intent not to sell them as advertised.

778.    GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

779.    GM's unfair and deceptive acts or practices occurred repeatedly in GM's trade or

business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

780.    GM knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use.

781.    GM knew or should have known that its conduct violated the Washington CPA.

782.    Washington Plaintiff and the Washington Sub-Class Members reasonably relied on GM's misrepresentations and omissions of material facts in its advertisements of the Class Vehicles and in the purchase of the Class Vehicles.

783.    Had Washington Plaintiff and the Washington Sub-Class Members known that the Class Vehicles would exhibit the Transmission Defect, they would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of GM's misconduct.

784.    Washington Plaintiff and the Washington Sub-Class Members suffered injury in fact to a legally protected interest. As a result of GM's conduct, Washington Plaintiff and the Washington Sub-Class Members were harmed and suffered actual damages in the form of the diminished value of their vehicles.

785.    As a result of GM's conduct, Washington Plaintiff and the Washington Sub-Class Members were harmed and suffered actual damages as a result of GM's misrepresentations and omissions with regard to their Class Vehicles' transmissions because they purchased vehicles which do not perform as advertised.

786.    As a direct and proximate result of GM's unfair or deceptive acts or practices, Washington Plaintiff and the Washington Sub-Class Members suffered and will continue to suffer injury in fact and/or actual damages.

787.    GM is liable to Washington Plaintiff and the Washington Sub-Class for damages in amounts to be proven at trial, including punitive damages, attorneys' fees, costs, and any other remedies the Court may deem appropriate under WASH. REV. CODE. § 19.86.090. Because GM's actions were willful and knowing, Plaintiffs' damages should be trebled.

## COUNT XXI

**Breach of Express Warranty**
**WASH. REV. CODE §§ 62A.2-313 and 62A.2A-210**
**(On Behalf of the Washington Sub-Class)**

788.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

789.    Washington Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Washington Sub-Class.

790.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under WASH. REV. CODE §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" of motor vehicles under § 2.103(a)(4).

791.    With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under WASH. REV. CODE § 62A.2A-103(1)(p).

792.    The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§ 62A.2-105(1) and 62A.2A-103(1)(h).

793.    GM provided all purchasers and lessees of the Class Vehicles with the express warranty described herein, which became a material part of the bargain.

794.    GM provided all purchasers and lessees of Cadillac-branded Class Vehicles with the Cadillac Warranty and all purchasers and lessees of Chevrolet or GM-branded Class Vehicles with the Chevrolet/GM Warranty.

795.    Under the Warranties, GM expressly warranted the following: "The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Accordingly, the warranty covered all defects except for "slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period." Because the Transmission Defect does not fall into any of the above excluded categories, it is covered under GM's express warranty. GM agreed to provide such repairs

"including towing, parts, and labor . . . at no charge" for up to 3 years or 36,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles and for up to 4 years or 50,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Bumper-to-Bumper Limited Warranties").

796.    Furthermore, under the Powertrain Component of the Warranties, GMC expressly warranted that the powertrain components listed therein, including the transmission and "all internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/ transaxle" and "any actuators directly connected to the transmission (slave cylinder, etc.)" are covered under the Warranties for up to 5 years or 60,000 miles, whichever comes first, for Chevrolet or GM-branded Class Vehicles, and for up to 6 years or 70,000 miles, whichever comes first, for Cadillac-branded Class Vehicles (the "Powertrain Warranties").

797.    GM manufactured and/or installed the 8L90 and 8L45 transmissions and the transmissions' component parts in the Class Vehicles, and the 8L90 and 8L45 transmissions and their component parts are covered by the express Warranties.

798.    The Transmission Defect at issue in this litigation was present at the time the Class Vehicles were sold or leased to Washington Plaintiff and the Washington Sub-Class Members.

799.    Plaintiffs relied on GM's express warranties, which were a material part of the bargain, when purchasing or leasing their Class Vehicles.

800.    Under the express Warranties, GM was obligated to correct the Transmission Defect in the vehicles owned or leased by Washington Plaintiff and the Washington Sub-Class Members.

801.    Although GM was obligated to correct the Transmission Defect, none of the attempted fixes to the transmissions are adequate under the terms of the Warranties, as they did not cure the defect.

802.    GM breached the express Warranties by performing illusory repairs. Rather than repairing the vehicles pursuant to the express Warranties, GM falsely informed Washington Sub-

Class Members that there was no problem with their Class Vehicles, performed ineffective procedures including software updates, and/or replaced defective components in the 8L90 and 8L45 transmissions with equally defective components, without actually repairing the Class Vehicles.

803.    GM and its agent dealers have failed and refused to conform the 8L90 and 8L45 transmissions to the express Warranties. GM's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

804.    Moreover, GM's attempt to disclaim or limit these express Warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, GM's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect.

805.    The time limits contained in GM's warranty period were also unconscionable and inadequate to protect Washington Plaintiff and the Washington Sub-Class Members. Among other things, Washington Plaintiff and the Washington Sub-Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored GM. A gross disparity in bargaining power existed between GM and the Class members, and GM knew or should have known that the Class Vehicles were defective at the time of sale.

806.    Washington Plaintiff and the Washington Sub-Class Members have complied with all obligations under the Warranties, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

807.    Washington Plaintiff and the Washington Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal and external sources.

808.    Because GM, through its conduct and exemplified by its own service bulletins, has

covered repairs of the Transmission Defect if GM determines the repairs are appropriately covered under the Warranties, GM cannot now deny that the Warranties cover the Transmission Defect.

809.     Because GM has not been able remedy the Transmission Defect, any limitation on remedies included in the Warranties causes the Warranties to fail their essential purposes, rendering them null and void.

810.     As a direct and proximate cause of GM's breach, Washington Plaintiff and the Washington Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Washington Plaintiff and the Washington Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

811.     As a direct and proximate result of GM's breach of express warranties, Washington Plaintiff and the Washington Sub-Class Members have been damaged in an amount to be determined at trial.

## COUNT XXII

### Breach of the Implied Warranty of Merchantability
WASH. REV. CODE §§ 62A.2-314 and 62A.2A-212
(On Behalf of the Washington Sub-Class)

812.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

813.     Washington Plaintiff brings this cause of action on his own behalf and on behalf of the members of the Washington Sub-Class.

814.     GM is and was at all relevant times a "merchant" with respect to motor vehicles under WASH. REV. CODE §§ 62A.2-104(1) and 62A.2A-103(1)(t), and a "seller" of motor vehicles under § 2.103(a)(4).

815.     With respect to leases, GM is and was at all relevant times a "lessor" of motor vehicles under WASH. REV. CODE § 62A.2A-103(1)(p).

816.     The Class Vehicles are and were at all relevant times "goods" within the meaning

of WASH. REV. CODE §§ 62A.2-105(1) and 62A.2A-103(1)(h).

817.    A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under WASH. REV. CODE §§ 62A.2-314 and 62A.2A-212.

818.    GM knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. GM directly sold and marketed vehicles equipped with the 8L90 and 8L45 transmissions to customers through authorized dealers, like those from whom Washington Plaintiff and the Washington Sub-Class Members bought or leased their vehicles, for the intended purpose of consumers purchasing the vehicles. GM knew that the Class Vehicles would and did pass unchanged from the authorized dealers to Washington Plaintiff and the Washington Sub-Class Members, with no modification to the defective transmissions.

819.    GM provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

820.    This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions that were manufactured, supplied, distributed, and/or sold by GM were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

821.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including, but not limited to, the defective design and manufacture of their transmissions and the existence of the Transmission Defect at the time of sale or lease and thereafter. GM knew of this defect at the time these sale or lease transactions occurred.

822.    As a result of GM's breach of the applicable implied warranties, Washington Plaintiff and the Washington Sub-Class Members of the Class Vehicles suffered an ascertainable

loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Washington Plaintiff and the Washington Sub-Class Members were harmed and suffered actual damages in that the Class Vehicles' transmission components are substantially certain to fail before their expected useful life has run.

823.    GM's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of WASH. REV. CODE §§ 62A.2-314 and 62A.2A-212.

824.    Washington Plaintiff and the Washington Sub-Class Members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of GM's conduct described herein.

825.    Washington Plaintiff and the Washington Sub-Class Members were not required to notify GM of the breach because affording GM a reasonable opportunity to cure its breach of written warranty would have been futile. GM was also on notice of the Transmission Defect from the complaints and service requests it received from Plaintiffs and the Class Members, from repairs and/or replacements of the transmissions or components thereof, and through other internal sources.

826.    As a direct and proximate cause of GM's breach, Washington Plaintiff and the Washington Sub-Class Members suffered damages and continue to suffer damages, including economic damages at the point of sale or lease and diminution of value of their Class Vehicles. Additionally, Washington Plaintiff and the Washington Sub-Class Members have incurred or will incur economic damages at the point of repair in the form of the cost of repair.

827.    As a direct and proximate result of GM's breach of the implied warranty of merchantability, Washington Plaintiff and the Washington Sub-Class Members have been damaged in an amount to be proven at trial.

## COUNT XXIII

### Unjust Enrichment
### (On Behalf of the Nationwide Class or
### Alternatively, each of the State Sub-Classes)

828.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-416 of this Complaint.

829.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class, or, in the alternative, on behalf of each of the State Sub-Classes, against Defendant.

830.    As a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects, Defendant has profited through the sale and lease of said vehicles. Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

831.    Additionally, as a direct and proximate result of Defendant's failure to disclose known defects and material misrepresentations regarding known defects in the Class Vehicles, Plaintiffs and Class Members have vehicles that require high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

832.    Defendant has therefore been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiffs and Class Members.

833.    As a result of the Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, and all others similarly situated, requests the Court to enter judgment against GM, as follows:

A. An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as

named representatives of the Class and their representative Sub-Classes, and designating the undersigned as Class Counsel;

B. A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the transmission, including the need for period maintenance;

C. An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, and to remove and replace Plaintiffs and Class Members' transmissions with a suitable alternative product; enjoining Defendant from selling the Class Vehicles with the misleading information; compelling Defendant to provide Class members with a replacement transmission that does not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class members that such warranty has been reformed;

D. A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

E. An award to Plaintiffs and the Class for compensatory, exemplary, and statutory damages, including interest, and including the additional purchase cost of the GM 8L45 or 8L90 Transmission option, in an amount to be proven at trial;

F. Any and all remedies provided pursuant to the state and federal consumer protection statutes herein alleged;

G. A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiffs and Class Members;

H. An award of attorneys' fees and costs, as allowed by law;

I. An award of pre-judgment and post-judgment interest, as provided by law;

J. Leave to amend the Complaint to conform to the evidence produced at trial;

K.  Plaintiffs demand that GM perform a recall, and repair all vehicles; and

L.  Granting such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury of any and all issues in this action so triable.

Dated:  May 17, 2019                     Respectfully submitted,


 /s/ *Russell D. Paul*
Russell D. Paul (DE Bar No. 4647)
Amey J. Park (*pro hac vice admission forthcoming*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.:    (215) 875-3000
Fax:    (215) 875-4604
Email:  rpaul@bm.net
            apark@bm.net


Mark A. Ozzello (*pro hac vice admission forthcoming*)
Tarek H. Zohdy (*pro hac vice admission forthcoming*)
Trisha K. Monesi (*pro hac vice admission forthcoming*)
Cody R. Padgett (*pro hac vice admission forthcoming*)
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Tel.:    (310) 556-4811
Fax:    (310) 943-0396
Email:  Tarek.Zohdy@capstonelawyers.com
Jordan.Carlson@capstonelawyers.com
Trisha.Monesi@capstonelawyers.com
Cody.Padgett@capstonelawyers.com


*Counsel for Plaintiffs and the Class*


KAL_8566100

209